

Pro Se Plaintiff
Crystal L. Cox
**(406) 624-9510**
PO Box 2027
Port Townsend, WA 98368
USA

District of Arizona
Phoenix

Case Number Pending
Complaint / Jury Demand

Crystal L. Cox, Plaintiff
1-5 John and Jane Doe Plaintiffs

## CV-13-00962-PHX-MEA

v.

Defendant(s)

SERVE:

**Defendant Bob Parsons Godaddy**
14455 N Hayden Rd #219
Scottsdale, AZ 85260

**Defendant Godaddy Inc.**
14455 N Hayden Rd #219
Scottsdale, AZ 85260

**Defendant WIPO, Peter L. Michaelson personally and professionally**
590 Madison Ave.
18th Floor
New York, New York 10022
And
15 Holly Tree Lane, Suite E
Rumson, New Jersey 07760-1950

THIS DOCUMENT IS <u>NOT</u> IN PROPER FORM ACCORDING
TO FEDERAL AND/OR LOCAL RULES AND PRACTICES
AND IS SUBJECT TO REJECTION BY THE COURT.

REFERENCE _5.4_
          (Rule Number/Section)

1

**Defendant WIPO, World Intellectual Property Organization**
34, chemin des Colombettes
P.O. Box 18
1211 Geneva 20
Switzerland

**Defendant Francis Gurry WIPO, personally and professionally**
34, chemin des Colombettes
P.O. Box 18
1211 Geneva 20
Switzerland

**Defendant Eric Wilbers WIPO, personally and professionally**
34, chemin des Colombettes
P.O. Box 18
1211 Geneva 20
Switzerland

**Defendant Edward Kwakwa WIPO, personally and professionally**
34, chemin des Colombettes
P.O. Box 18
1211 Geneva 20
Switzerland

**Defendant Kashmir Hill, personally and professionally,**
250 Montgomery Street, Suite 800
San Francisco, CA 94104
Phone: 415 544 4800
ADDRESS

**Defendant Forbes Inc.,**
60 5thAvenue
New York, NY 10011
Phone: 212-620-2200
AND
West Coast Office:
250 Montgomery Street, Suite 800

San Francisco, CA 94104
Phone: 415 544 4800

**Defendant Kevin D. Padrick, personally and professionally**
Obsidian Finance Group, LLC
5 Centerpointe Dr.
Suite 590
Lake Oswego, Oregon 97035
**Defendant David S. Aman, personally and professionally**
1600 Pioneer Tower
888 SW Fifth Avenue
Portland Oregon 97204
Phone: 503.221.1440

**Defendant Steven Wilker, personally and professionally**
1600 Pioneer Tower
888 SW Fifth Avenue
Portland Oregon 97204

**Defendant Tonkon Torp Law Firm,**
1600 Pioneer Tower
888 SW Fifth Avenue
Portland Oregon 97204
Phone: 503.221.1440

**Defendant Randazza Legal Group,**
6525 W. Warm Springs Rd, Ste100
Las Vegas, NV 89118
702.420.2001

**Defendant Marc J. Randazza, personally and professionally**
6525 W. Warm Springs Rd, Ste100
Las Vegas, NV 89118

**Defendant David Coursey, personally and professionally**
Forbes Contributor
1528 Tamarisk Lane
Tracy, CA, 95377-8273

**Defendant Bob Garfield, personally and professionally**
160 Varick St.
New York, NY 10013

**New York Public Radio**
160 Varick St.
New York, NY 10013
AND
New York Public Radio, On the Media,
wNYC, New York Public Radio
160 Varick St.
New York, NY 10013

**Defendant David Carr, personally and professionally**
The New York Times
620 Eighth Avenue
New York, NY 10018

**Defendant New York Times**
620 Eighth Avenue
New York, NY 10018

**Defendant Tracy L. Coenen, personally and professionally**
111 East Wisconsin Avenue, Suite 1230
Milwaukee, WI 53202
414.727.2361 Phone

**Sequence Inc.**
111 East Wisconsin Avenue, Suite 1230
Milwaukee, WI 53202

**Defendant Mulvihill and Rushie LLC**
2424 E York St #316
Philadelphia, PA 19125

**Defendant Jordan Rushie, personally and professionally**
Mulvihill and Rushie LLC
2424 E York St #316
Philadelphia, PA 19125

**Defendant Jason M. Jones, personally and professionally**
The Salty Droid Blog
47 West Polk Street
Suite 100-293
Chicago, IL 60605-2085


**Defendant Multnomah County Sheriff Office**
501 SE Hawthorne Blvd., Suite 350

Portland, Oregon, 97214

**Defendant Daniel Staton, Sheriff**
501 SE Hawthorne Blvd., Suite 350

Portland, Oregon, 97214

**Defendant Marshall Ross, Senior Deputy, personally and professionally**
501 SE Hawthorne Blvd., Suite 350

Portland, Oregon, 97214

**Defendant Roxanne Grinage, personally and professionally**
PO Box 22225
Philadelphia PA 19136

**Defendant Judge Gloria Navarro, personally and professionally**
Las Vegas Courts
333 Las Vegas Blvd. S.
Room 3071
Las Vegas , NV   89101

**Defendant Stephen Lamont, personally and professionally**
P. Stephen Lamont
175 King Street
Armonk, N.Y. 10504

**Defendant Proskauer Rose**
Eleven Times Square
(Eighth Avenue & 41st Street)

New York, NY 10036-8299

**Defendant Kenneth Rubenstein, personally and professionally**
Eleven Times Square
(Eighth Avenue & 41st Street)
New York, NY 10036-8299

**Defendant Douglas Melamed, Intel**
2200 Mission College Blvd.
Santa Clara, CA 95054-1549

**Defendant Steven R. Rodgers Intel, personally and professionally**
2200 Mission College Blvd.
Santa Clara, CA 95054-1549

**Defendant** Warner Bros.,
4000 Warner Blvd
Burbank, CA 91522

**Defendant Ronald Green,** personally and professionally
6525 W. Warm Springs Rd, Ste100
Las Vegas, NV 89118


**1-25 John and Jane Doe Defendant(s)**


# Cause of Action


1)   Defamation – 28:1332 Diversity-Libel, Assault, Slander

2.)   Civil Rights Violation

3.)   Copyright Infringement

4.)   Civil Conspiracy

5.) 18:1964, Racketeering (RICO) Act / 27:1332ri, Racketeering / Corrupt Organization

6.) Causation and Remoteness

7.) Duty of Care; Breach of Duty

8.) Negligence Tort, Professional Negligence

9.) 18 USC § 1512 - Tampering with a witness, victim, or an informant

10.) Tortious Interference with Business

11.) Anti-Trust Laws, Competition Laws, the Sherman Act, Clayton Act, Antitrust Procedures and Penalties Act ("APPA" or "Tunney Act")

12.) U.S. Consitution

13.) International Laws, UDRP, ICANN Laws

14.) All intellectual property laws applicable


## **Parties**

1.  Plaintiff Crystal L. Cox is an individual of the State of Washington, USA

2.  On information and belief, Kashmir Hill, is an individual residing in California

3.   On information and belief, Tonkon Torp Law Firm is a Portland Law Firm, and a     California Law Firm

4.   On information and belief, Forbes Inc. a New York Corporation, and a California Corporation.

5.  On information and belief, David S. Aman is an individual residing in Oregon

6.   On information and belief, Kevin D. Padrick, is an individual residing in Oregon

7.  On information and belief, Randazza Legal Group is a law firm with offices in California, Arizona, Nevada, Florida.

8.  On information and belief, Marc Randazza is a resident of Nevada

9.   On information and belief, David Coursey is a resident of California

10.  On information and belief, Bob Garfield is a New York Resident

11.  On information and belief, New York Public Radio is a New York Business

12. On information and belief, David Carr is a New Jersey Resident

13.  On information and belief, the New York Times is a New York Corporation

14.  On information and belief, Peter L. Michaelson is a New Jersey Resident

15.  On information and belief, WIPO is an international corporation

16.  On information and belief, Francis Gurry is a Switzerland Resident

17.  On information and belief, Eric Wilburs is a is a Switzerland Resident

18.  On information and belief, Tracy L. Coenen is a Wisconsin Resident

19.   On information and belief, Sequence Inc. is a Wisconsin Corporation

20.   On information and belief,  Mulvihill and Rushie LLC is a Philadelphia, PA Corporation

21.   On information and belief, Jordan Rushie is a Philadelphia, PA resident

22.   On information and belief, Jason M. Jones, Illinois Resident

22.   Defendant Multnomah County Sheriff Office, Oregon

23.   Defendant Daniel Staton Oregon Resident

24.   Defendant Marshall Ross Oregon Resident

25.   Defendant Steven Wilker, Oregon Resident

26.   Defendant  Roxanne Grinage Philadelphia PA, Resident

27. ) Defendant Edward Kwakwa WIPO, Geneva Switzerland Resident

28.) Defendant Judge Gloria Navarro, Las Vegas Judge, Resident

29.) Defendant Stephen Lamont, New York, New Jersey Resident

30.) Defendant Proskauer Rose, New York Law Firm

31.) Defendant Kenneth Rubenstein, New York Lawyer, Resident

32.) Defendant Douglas Melamed, Intel

33.)  Defendant Steven R. Rodgers, Intel

34.) Defendant Time Warner, California Corporation

35.) Godaddy Inc., Arizona Corporation

36.) Bob Parsons Godaddy, Arizona Resident

37.) Defendant Jeffrey Bewkes

38.) Defendant Ronald Green, Nevada Resident

1 - 100 John and Jane Doe Defendant(s), residing in various jurisdictions.


## Jury Demand

I, Plaintiff Crystal Cox hereby Demand a Trial by Jury regarding this complaint and cause of action.

## Jurisdiction and Venue

Plaintiff appears in this action **"In Propria Persona"** and moves this court to proceed in Forma Pauperis, Plaintiff has attached a motion to proceed in Forma Pauperis.

This action arises as a result of Defendant(s) violation of Plaintiff's constitutional rights and, accordingly, this Court has subject matter jurisdiction under 28 U.S.C. 1331, 1343, and 1367, as well as 42 U.S.C. 1983.

This action arises as a result of Defendant(s) violation of Plaintiff's Civil Rights, Constitutional Rights, International Laws, WIPO Laws, UDRP and ICANN laws stemming from a WIPO decision published in the USA and worldwide.

This action arises as a result of Defendant(s) violation of defendants alleged conspiracy among media, reporters, radios, attorneys and law firms in which do business in Geneva Switzerland and are residents of Geneva Switzerland.

One original cause of this Case is with Defendant WIPO's online publications.

Many Defendants reside or to business in Geneva Switzerland.

## General Allegations

Upon knowledge and belief, Plaintiff L. Crystal Cox alleges that Defendant Edward Kwakwa WIPO, Defendant Francis Gurry WIPO, Defendant Eric Wilbers, Defendant WIPO World Intellectual Property Organization, Defendant Peter L. Michaelson, Defendant Marc J. Randazza, have acted in conspiracy to violate the rights of Plaintiff Crystal Cox and have therefore cause Plaintiff Cox irreparable damage. Plaintiff Cox notified Defendant Edward Kwakwa WIPO, Defendant Francis Gurry WIPO, Defendant Eric Wilburs, Defendant WIPO World Intellectual Property Organization regarding the illegal, unethical, fraudulent actions of Defendant Marc J. Randazza and Defendant Peter L. Michaelson, yet they took no actions, therefore all are liable for the immeasurable damage to Plaintiff Crystal Cox and the irreparable harm.

Upon knowledge and belief, Plaintiff L. Crystal Cox alleges that Defendant Peter L. Michaelson has undisclosed conflicts of interest with Bell Labs, Defendant Defendant WIPO, Defendant Warner Bros., Defendant Bruce Sewell, Defendant P. Stephen Lamont, Defendant Marc Randazza, MPEG LA, and more in which affected his Sole WIPO panelist decision regarding Plaintiff Crystal Cox. And his attack on the life and reputation of Plaintiff Crystal Cox and of Eliot Bernstein, whose iViewit Technology story Plaintiff Cox was reporting on in connection to seized domain names by a WIPO decision rendered by Defendant Peter L. Michaelson

Upon knowledge and belief, Plaintiff L. Crystal Cox alleges that Defendant Peter L. Michaelson internationally published that Plaintiff Crystal Cox and Eliot Bernstein were guilty of the crime of extortion. This action was deliberate, malicious and known to not be true. As Defendant Peter L. Michaelson is a U.S. attorney and he has access to court documents, he could have easily proven that NEITHER Plaintiff Crystal Cox nor Eliot Bernstein had ever been on trial for the Crime of extortion, investigated for extortion or convicted of the crime of extortion. Defendant Peter L. Michaelson and WIPO are liable for a WIPO decision being used to maliciously attack, defame and retaliate against Plaintiff Crystal Cox.

Upon knowledge and belief, Plaintiff L. Crystal Cox alleges that Defendant Judge Gloria Navarro acted in conspiracy to suppress massive blogs, steal massive domain names, wipe out links and online content, shut down intellectual property of Plaintiff, and all without First Amendment adjudication or the due process rights of Plaintiff Crystal Cox.

Upon knowledge and belief, Plaintiff L. Crystal Cox alleges that Defendant Judge Gloria Navarro unethically, unlawfully, unconstitutionally used said WIPO Decision as factual evidence that Plaintiff Cox had extorted Defendant Randazza, and used this as some sort of factual evidence against Plaintiff Cox, when actually it was simply the defamatory statements by SOLE WIPO Panelist Defendant Peter L. Michaelson who had defamed Plaintiff Cox, lied about Plaintiff Cox and simply went on the word of Defendant Randazza Legal Group, Defendant Marc Randazza.

Upon knowledge and belief, Plaintiff L. Crystal Cox alleges that Defendant Judge Gloria Navarro used the fraudulent, defamatory WIPO decision broadcast internationally by Defendant Edward Kwakwa WIPO, Defendant Francis Gurry WIPO, Defendant Eric Wilburs, Defendant WIPO World Intellectual Property Organization, Defendant Peter L. Michaelson, as a way to sabotage the online anti-corruption media of Plaintiff Cox, wipe out massive online content that was critical of Defendant Randazza Legal Group and Defendant Marc Randazza, and in which exposed all involved in the iViewit Technology Theft, which is the world's largest technology theft of which WIPO knows well, and Plaintiff Cox alleges that WIPO has acted in conspiracy to silence a blogger reporting on the iViewit Story.

Upon knowledge and belief, Plaintiff Crystal Cox alleges that Defendant Peter L. Michaelson acted in conspiracy against Plaintiff Cox to Defend, Cover up the involvement of Defendant Time Warner, Defendant Jeffrey Bewkes, Defendant Time Warner, Defendant Bruce Sewell,

Defendant Proskauer Rose in the iViewit Technology theft. Defendant Kenneth Rubenstein of Proskauer Rose Law Firm was former Bell Lab co-worker to Plaintiff Peter Michaelson and of who was main patent attorney who STOLE the iViewit Technology.

Out of thousands of blog posts, online media reporting, of Plaintiff Crystal Cox, Defendant Peter L. Michaelson pulled out a few sentences to paint out to be an alleged conspiracy theory, ""... Ms. Cox, who calls herself an 'investigative blogger,' has a broad range of conspiratorial/journalistic interests. She has written that Bruce Sewell, the general counsel of Apple, 'aids and abets criminals; that Jeffrey Bewkes, the chief executive of Time Warner is a 'proven technology thief'; and that various Proskauer Rose lawyers have engaged in a pattern of 'conspiracy'. ..." why these words? Plaintiff Cox alleges it was to use an internationally established, well believed WIPO publication in order to discredit Plaintiff Cox and the man who she was reporting on, iViewit Founder Eliot Bernstein.

Upon knowledge and belief, Plaintiff Crystal Cox alleges that Defendant Edward Kwakwa WIPO, Defendant Francis Gurry WIPO, Defendant Eric Wilburs, Defendant WIPO World Intellectual Property Organization contacted Defendant Steven R. Rodgers of Intel in regard to Plaintiff Cox and her reporting on the iViewit story and therefore is set on defaming and ruing the life and reputation of Plaintiff Crystal Cox.

Upon knowledge and belief, Plaintiff Crystal Cox alleges that Defendant Godaddy Inc., conspired with Defendant Ronald Green and violated the lawful and constitutional rights of Plaintiff Crystal Cox.

## Upon knowledge and Belief allegations regarding WIPO

Upon knowledge and belief, Plaintiff L. Crystal Cox alleges that on July 27, 2012 Marc J. Randazza filed a WIPO Dispute Claim regarding Domain names: <marcjohnrandazza.com> <marcjrandazza.com> and <marcrandazza.com>. ( Case No. D2012-1525) This complaint was filed by Las Vegas Attorney Marc J. Randazza to the WIPO Arbitration and Mediation Center, Geneva Switzerland. This WIPO complaint was filed against Respondents, Plaintiff Crystal Cox and Eliot Bernstein. This case was filed with **NO Filing Fee PAID** by Complainant Defendant Marc J. Randazza nor his law firm Defendant Randazza Legal Group as later WIPO emails show. And this complaint was filed against 2 distinctly different domain name owners in one complaint filing.

Upon knowledge and belief, Plaintiff L. Crystal Cox alleges that the original filing alone was unethical, unlawful, unconstitutional and a violation of her legal and constitutional rights. As Complainant in that matter Attorney Defendant Marc J. Randazza had no trademark, had done no first amendment adjudication into the matter, had committed fraud on the courts / WIPO in claiming that Respondent was guilty of the crime of extortion and the fact that Defendant Marc J. Randazza had been counsel / attorney for Respondent Plaintiff Crystal Cox in a related matter.

The complaint itself held massive red flags. Then to be turned over to Defendant Peter Michaelson who had clear and obvious conflicts with Marc Randazza and with those violating the rights of Eliot Bernstein over the iViewit technology relation matters, was seriously a violation of the rights of Plaintiff Crystal Cox.

"the Following eMail, as Seen Below, is from **Xin Jiang** for **Jessica Park** WIPO Case Worker to Crystal Cox and all parties of **WIPO Case Number (EP) D2012-1525** was Sent: Friday, **September 7**, 2012 6:44 AM.  The Subject is (EP) D2012-1525 <marcjohnrandazza.com> et al. Notification of Panel Appointment.

Subject Matter of WIPO Email to Parties of **WIPO Case Number (EP) D2012-1525** is regarding **the Notification of Panel Appointment (1-member panel)** for Domain Names marcjohnrandazza.com, marcjrandazza.com, and marcrandazza.com.

"In accordance with Rules, Paragraph 7, the above Panelist has submitted a Statement of Acceptance and Declaration of Impartiality and Independence to the WIPO Arbitration and Mediation Center."

I, Crystal L. Cox, in my Pro Se Capacity **Demanded a Copy of Peter L. Michaelson's Statement of Acceptance and Declaration of Impartiality and Independence** submitted to the WIPO Arbitration and Mediation Center, and I was denied this right over and over.

Upon knowledge and belief, Plaintiff L. Crystal Cox alleges that Defendant Peter L. Michaelson had massive undisclosed conflicts of interest regarding Crystal Cox, iViewit, Bell Labs, Eliot Bernstein, MPEG LA, Judith Kaye, Stephen Lamont, Kenneth Rubenstein and with his affiliations with INTA and with Complainant Marc J. Randazza.

Upon knowledge and belief, Plaintiff L. Crystal Cox alleges that Defendant Peter L. Michaelson committed fraud against the civil rights, property rights and constitutional rights of Plaintiff Cox. And thereby caused massive damage to Plaintiff Cox of which she is entitled all available relief by law.

Upon knowledge and belief, Plaintiff L. Crystal Cox alleges that Defendant Peter L. Michaelson conspired with other Defendants to paint Plaintiff Cox in false light, defame Cox and ruin the reputation of Plaintiff Cox, with using the power and prestige of WIPO in order to carry out his actions against Plaintiff Cox, in conspiracy with Defendants before the Publication and with Defendant's who later re-published the publication as if it were fact, and then the publication was used by a court of law as FACT and further caused damage to Plaintiff Cox. Of which Plaintiff Crystal Cox is entitled to all available relief by law.

The email from WIPO to Cox below is in regard to a Panel appointment and states , "he above Panelist

has submitted a Statement of Acceptance and Declaration of Impartiality and Independence to the WIPO Arbitration and Mediation Center." Upon knowledge and belief, Plaintiff L. Crystal Cox alleges that Defendant Peter L. Michaelson never signed this document, Defendant WIPO would not Give Plaintiff a Copy, and if a copy exists, that too is fraud as Defendant Peter L. Michaelson does have undisclosed conflicts of interest in this matter.

---

**From:** "Domain.Disputes@wipo.int" <Domain.Disputes@wipo.int>
**To:** RDG@randazza.com; rlgall@randazza.com; SavvyBroker@Yahoo.com; savvybroker@Yahoo.com; iviewit@iviewit.tv
**Sent:** Friday, September 7, 2012 6:44 AM
**Subject:** (EP) D2012-1525 <marcjohnrandazza.com> et al. Notification of Panel Appointment



Re: Case No. D2012-1525
<marcjohnrandazza.com>
<marcjrandazza.com>
<marcrandazza.com>

**Notification of Panel Appointment (1-member panel)**

In accordance with Paragraph 6(f) of the Rules for Uniform Domain Name Dispute Resolution Policy (the Rules), you are hereby notified that an Administrative Panel ("Panel") has been appointed in the above-referenced case, consisting of a single member:

Peter L. Michaelson

The professional profile of the Panelist can be accessed at our web site (http://www.wipo.int/amc/en/domains).

In accordance with Rules, Paragraph 7, the above Panelist has submitted a Statement of Acceptance and Declaration of Impartiality and Independence to the WIPO Arbitration and Mediation Center.

A copy of the relevant case file will shortly be transmitted to the Panel. If you would like to receive a list identifying materials transmitted to the Panel, please let us know by return email.

Absent exceptional circumstances, the Panel is required to forward its decision to us by September 21, 2012 in accordance with Rules, Paragraph 15.

Parties are reminded of the prohibition contained in Rules, Paragraph 8 against unilateral communications with the Panel.

Sincerely,

Xin Jiang
for Jessica Park
Case Manager"


**Official Coorespondence from WIPO regarding the appointment of Sole Panelist Peter L. Michaelson.  September 7th, 2012.**

Re: Case No. D2012-1525
<marcjohnrandazza.com>
<marcjrandazza.com>
<marcrandazza.com>
Notification of Panel Appointment (1-member panel)
In accordance with Paragraph 6(f) of the Rules for Uniform Domain Name Dispute Resolution Policy (the Rules), you are hereby notified that an Administrative Panel ("Panel") has been appointed in the above-referenced case, consisting of a single member:

Peter L. Michaelson

The professional profile of the Panelist can be accessed at our web site (http://www.wipo.int/amc/en/domains).

In accordance with Rules, Paragraph 7, the above Panelist has submitted a Statement of Acceptance and Declaration of Impartiality and Independence to the WIPO Arbitration and Mediation Center.

A copy of the relevant case file will shortly be transmitted to the Panel. If you would like to receive a list identifying materials transmitted to the Panel, please let us know by return email.

Absent exceptional circumstances, the Panel is required to forward its decision to us by **September 21, 2012** in accordance with Rules, Paragraph 15.

Parties are reminded of the prohibition contained in Rules, Paragraph 8 against unilateral communications with the Panel.

Sincerely,

Xin Jiang
for Jessica Park
Case Manager"



**Complainant Defendant Marc J. Randazza accuses Cox of Bad Faith in WIPO email and adds what he calls in this email a" Supplemental Filing" of more domain names.**



Since the date of the complaint being filed, the Respondent has added three more domains to her bad faith registration and use.  They were registered on or about June 25, 2012, as can be seen in the attached annexes (whois records for all three domains).

This demonstrates further bad faith.

The Complainant hereby requests that the panel authorize a supplemental filing to add the following domains to the complaint:

marcrandazza.biz
marcrandazza.info
marcrandazza.mobi

If this results in additional fees being due to the centre, the Complainant will gladly pay those fees.

The existence of these domains was unknown to the Complainant until now.  Accordingly, these domains could not have been included in the initial complaint without that knowledge.

---

Marc John Randazza*
**Randazza Legal Group**

6525 West Warm Springs Rd. Ste. 100
Las Vegas, Nevada 89118
Toll Free: 888-667-1113
email: mjr (at) randazza (dot) com
eFax: 305.437.7662

Other Offices: Miami, Phoenix & Toronto
http://www.randazza.com

_____

* Licensed in AZ, CA, FL, MA, and NV

Note:  August 15th Defendant Marc Randazza filed a Supplemental Filing, as WIPO officials referred to it, yet Defendant Marc Randazza called it an amended complaint. As Exhibits Show.

Upon knowledge and belief, Plaintiff L. Crystal Cox alleges that on WIPO conspired civilly and criminally with Defendant Marc Randazza and Defendant Peter Michaelson. As Plaintiff Cox asked for a copy of the **" duly executed declaration of their impartiality and independence"** that WIPO claimed over and over existed, yet Plaintiff Crystal Cox was never allowed a copy of this documents. And that these action caused Plaintiff Cox immeasurable, irreparable harm.

Email from WIPO to Plaintiff Cox on September 12 th 2012



Dear Madam/Sir,

We acknowledge receipt of your email below. We will bring it in front of the panel. Additionally, please note that all appointed panelists are required to submit a duly executed declaration of their impartiality and independence.  For further information, please see http://www.wipo.int/amc/en/domains/panel.html

Case Manager
Domain Name Dispute Resolution Section
WIPO Arbitration and Mediation Center
34, Chemin des Colombettes, 1211 Geneva 20, Switzerland

_____

**From:** Crystal L. Cox, in Love and Light [mailto:savvybroker@yahoo.com]
**Sent:** Friday, September 07, 2012 6:46
**To:** Disputes, Domain
**Subject:** Re: (EP) D2012-1525 <marcjohnrandazza.com> et al. Notification of Panel Appointment

**I have been deceived and demand that** Peter L. Michaelson sign a conflict of interest form.

Marc Randazza filed a domain dispute with the CZECH Arbitration Courts, I responded months ago.  Is the WIPO Complaint a speparate complaint.

**Crystal L. Cox"**

Upon knowledge and belief Defendant Marc Randazza was given special favors by WIPO, and not only did  Defendant Marc Randazza file a WIPO complaint against 2 entirely different domain name owners under the same complaint, but also  Defendant Marc Randazza added more Domain Names that were purchased by Plaintiff after the complaint was filed.  On September 19th, 2012.

**"From:** Laura M. Tucker [mailto: lmt@randazza.com ]
**Sent:** mercredi, 19. septembre 2012 19:59
**To:** Disputes, Domain
**Cc:** Ron Green; ecf@randazza.com; mjr@randazza.com
**Subject:** Amended UDRP Complaint - Randazza v. Cox D2012-1525

Dear Mr. Michaelson:

Per Administrative Panel Procedural Order No. 1, please find attached the amended complaint for Randazza v. Cox. Upon confirmation of receipt, the additional administrative fee of $500 USD will be submitted.  Due to file size, a total of four emails will be sent.

---

Laura M. Tucker
Law Clerk, Randazza Legal Group

6525 W. Warm Springs Road, Suite 100
Las Vegas , NV 89118

Toll Free: 888-667-1113
email: lmt (at) randazza (dot) com
eFax: 305-437-7662

Other Offices: Miami , Toronto , and Phoenix"

Upon knowledge and belief, Plaintiff L. Crystal Cox alleges that Godaddy Inc, answered to Defendant Randazza Legal Group, Defendant Marc J. Randazza INSTEAD of answering directly to WIPO orders per UDRP Rules or even directly from court orders. Defendant Randazza Legal Group, Defendant Ronald D. Green emailed goDaddy and told them what to do and they did what Defendant Randazza Legal Group, Defendant Ronald D. Green told them to, even though Defendant Randazza Legal Group, Marc Randazza was the Plaintiff / Complainant in the case.

Defendant Godaddy did not lock the domains per UDRP to keep the Status Quo. Instead Godaddy gave the domain names to Defendant Randazza Legal Group, Defendant Marc J. Randazza based on what Defendant Randazza Legal Group, Defendant Ronald D. Green TOLD Godaddy to do. And NOT based on an Order from WIPO or from a Court Order.

### The WIPO decision by Defendant Peter L. Michaelson
### was due on September 21, 2012.

On **November 28th, 2012**, Defendant Marc Randazza filed a Legal Action against Crystal Cox, it is District of Nevada Case 2:12-cv-02040-GMN-PAL. Also on November 28th, 2012, Defendant Marc Randazza filed a "EX PARTE MOTION for Temporary Restraining Order and MOTION for Preliminary Injunction" in that case.

On **November 30th, 2012**, Defendant Peter L. Michaelson published the defamatory false statements to a third party concerning Plaintiff Cox, in a world wide WIPO Decision.

Upon knowledge and belief, Plaintiff Crystal Cox alleges that Defendant Peter L. Michaelson acted in conspiracy in order to help Defendant Marc Randazza's case against COX and to suppress information regarding the iViewit technology theft. As District of Nevada Case 2:12-cv-02040-GMN-PAL was filed against Crystal L. Cox and Eliot Bernstein by Defendant Marc Randazza, then Defendant Peter L. Michaelson published his accusation of Cox and Bernstein being Guilty of criminal activity, then Defendant Marc Randazza the Plaintiff in District of Nevada Case 2:12-cv-02040-GMN-PAL, uses the information in this internationally published document as evidence in court with Defendant Judge Gloria Navarro, who took this as fact and from there GRANTED the TRO, and thereby wiped out thousands of links, massive online media content, searching engine ranking, the competition for Randazza Legal Group in the Search Engines, online sites in mass that criticized Randazza, and massive blogs that exposed the iViewit Technology theft. All without First Amendment Adjudication, a criminal trial or complaint for Cox and Bernstein to reply to and all without there actually being a crime of extortion.

Upon knowledge and belief, Plaintiff Crystal Cox alleges that Defendants have caused Plaintiff Cox massive irreparable harm and are therefore liable for the damage caused to Plaintiff Cox.

**Below are eMails Between Plaintiff Cox and Defendant Godaddy
Regarding the seizing of domain names.**

"Dear Ms. Cox,

Thank you for your email. Please note that as a registrar, we are not part of the
decision-making process of this dispute. Per ICANN's UDRP
(http://www.icann.org/en/help/dndr/udrp/policy) we must abide by and implement orders
rendered within the case, but registrars do not participate in the dispute proceedings
themselves.

You may wish to send your inquiry to WIPO directly. They can be reached via email at
domain.disputes@wipo.int. For quicker response, please place the reference number
[D2012-1525] in your subject line.

Kindest Regards,

Shannon C.
Disputes Administrator
GoDaddy.com, LLC
708333


-------- Original Message --------
Subject: Re: Amended UDRP Complaint - Randazza v. Cox
From: "Crystal L. Cox, in Love and Light" <savvybroker@yahoo.com>
Date: Thu, September 20, 2012 1:17 pm
To: "domaindisputes@godaddy.com" <domaindisputes@godaddy.com>

Please Acknowledge Receipt, or I will assume there
is a Conflict of Interest.


Crystal L. Cox"

_____

**From:** "domaindisputes@godaddy.com" <domaindisputes@godaddy.com>
**To:** Laura M. Tucker <lmt@randazza.com>
**Cc:** mjr@randazza.com; Ron Green <rdg@randazza.com>; SavvyBroker@Yahoo.com
**Sent:** Thursday, September 20, 2012 1:10 PM
**Subject:** RE: Amended UDRP Complaint - Randazza v. Cox

Dear Laura M. Tucker,

Thank you for contacting GoDaddy.com, LLC. Per the World Intellectual Property
Organization (WIPO) complaint provided, the following domain name(s) has been placed on

Registrar-Lock:

MARCRANDAZZA.BIZ, MARCRANDAZZA.INFO, MARCRANDAZZA.MOBI, MARCRANDAZZA.COM, MARCJOHNRANDAZZA.COM, MARCJRANDAZZA.COM

The domain name(s) will remain locked during the pending legal proceeding. The lock on the domain name(s) shall expire automatically 1) Upon GoDaddy.com, LLC's receipt of an order dismissing or suspending the case 2) Upon the expiration of the domain name registration including the Redemption Grace and Pending Delete Periods at the registry.

Kindest Regards,

Alex Hernandez
Disputes Administrator
GoDaddy.com, LLC
739839"

Thursday, September 20, 2012 1:10 PM Defendant Godaddy Says that Per the World Intellectual Property Organization (WIPO) they are locking the additional domain names MARCRANDAZZA.BIZ, MARCRANDAZZA.INFO, MARCRANDAZZA.MOBI, as well as the original domain names belonging to 2 separate domain owners; MARCRANDAZZA.COM, MARCJOHNRANDAZZA.COM, MARCJRANDAZZA.COM.

However, WIPO added the Supplement Domains to the WIPO Complaint on September 27th 2012, as the record shows. And WIPO had not made a decision on allowing the domain names to be added yet as of October 11th 2012, as the email records show.

Clearly Godaddy answered to Randazza Legal Group and NOT to WIPO or the Courts. Defendant Godaddy Locked MARCRANDAZZA.BIZ, MARCRANDAZZA.INFO, MARCRANDAZZA.MOBI on September 19th, 2012 per the ORDER of Defendant Randazza Legal group and **NOT** per a WIPO Order. Defendant Godaddy discriminated against Pro Se Litigant Crystal Cox and caused Plaintiff Cox massive irreparable damage, of which GoDaddy is CLEARLY liable for.

Upon knowledge and belief, Plaintiff L. Crystal Cox alleges that Complainant Marc J. Randazza violated the Domain Name Dispute Resolution Policy in not paying a filing fee in a timely manner and then well into the case, WIPO allowed Complainant Marc J. Randazza to add several more domain names in which Plaintiff Crystal Cox had purchased AFTER the original complaint was filed and still NO FILING FEE WAS paid at that time. Per email records, WIPO had to request payment be made.

This was called "Supplemental Filing, which the Center received on October 11, 2012", Below is WIPO Communication regarding the adding of additional names on same Complaint, and having NOT paid fees.

These additional domain names were added to the complaint for FREE, and COX was unable to choose or participate in choice of Panel with these names as well, As COX wanted a 3 Panel, COX objected To Defendant Peter L. Michaelson and was stripped of her UDRP, ICANN, lawful rights.

Per UDRP rules names are to be locked at the request of a Court Order or WIPO Order, however Godaddy answered directly to Defendant Randazza Legal Group, Defendant Marc J. Randazza **INSTEAD of answer to WIPO orders** per UDRP Rules. Thereby causing Plaintiff Crystal Cox irreparable harm of which defendants are liable for.

Below you see that WIPO acknowledge receiving the Supplemental Filing on Oct. 11th, yet Godaddy had already seized the domain names on September 20, 2012.

"Dear Ms. Tucker,

The WIPO Arbitration and Mediation Center (the Center) hereby acknowledges receipt of your Supplemental Filing, which the Center **received on October 11, 2012**.

The Rules for the **Uniform Domain Name Dispute Resolution Policy ("Rules")** provide for the submission of the Complaint by the Complainant and the Response by the Respondent. No express provision is made for Supplemental Filings by either party, except in response to a deficiency notification or if requested by the Center or the Administrative Panel. Paragraphs 10 and 12 of the Rules in effect **grant the Panel sole discretion to determine the admissibility of Supplemental Filings** (including further statements or documents) received from either Party. Accordingly, the Panel will be informed of the Center's receipt of this Supplemental Filing. It will be in the **sole discretion of the Panel** to determine whether to consider and/or admit the Supplemental Filing in rendering its decision, and whether to order further procedural steps, if any.

Yours sincerely,

Case Manager
Domain Name Dispute Resolution Section
WIPO Arbitration and Mediation Center"

**Defendant Godaddy did not lock the domains per UDRP to keep the Status Quo. Instead Godaddy gave the domain names to Defendant Randazza Legal Group, Defendant Marc J. Randazza based on what Defendant Randazza Legal Group, Defendant Ronald D. Green TOLD Godaddy to do. And NOT based on an Order from WIPO or from a Court Order.**

Per Defendant Godaddy's email to Plaintiff Crystal Cox, you see that on September 20th 2012 Godaddy Locked the following Domain Names in the account of Plaintiff Crystal Cox and of Eliot Bernstein, 2 different people, different domain names, no proxy;

MARCRANDAZZA.BIZ, MARCRANDAZZA.INFO, MARCRANDAZZA.MOBI, MARCRANDAZZA.COM, MARCJOHNRANDAZZA.COM, MARCJRANDAZZA.COM

Yet, MARCRANDAZZA.BIZ, MARCRANDAZZA.INFO, MARCRANDAZZA.MOBI, was not legally part of the domain dispute by WIPO until after this time.

Defendant Ronald D. Green sent a fraudulent letter to Defendant GoDaddy Inc, Defendant Bob Parsons and from there Defendant GoDaddy Inc, Defendant Bob Parsons simply gave cancelled the domain names, changed servers and put them into the account of Defendant Marc Randazza.

Yes Defendant Ronald D. Green of Defendant Defendant Randazza Legal Group deceived Defendant GoDaddy Inc, Defendant Bob Parsons, however the documents attached, that Defendant GoDaddy Inc claims was a court order to give the names to Randazza, WAS clearly a scheduling for a hearing on the matter and NOT a court order on the matter.

Per UDRP rules names are to be locked at the request of a Court Order or WIPO Order, however Godaddy answered directly to Defendant Randazza Legal Group, Defendant Marc J. Randazza INSTEAD of answer to WIPO orders per UDRP Rules. Thereby causing Plaintiff Crystal Cox irreparable harm of which defendants are liable for.

Defendant Ronald D. Green emailed a letter to Godaddy regarding a pending Court Hearing as the decision on the domain names. However Godaddy did not wait for the court hearing, or the court order. Godaddy simply violated the lawful, constitutional right of Plaintiff Crystal Cox and therefore Defendant Godaddy is liable for the harm and suffering caused to Plaintiff Cox

Upon knowledge and belief, Defendant GoDaddy Inc, Defendant Bob Parsons Gave the domain names of Plaintiff Crystal Cox and Eliot Bernstein to Defendant Randazza Legal Group, Defendant Marc J. Randazza on December 1th 2012.

Yet, clearly the court documents attached to Defendant Ronald D. Green's email to said

Defendant GoDaddy Inc, that were signed by the judge in the matter, that there was a hearing scheduled, and this was NOT a court Order to DESTROY the property and life of Crystal Cox.

Monday, December 17, 2012 11:24 AM, Godaddy claims to be in possession of a court order and simply gives domain names of Eliot Bernstein and Plaintiff Crystal Cox to Defendant Marc Randazza, Defendant Randazza Legal Group, based on Defendant Randazza Legal Group AND Defendant Ronald Green telling godaddy to do such action. As Exhibits Show.

Defendant Godaddy Inc., Jessica Griffith, upon knowledge and belief has helped Defendant Randazza to side step UDRP Rules. She has helped Randazza to not have to wait 60 days to transfer names and was named as the go to for Randazza. Defendant Godaddy Inc., Jessica Griffith, upon knowledge and belief has helped Defendant Randazza flat out steal domain names out of the accounts of others.

**The email below from Defendant Godaddy in this matter is fraudulent, as there was no court order at this time, there was only a hearing scheduled on the matter.**

"From: domaindisputes@godaddy.com [mailto:domaindisputes@godaddy.com]
Sent: Monday, December 17, 2012 2:07 PM
To: iviewit@iviewit.tv
Subject: Court Order Received re: FUCKMARCRANDAZZA.COM et al.

 Dear Mr. Bernstein,

Go Daddy is in receipt of a TRO ordered and filed December 14th, 2012 stating that the following domain names must be transferred to the Plaintiff:

CRYSTALCOXMARCRANDAZZA.COM, MARCJOHNRANDAZZA.COM, MARCRANDAZZASUCKS.COM, MARCJRANDAZZA.COM, MARCRANDAZZA.COM, EXPOSEMARCRANDAZZA.COM, RANDAZZALEGALGROUPSUCKS.COM, MARCRANDAZZAPARODY.COM, MARCRANDAZZAISALYINGASSHOLE.COM, MARCRANDAZZA.ME, FUCKMARCRANDAZZA.COM, TROLLMARCRANDAZZA.COM, HYPOCRITEMARCRANDAZZA.COM, MARCRANDAZZA.BIZ, MARCRANDAZZA.INFO, MARCRANDAZZA.MOBI

This action has been taken pursuant to the order. However, the domain names have been locked pending further order of the court.

Any questions regarding this dispute should be directed to the Court or the Plaintiff Attorney.

Kind Regards,

Shannon C.
Disputes Administrator
GoDaddy.com, LLC
767527"

Keep in mind that the "Plaintiff" in that case was Defendant Randazza Legal Group's Marc J. Randazza, the domain names were in regard to Randazza Legal Group who was representing themselves in the matter.

Defendant Godaddy Inc. totally disregarded the rights of Pro Se Defendant Crystal Cox, in her Pro Se Capacity and Plaintiff Cox alleges that Godaddy violated UDRP and broke the law in simply giving these names to Defendant Marc Randazza, Defendant Randazza Legal Group, based on Defendant Randazza Legal Group AND Defendant Ronald Green telling godaddy to give them the names.

As you see below, Plaintiff Crystal Cox told Godaddy they were to keep names locked. However Defendant Godaddy Favored Defendant Randazza Legal Group, and IGNORED Pro Se Litigant, Plaintiff Cox and the Law, as well as ICANN Rules and UDRP Rules.

Below, You see an email from Defendant GoDaddy, dated December 17th 2012 claiming to have a "TRO ordered and filed December 14th, 2012". And that this somehow enables them to cancel a large amount domain names, change servers, move them to Defandant Randazza's account and wipe out massive online content, search engine ranking and intellectual property of Pro Se Crystal Cox, with no Court Order, no WIPO Order, and thereby causing massive irreparable harm to Plaintiff Crystal Cox.

### On December 17th 2012,  Defendant GoDaddy claims they have in their possession a Court Order, a TRO order dated December 14th 2012, that gives them power to cause massive harm to Plaintiff Crystal Cox and Eliot Bernstein, yet there had been NO SUCH COURT ORDER.

As the court docket shows, the case this is in regard to, District of Nevada Case 2:12-cv-02040-GMN-PAL, Pro Se Litigant Crystal L. Cox did not enter that case until 12-11-2012, Summons Returned Executed on that day. Yet Defendant Godaddy claimed to have a TRO stemming from that case, a court order, 3 days later on December 14th 2012, how could that be.

Plaintiff Cox had not even responded to the Complaint yet, nor was given due process, as a matter of law and legal deadlines, nor to the TRO, yet Defendant Godaddy was cancelling domain names, changing servers and moving them to Defendant Randazza's account just days after Plaintiff Cox entered the case.  Plaintiff Cox alleges this to be a violation of UDRP, violation of law and a violation of her constitutional rights.

The Judge in the case made an Order on **December 14th 2012**, however, this CLEARLY stated that it was an Order Scheduling a hearing in the matter of the TRO. The hearing was to be January 7th, 2013. Yet Godaddy cancelled domain names, changed servers, and had already given the domains to Defendant Randazza, because Defendant Ronald Green, Randazza Legal Group attorney told GoDaddy to. Defendant Godaddy has no legal right to simply do as RANDAZZA tells them to do, and completely ignore the rights of Pro Se Litigants, Godaddy Customers. Plaintiff Cox alleges Defendant Godaddy to be involved in civil conspiracy against her rights and possibly even criminal in regard to somehow "predicting" what a federal judge would rule nearly a month later.

It is CLEAR that GoDaddy did not act on a court order but on the word of Defendant Ronald Green, Randazza Legal Group and thereby caused massive damage and irreparable harm to Plaintiff Crystal Cox and to Eliot Bernstein.

As the  District of Nevada Case 2:12-cv-02040-GMN-PAL docket shows, there was a hearing on the 7th of January, and there was a bond placed for each domain name on 12-17-2012, though Defendant Godaddy had already given the names to Defendant Randazza, and the court had not held the hearing on the matter, as per the record shows, the 2:12-cv-02040 docket shows.


Crystal Cox had not even responded to the TRO Motion until January 4th, 2013 as per court deadlines, yet Defendant Godaddy had already been the Judge and Jury and took the domain names, cancelled the names, changed servers and caused massive damage and irreparable harm to Plaintiff Crystal Cox.

### Here is the Above Mentioned Godaddy Email

**From:** "domaindisputes@godaddy.com" <domaindisputes@godaddy.com>
**To:** Crystal Cox <savvybroker@yahoo.com>
**Sent:** Monday, December 17, 2012 10:57 AM
**Subject:** RE: [FWD: Re: Attention Reverend Crystal: Cancellation Confirmation enclosed]

Dear Ms. Cox,

Thank you for your email. Go Daddy is in receipt of a TRO ordered and filed December 14th, 2012 stating that the following domain names must be transferred to the Plaintiff:

CRYSTALCOXMARCRANDAZZA.COM, MARCJOHNRANDAZZA.COM, MARCRANDAZZASUCKS.COM, MARCJRANDAZZA.COM, MARCRANDAZZA.COM, EXPOSEMARCRANDAZZA.COM, RANDAZZALEGALGROUPSUCKS.COM, MARCRANDAZZAPARODY.COM, MARCRANDAZZAISALYINGASSHOLE.COM, MARCRANDAZZA.ME, FUCKMARCRANDAZZA.COM, TROLLMARCRANDAZZA.COM, HYPOCRITEMARCRANDAZZA.COM, MARCRANDAZZA.BIZ, MARCRANDAZZA.INFO, MARCRANDAZZA.MOBI

This action has been taken pursuant to the order. However, the domain names have been locked pending further order of the court.

If you receive an order stating that the domain names are to be moved back to your control, please send us a copy of the order so that we may assist you with its implementation. Please note that it is not necessary to name GoDaddy.com, LLC in a dispute as we will abide by orders issued by ICANN-approved arbitration providers as well as courts of competent jurisdiction.

Kind Regards,

Shannon C.
Disputes Administrator
GoDaddy.com, LLC
767527"

-------- Original Message --------

Subject: Re: Attention Reverend Crystal: Cancellation Confirmation enclosedFrom: "Crystal L. Cox, in Love and Light" <savvybroker@yahoo.com>
Date: Fri, December 14, 2012 11:16 pm
To: "domaindisputes@godaddy.com" <domaindisputes@godaddy.com>,
"legal@godaddy.com" <legal@godaddy.com>, "support@godaddy.com"
<support@godaddy.com>, "president@godaddy.com" <president@godaddy.com>

These names are in a legal battle and Godaddy had better not favorMarc Randazza, you are being named in my countersuit. I expect the names to be locked."

Upon knowledge and belief, Plaintiff L. Crystal Cox alleges that Defendant Godaddy acted in conspiracy with Defendant Marc Randazza, Defendant Randazza Legal Group, Defendant Ronald Green other John and Jane Doe Defendants, in violation of the First Amendment Rights of Plaintiff Crystal Cox and without an actual court order, Plaintiff L. Crystal Cox alleges that Defendant Godaddy acted unlawful in simply giving away her intellectual property and violating her rights. Upon knowledge and belief, Plaintiff L. Crystal Cox alleges that Defendant Godaddy is liable for the damage caused to Plaintiff Cox and wishes this court award Plaintiff Cox all relief allowed by law.

**Upon knowledge and belief, Plaintiff L. Crystal Cox alleges that the WIPO Panel allowed Attorney Marc Randazza to not follow the rules and to violated the rights of Plaintiff Crystal Cox, his former client in the process.**

Upon knowledge and belief, Plaintiff L. Crystal Cox alleges that WIPO blatantly allowed Complainant Attorney Marc Randazza, an intellectual property attorney, to break / violate the Uniform Domain Name Dispute Resolution Policy ("Rules")

Per UDRP rules names are to be locked at the request of a Court Order or WIPO Order, however Godaddy answered directly to Defendant Randazza Legal Group, Defendant Marc J. Randazza INSTEAD of answer to WIPO orders per UDRP Rules. Thereby causing Plaintiff Crystal Cox irreparable harm of which defendants are liable for.

Upon knowledge and belief, Plaintiff L. Crystal Cox alleges WIPO Panelist Defendant Peter L. Michaelson favored attorney, fellow INTA member Marc J. Randazza in this action, over the rights of Plaintiff Crystal Cox and co Respondent in this WIPO Case Eliot Bernstein.

Plaintiff Crystal Cox NOTIFIED WIPO via phone call and via the notice below, Defendant WIPO did not respond.

"

**Crystal L. Cox**
**Pro Se Respondent / Defendant**
**WIPO Cases (EP) D2012-1525**

Attention: Francis Gurry and Edward Kwakwa, WIPO Legal Counsel (OLC)

Regarding Notice and Reporting of Fraud, Criminal Activity, Rico Conspiracy, WIPO Panelist Conflict of Interest and Pending Criminal and Civil charges against WIPO. This is Regarding WIPO Sole Panelist  Peter L. Michaelson and Regarding WIPO Cases (EP) D2012-1525 (Complainant Marc Randazza) and (TG) D2011-0678, (CT) D2011-0679,(CT) D2011-0677, (CT) D2011-0675 (Complainant Proskauer Rose)

The Parties to this WIPO Notice of Fraud, Conflict of Corruption,
    and Criminal Activity are as follows:

The Complainant is Marc J. Randazza of Las Vegas, Nevada, represented by Randazza Legal Group of which Marc Randazza owns. The Complainant was an Attorney, at one time for the Respondent as emails proved to WIPO Panel.

The Respondents were Reverend Crystal Cox, Crystal L. Cox of Washington State. And iViewit Technology Founder, and one of the iViewit Technology Inventors Eliot Bernstein  of Boca Raton,

Florida.

The WIPO Sole Panelist who wrote the WIPO Decision in this matter is Peter L. Michaelson. Peter L. Michaelson has undisclosed connections to Proskauer Rose Attorney Kenneth Rubenstein, Ex-Supreme Court Judge Judith Kaye, MPEG LA and More.

This letter is to inform Francis Gurry and Edward Kwakwa, WIPO Legal Counsel of serious conflicts of interest, criminal activity, discrimination, and fraud within WIPO. This letter will be sent to WIPO Executives and Legal Counsel Members, as well as be posted online for Public Viewing.

This letter is also a Demand for a Retraction of Criminal Accusations. And a Demand for a Special Investigation by all proper authorities governing WIPO, RICO Conspiracy, International Fraud, Criminal, Collusion, and Intellectual Property Matters.

WIPO Director General Francis Gurry and Edward Kwakwa, WIPO Legal Counsel, World Intellectual Property Organization (WIPO), Geneva, Switzerland

My Name is Crystal L. Cox, I am the victim of WIPO Sole Panelist Peter L. Michaelson regarding a recent WIPO Decision Case (EP) D2012-1525.

Sole Panelist Peter L. Michaelson has defamed me and iViewit Founder / Inventor Eliot Bernstein. Sole Panelist Peter L. Michaelson has massive, undisclosed conflicts of interest in this WIPO decision.

In this WIPO case Sole Panelist Peter L. Michaelson has accused me, Respondent Crystal L. Cox and Eliot Bernstein of the Crime of Extortion. This is now a massive criminal and civil liability to WIPO. I demand that you report this to your insurance provider, your board of directors, and your shareholders immediately.

Sole Panelist Peter L. Michaelson knows that Eliot Bernstein and Crystal Cox was not under criminal investigation for Extortion, and Sole Panelist Peter L. Michaelson knows that Eliot Bernstein and Crystal Cox has had no criminal charges filed, no criminal trial, and certainly no criminal conviction of any kind. Eliot Bernstein and Crystal Cox was not on trial for Extortion nor has Respondent Eliot Bernstein nor Crystal Cox had a criminal extortion complaint filed. Yet Sole Panelist Peter L. Michaelson flat out states that Respondent Eliot Bernstein and Crystal Cox are guilty of the crime of extortion.

Sole Panelist Peter L. Michaelson accused Eliot Bernstein and Crystal Cox of the Crime of Extortion in a WIPO decision that is now picked up by Big Media, Countless Bloggers and is published globally in legal documents, dockets, intellectual property blogs magazines, and more. Therefore, Sole Panelist Peter L. Michaelson has massively defamed Respondent Crystal Cox and Eliot Bernstein, as well as interfered with ongoing iViewit Technology investigations by these

false Criminal Allegations of iViewit Founder Eliot Bernstein.

Sole Panelist Peter L. Michaelson's accusations in a distinguished WIPO Decision has massively defamed Eliot Bernstein and Crystal Cox. This has lead to character attacks, further defamation and incited hate toward Investigative Blogger Crystal L. Cox.

Sole Panelist Peter L. Michaelson took the word of the Respondent Marc Randazza, a Las Vegas Porn Attorney, over the word and documented proof of Defendant Crystal Cox.

Sole Panelist Peter L. Michaelson did no fact check or investigation into the allegations of Extortion. Sole Panelist Peter L. Michaelson simply accused Eliot Bernstein and Crystal Cox of Extortion in a WIPO Decision.

WIPO is not a Criminal Investigation Court. WIPO is not a Judge and a Jury. Yet Sole Panelist Peter L. Michaelson took it upon himself to convict Eliot Bernstein and Crystal Cox of Extortion.

WIPO has essentially signed my US constitutional rights over to international law and left me with no Constitutional Rights over the widespread ramifications of this publication.

Sole Panelist Peter L. Michaelson refused to signed a Conflict of Interest Disclosure in the WIPO Decision regarding Marc Randazza of Randazza Legal Group against Crystal Cox and Eliot Bernstein. Respondent Crystal Cox requested that the WIPO Panel Sign a Conflict of Interest Disclosure. This request was sent to Sole Panelist Peter L. Michaelson by WIPO and yet was NOT Signed and returned to Respondent Eliot Bernstein and Crystal Cox.

I, Crystal L. Cox, in my Pro Se Capacity Demand a Copy of Peter L. Michaelson's Statement of Acceptance and Declaration of Impartiality and Independence submitted to the WIPO Arbitration and Mediation Center. "In accordance with Rules, Paragraph 7, the above Panelist has submitted a Statement of Acceptance and Declaration of Impartiality and Independence to the WIPO Arbitration and Mediation Center." I have emailed WIPO with this request on several occasions and have been DENIED.

I have reason to believe that Sole Panelist Peter L. Michaelson has massive conflicts of interest regarding iViewit, Proskauer Rose, MPEG LA, Judith Kaye, Patent Theft, Eliot Bernstein and more regarding Eliot Bernstein and the Journalism of Investigative Blogger Crystal Cox regarding ALL named in the iViewit SEC Complaint, RICO Complaint and Legal Action surrounding iViewit Technologies Video Technology Theft by Proskauer Rose Attorneys.

Sole Panelist Peter L. Michaelson worked at Bell Lab with Proskauer Rose Attorney Kenneth Rubenstein whom was the main Patent Attorney involved in the theft of the 13 Trillion Dollar iViewit Technology theft. Proskauer Rose Patent attorney, who is also the MPEG LA head patent attorney, is named in RICO Complaints, Patent Lawsuits, and more regarding the iViewit Technology and Eliot Bernstein.

Peter L. Michaelson knows that he has massive conflicts of interest regarding being a Sole Panelist reviewing Domain Names owned by iViewit Founder and one of the iViewit Inventors, Eliot Bernstein. Peter L. Michaelson knows that he has massive conflicts of interest regarding being a Sole Panelist reviewing Domain Names  owned by Investigative Blogger Crystal L. Cox whom Peter L. Michaelson know has been reporting on the iViewit Technology theft for over 3 years. In fact, Peter L. Michaelson was a requested Panelist by Proskauer Rose Law Firm in WIPO Case (TG) D2011-0678, (CT) D2011-0679,(CT) D2011-0677, (CT) D2011-0675 (Complainant Proskauer Rose),  regarding Domain Name Disputes with  Proskauer Rose Lawyers and Investigative Blogger Crystal L. Cox. For proof of this, review the emails of that Case. If you can't find a Copy, I have attached one to this Letter.

Sole WIPO Panelist Peter L. Michaelson has conflicts of interest with MPEG LA, whom is named in the Eliot Bernstein RICO Complaints, SEC Complaints and Technology Infringement. Sole WIPO Panelist Peter L. Michaelson has conflicts of interest with MPEG LA's patent attorney Kenneth Rubenstein of Proskauer Rose Law Firm whom was the original Patent Attorney for iViewit and originally stole the 13 Trillion Dollar iViewit Technology.

Peter L. Michaelson is connected with Proskauer Rose in regard to the
 International Commission on Patent Disputes and the CPR Protocol on Determination of Damages in Arbitration. This too is an undisclosed Conflict of Interest.

Sole WIPO Panelist Peter L. Michaelson is connected to ex-Supreme Court Judge Judith Kaye who is also named in RICO Complaints, SEC Complaint, Patent Lawsuits and more in the iViewit Technology theft. As Judith Kaye was involved in covering up the theft. This was connected to the fact that her Husband was a Proskauer Rose Lawyer at that time, whom is now deceased.

In WIPO Decision Case No. D2012-1525, Sole Panelist Peter L. Michaelson names Proskauer Rose, and discusses my investigative writing of Proskauer Rose, Bruce Sewell Apple General Counsel who was Intel General Counsel when the iViewit Technology was stolen and Time Warner in conspiracy over the iViewit Technology. Proskauer Rose, Bruces Sewell of Apple and Time Warner had nothing to do with WIPO Case Case No. D2012-1525.

Sole Panelist Peter L. Michaelson brings up this point in order to attempt to protect those involved in the iViewit Technology theft in which Sole Panelist Peter L. Michaelson is in conspiracy and serious conflict of interest with. Why name Proskauer Rose, Bruce Sewell of Apple and Time Warner in a decision for a Domain Name regarding a Porn Industry Attorney named Marc Randazza and Domain Names owned by Investigative Blogger Crystal L. Cox and iViewit Founder / Inventor Eliot Bernstein.

I, Crystal L. Cox, in my Pro Se Capacity AGAIN, Demand a Copy of Peter L. Michaelson's Statement of Acceptance and Declaration of Impartiality and Independence submitted to the WIPO Arbitration and Mediation Center.

Sole Panelist Peter L. Michaelson used a New York Times article as Investigative Fact to Convict Eliot Bernstein and Crystal Cox of extortion in WIPO Decision.

David Carr of the New York Times wrote an article called, "When Truth Survives Free Speech". This is an "Opinion" of a journalist for the New York Times. It is not fact and has many false accusations and information. Sole Panelist Peter L. Michaelson references this article in his defamatory, criminal WIPO Decision.   An "article" in the New York Times, used as FACT in a decision for Intellectual Property Rights is not based in fact or in law. And in fact, is unlawful, illegal and WIPO is liable for his actions in this matter.

In my WIPO Complaint Response, I provided documentation to the FACT that there was no Extortion charges against me. I Provided eMail Communication between Attorney Marc Randazza and myself Defendant Crystal Cox. I even provided the WIPO Panelist with a Copy of an eMail from Marc Randazza to Defendant Crystal Cox, stating that he would represent me in my Appeal of Obsidian Finance Group V. Crystal Cox.

Sole Panelist Peter L. Michaelson deliberately ignored my proof, my documents of facts, and simply went on the stated the word  of Complainant, Porn Attorney Marc Randazza.

Sole Panelist Peter L. Michaelson then went so far as to accuse me of a serious crime in a worldwide published WIPO Decision This is Illegal and WIPO is liable.

WIPO is not a Criminal Investigation Court and has no right to accuse me of a Crime in Published WIPO Decisions. In doing so, Sole Panelist Peter L. Michaelson has committed a Crime and has defamed me seriously. This has also caused me severe damage and backlash. I demand that WIPO publish a retraction of this Decision in no less than 3 major Media Outlets. And that WIPO retract this Defamatory, Criminal WIPO Decision.

Peter L. Michaelson has acted in conspiracy with Porn Attorney Marc Randazza in inciting Hate against Blogger Crystal Cox whom Marc Randazza was my
 attorney for a short time, and whom I Fired for acting unethically. Peter L. Michaelson has not reviewed the facts of this case, and instead Peter L. Michaelson has stated that Crystal Cox and Eliot Bernstein are guilty of Extortion.

WIPO showed extreme discrimination, prejudice and special favors to Marc Randazza throughout the process. WIPO even let Marc Randazza add several domain names to the WIPO complaint, BEFORE he even paid a filing fee.

I demand that there be a special investigations of all emails from WIPO to Marc Randazza, from Peter L. Michaelson to Marc Randazza, and a thorough examination of all documentation I submitted proving my case and that there
was no extortion charges against me.

**In WIPO Decision Case No. D2012-1525, Peter L. Michaelson states**

"Respondent's actions in registering and using the disputed domain names may appear, at a first glance, to simply be a vehicle through which she provides advertising through pay-per-click sites, but on slightly closer examination are actually components of an artifice intended to extort funds from the Complainant and thus a pretext for a rather egregious variant of cybersquatting. As such, none of those actions can or will serve as a predicate upon which the Respondent can lawfully develop any rights or legitimate interests in any of the disputed domain names."

Sole WIPO Panelist Peter L. Michaelson flat out lies in saying these sites are pay per click that I receive revenue from. I have not received revenue from disputed names. Any ads placed on said Domain Names were places by the Registrar, Godaddy, and the Revenue was taken by Godaddy and NOT Respondent.

Sole WIPO Panelist Peter L. Michaelson commits fraud and defamation in saying that Domain Names are "actually components of an artifice intended to extort funds from the Complainant". WIPO Panelist Peter L. Michaelson has no proof of Complainant being asked for money to remove blog post. WIPO Panelist Peter L. Michaelson has no proof of Complainant giving money to Respondent. WIPO Panelist Peter L. Michaelson has no proof what so ever of intention to "extort". WIPO Panelist Peter L. Michaelson simply goes on the word of Unethical Porn Industry Attorney Marc J. Randazza.

**WIPO  Panelist Peter L. Michaelson States:**

"the Respondent's intention, as reflected by the record, was never to solely provide, through her websites, speech critical of the Complainant. Rather, her objective in both registering and using the disputed names was apparently to engage in a rather sinister and tenacious scheme to extort money from the Complainant."

This is a flat out false  statement. The record shows that I purchased MarcRandazza.com on the same day that I had a Phone Meeting with Marc Randazza regarding representing me in my Obsidian Finance Group V. Crystal Cox, high profile Free Speech Case I was taking to the Ninth Court of Appeals. I did not post one word on that Blog until months later when I FIRED Marc Randazza and he had conspired with opposing counsel to STOP me from going to the NINTH with my Appeal.  My "objective" was to EXPOSE an unethical, hypocritical, lying, crooked attorney and to WARN others whom may have Marc Randazza do them what he did to me. I did not ask for money to remove information. In fact Marc Randazza offered to buy

MarcRandazza.com and email records that WIPO has seen, show that I rejected this offer and said that MarcRandazza.com was not for sale at ANY price. WIPO Panelist Peter L. Michaelson even saw an email where Respondent Marc Randazza says he did not mind me asking for a job, and that was the only reference of money that EVER Came UP. WIPO Panelist Peter L. Michaelson knows all of this and still Falsley accused me of Extortion in mass, high profile media.

**WIPO Panelist Peter L. Michaelson States:**

"Specifically, the Respondent first posted negative and false commentary on her websites that was intentionally calculated to injure the Complainant's on-line reputation and disrupt the Complainant's business conducted through his law firm. Thereafter, the Respondent used those sites in a manner that apparently optimized their ranking on the Google search engine in order to increase their visibility and prominence on search results yielded through a Google search of the Complainant, thus likely exacerbating the injury caused to the Complainant."

Again WIPO Panelist Peter L. Michaelson flat out lies. I, Respondent posted "commentary" in order to expose Marc Randazza, to discuss my experience with Marc Randazza as an attorney. From there I got lots of tips, so I posted more information. WIPO Panelist Peter L. Michaelson has no reason to believe that the "commentary" is false. As it is true to the absolute best of my knowledge and information.


WIPO Panelist Peter L. Michaelson has no right to flat out state the commentary to be false, as it was NOT false. And it certainly was not posted to then Extort Money from Marc Randazza. This makes no logical sense and has no records of proof.

And of course I "optimized" my "sites" that is the point of the internet. I am Media, and I get the stories found strong in the search, that is the point of the INTERNET. It is not some sinister extortion plot. I asked for and I received NO money from Marc Randazza. IN fact, WIPO Panelist Peter L. Michaelson has seen emails where Marc Randazza asked that I pay his expenses in representing me.

WIPO Panelist Peter L. Michaelson flat out lies in stating that I "intentially calculated to injure Complainant". I Intentionally wrote blog posts to expose what Marc Randazza had done to me, my experience with Marc Randazza and tips and information I had investigated and received regarding Marc Randazza and the Randazza Legal Group.

**WIPO Panelist Peter L. Michaelson States:**

"Once all this occurred, the Respondent then offered her reputational management services to the Complainant through which, for a considerable fee, she would remediate the Complainant's on-line reputation by eliminating all the negative and false commentary

of her own making and presumably also ceasing her use of the disputed domain names. Basically, for a price, she would undo the injury to the Complainant for which she was responsible for having created in the first place. This egregious conduct clearly constitutes bad faith under the Policy."

WIPO Panelist Peter L. Michaelson has defamed me and acted criminally in this statement as he falsely accused me of criminal activity. WIPO Panelist Peter L. Michaelson has seen emails and records that prove that did NOT offer to "remediate" anything for a fee.  I NEVER, EVER offered to eliminate any "commentary". This is a flat out false, defamatory statement with malice as WIPO Panelist Peter L. Michaelson had the emails and records proving this untrue. WIPO Panelist Peter L. Michaelson  flat out lies hypothesizing in a WIPO decision that I claimed I would undo injury that I did for a fee. This is NOT True.

I will NOT undo my blog posts for a price, and I never offered Such. My intention is to warn others potential clients on how dangerous and unethical that Marc Randazza and Randazza legal group is. There was no "price" offered. So WIPO Panelist Peter L. Michaelson saying that "Basically, for a price, she would undo the injury to the Complainant for which she was responsible for having created in the first place." this again is defamatory and I Demand WIPO issue a Retraction in major media sources.

In WIPO Decision Case No. D2012-1525, Peter L. Michaelson discusses Marc Randazza's given name and "Mark". Yet no Trademark Documents applied or were filed. And Marc Randazza goes by MarcoRandazza on Twitter, YouTube and his username on his own blog. There is no ™ on Marc Randazza's Blog. And there was no proof given to WIPO of Marc Randazza's "given name" as I believe his birth name is Marco Randazza and not Marc Randazza. Also note that this Marc Randazza is not the only Marc Randazza in the world and should not have a right to steal this intellectual property as the only rightful owner in the world.

**In WIPO Decision Case No. D2012-1525, Peter L. Michaelson States:**

"Third, the Respondent attempted to commercially benefit from registration of these names by offering  "reputation management" services to the Complainant – through baiting the Complainant into an extortionate scheme."

This is a flat out false claim, and is defamatory. I did not bait the Complainant, in fact Marc Randazza entered my life through channels other than me. Marc Randazza wanted to be my attorney in the biggest First Amendment Case out there at this time, and got very angry when I fired him as my Attorney and instead chose UCLA Professor Eugene Volokh.

**In WIPO Decision Case No. D2012-1525, Peter L. Michaelson States:**

"Specifically, once the Complainant declined her "reputation management" services, the Respondent then registered domain names that contained not only the Complainant's surname, but also the personal names of his wife and three year old daughter, and then included falsehoods about the Complainant on her websites to which the domain names resolved."

This is false and defamatory. I did not post falsehoods, nor did I start blogs to post falsehoods because Marc refused to pay me. I did not ask Marc Randazza to pay me to remove anything. My Blogs were to expose Marc Randazza. And there was NEVER a blog at the alleged domain of Marc Randazza's alleged daughter. Peter L. Michaelson flat out lies.

**In WIPO Decision Case No. D2012-1525, Peter L. Michaelson States:**

"The Respondent would then eliminate such sites, and hence the ensuing injury to the Complainant's reputation, only if the Complainant would purchase her "reputation management" services."

This never happened, and Peter L. Michaelson has again defamed and flat out lied about Respondent Crystal Cox. I NEVER offered to eliminate anything, Peter L. Michaelson has no proof of this. Peter L. Michaelson went on the stated word of unethical Porn Attorney Marc J. Randazza and Peter L. Michaelson had no FACTS or proof of any kind as to this statement. This flat out did NOT happen.

**In WIPO Decision Case No. D2012-1525, Peter L. Michaelson States:**

"Further, the Respondent repeatedly engaged in the same general type of extortionate conduct by offering her "reputation management" services to others, including as her targets various business people and third-party attorneys, thus reflecting a pattern of such conduct."

Sole WIPO Panelist Peter L. Michaelson has no proof of this being true. WIPO Panelist Peter L. Michaelson has no right to discuss or speculate regarding any other content, story, person or company I report on in my media. WIPO Panelist Peter L. Michaelson was to determine a decision regarding WIPO Decision Case No. D2012-1525 and not to speculate on all the alleged "others" that he falsely believes I have allegedly extorted.  I demand that WIPO Decision Case No. D2012-1525 Panelist Peter L. Michaelson issue a retraction regarding Respondent Crystal L. Cox, Immediately.

Based ONLY on the Word of Marc Randazza and not other evidence, Sole WIPO Panelist Peter L. Michaelson States:

"Fourth, Respondent Cox exhibited bad faith in transferring ownership of some of the disputed

domain names to Respondent Bernstein, who merely served as a proxy of the former, in an attempt to evade liability (via so-called "cyberflight") under the Policy."

WIPO Panelist Peter L. Michaelson's statements are false. WIPO Panelist Peter L. Michaelson should have looked at court records and proof of this before stating this defamatory and flat out false statement. Eliot Bernstein is NOT a Proxy. Eliot Bernstein owns a large portion of Domain Names I once owned. I have always owned and operated the blogs on those Domain Names. Eliot Bernstein was owed money by my, proof of this is in the court dockets.
Eliot Bernstein is being defamed here as well, for he is not nor has ever been a proxy.  WIPO Panelist Peter L. Michaelson falsely accuses Eliot Bernstein and Crystal Cox of "Cyberflight", which is simply not based in ANY Fact. Crystal Cox was, in no way attempting to evade liability. Said Domain Names are a constant liability, and a constant financial maintenance.

Page 2 of WIPO Decision Case No. D2012-1525 certifies this, "The Center appointed Peter L. Michaelson as the sole panelist in this matter on September 7, 2012. The Panel finds that it was properly constituted. The Panel has submitted the Statement of Acceptance and Declaration of Impartiality and Independence, as required by the Center to ensure compliance with paragraph 7 of the Rules." Yet WIPO  Panelist Peter L. Michaelson has massive undisclosed conflicts and is NOT Impartial. WIPO Panelist Peter L. Michaelson and WIPO officials refuse my requests for a copy of "the Statement of Acceptance and Declaration of Impartiality and Independence, as required by the Center to ensure compliance with paragraph 7 of the Rules".

MarcRandazza.com rightfully belongs to Blogger Crystal Cox.  MarcRandazza.com is a brand I created and is a domain name I got found strong in the search. Marc Randazza of Randazza Legal Group has no legal right to MarcRandazza.com.

MarcRandazza.com was not a commercial blog, it was a parody, a gripe site, a news outlet exposing an unethical attorney. MarcRandazza.com is the sole idea, invention and brand created by Internet Branding and SEO Expert Crystal Cox.

Marc Randazza of Randazza Legal Group conspired with WIPO Panelist Peter L. Michaelson to set up Crystal Cox and Eliot Bernstein for Extortion and to flat out accuse Crystal Cox and Eliot Bernstein of extortion in a widely published WIPO Decision. Marc Randazza of Randazza Legal Group also conspired with NPR, Forbes, PhillyLawBlog, PopeHate.com, Attorney Kenneth P. White, Judge Marco Hernandez and Obsidian V. Cox Opposing Counsel David S. Aman in order to make Respondent Crystal Cox look like an extortionist though I was not on trial for extortion. This was to pressure me to not take my Appeal to the Ninth and to make me look like a criminal and discredit me,  as my case will make it so that Bloggers have the Same Legal Rights as Traditional Media / Journalists. Big Media is trying to stop my appeal, Marc Randazza has intimidated me to not appeal. Marc Randazza even advised me to NOT appeal and attempted to make deals behind my back in Obsidian V. Cox as my attorney, negotiated deals that I had no knowledge of.

I, Investigative Blogger Crystal Cox will be publicly posting this letter at my New Blog FrancisGurry.com.

FrancisGurry.com was recently purchased by myself, Investigative Blogger Crystal L. Cox in order to expose the any possible Fraud, Deceit, Conflicts of Interest and possible corruption within the WIPO Organization.

FrancisGurry.com is not a commercial site. I will take NO Money for FrancisGurry.com. I will NOT remove ONE Word from FrancisGurry.com for Money.

The Object of FrancisGurry.com is to deeply investigate the WIPO organization and post information on a top of the search engines keyword rich domain name, which is the whole point of internet marketing for those of us who are Search Engine Marketing Experts.

FrancisGurry.com is a site of Public Interest and of Public Service. I will solicit tips, information, videos and documents in effort to investigative report on the WIPO Organization.

Crystal L. Cox
Pro Se Defendant, Pro Se Respondent
WIPO Decision Case No. D2012-1525


## Factual Allegations

The Following is stated Upon the knowledge and belief of Plaintiff Crystal Cox:

Plaintiff appears in this action "In Propria Persona" and asks that her points and authorities relied upon herein, and issues raised herein, must be addressed "on the merits" and not simply on her Pro Se Status.

In WIPO Decision Case No. D2012-1525, Defendant Peter L. Michaelson states false and defamatory statements regarding Plaintiff Cox to a third party and is therefore liable, by law for the irreparable damage and harm caused to Plaintiff Cox.

Defendant WIPO, World Intellectual Property Organization, should not have legal rights to violate the constitutional rights of U.S. Citizens, steal our life's work, steal our intellectual property, and wipe out massive online media content without First Amendment Adjudication of the rights of the individual.

Plaintiff Crystal Cox alleges that Defendant WIPO, World Intellectual Property Organization and other Defendants of this complaint

Plaintiff Crystal Cox alleges that Defendant WIPO, World Intellectual Property Organization and other Defendants of this complaint engaged in conspiratorial actions in which violated Plaintiff's constitutional rights, ruined Plaintiff's business, defamed Plaintiff, endangered Plaintiff, and ruined the quality of life of Plaintiff.

On November 30th 2011, Plaintiff Cox had a one day trial, and was issued a judgement against her for Defamation, in the amount of $2.5 Million Dollars, the Case was District of Oregon 3:11-cv-00057-HZ, Obsidian Finance Group v. Crystal Cox.

On approx., December 7th, 2011 Defendant Kashmir Hill, a Forbes Reporter, interviewed Defendant Kevin Padrick, the Plaintiff in that case, and Published false and defamatory statements to a third party concerning Plaintiff Crystal Cox.

After this time, multiple publications around the world reposted these same false and defamatory statements to a third party concerning Plaintiff Crystal Cox.

Approx. December 10th, 2011 Defendant David Carr interviewed Plaintiff Cox and Defendant Kevin Padrick, and on December 11, 2011, Defendant David Carr published a New York Times Article titled, "When Truth Survives Free Speech". Defendant David Carr referred to the false and defamatory statements previously made by Defendant Kashmir Hill in Forbes.

Defendant David Carr insinuated that Plaintiff Cox was guilty of extorting Defendant Padrick. Defendant David Carr posted these statements with knowledge of the facts, as Defendant David Carr interviewed Plaintiff Cox and knew that Cox claimed the email was in response to what attorney Defendant David Aman had sent her. Yet Defendant David Aman lied to Defendant David Carr and Defendant Carr believed Aman over Plaintiff Cox, though the facts were easy to see when the emails were read in context. It is an easily PROVEN fact that Plaintiff Cox sent that eMail in reply to an email from Defendant David Aman, an email threatening a lawsuit. And an email sent after that threat was put into action in a 10 Million Dollar Defamation Lawsuit.

Approx. March 30th, 2012, Defendant Marc Randazza began publishing false and defamatory statements to a third party concerning Plaintiff Crystal Cox, attacking a 3 year old online. Defendant Kashmir Hill then interviewed, spoke with Defendant Marc Randazza and published these same false and defamatory statements to a third party concerning Plaintiff Crystal Cox.

On April 2nd 2012, Defendant Kashmir Hill began publishing false and defamatory statements to a third party concerning Plaintiff Crystal Cox, attacking a 3 year old. Plaintiff Crystal Cox had no blog about a 3 year old, made no statements online about this three year old, yet Defendant Kashmir Hill knowingly posted false and defamatory information regarding Plaintiff Cox.

Defendant Jordan Rushie, Defendant Mulvihill and Rushie LLC published false and defamatory statements to a third party concerning Cox, in an article on Philly Law Blow, by Jordan Rushie, Titled " The Evolution of Crystal Cox: Anatomy of a Scammer", dated, April 3rd 2012. Defendant Jordan Rushie posted false and defamatory statements regarding Cox being guilty of extortion and attacking a three year old.

On April 6th 2012, Defendant Bob Garfield interviewed  Defendant Marc Randazza on Defendant wNYC, Defendant New York Public Radio. The show was called "COMBATING "BAD" SPEECH WITH MORE SPEECH", Dated, April 06, 2012. Defendant On the Media, as Exhibits show. Defendant Bob Garfield and Defendant Marc Randazza stated false and defamatory, slanderous statements to a third party concerning Plaintiff Cox. Defendant Bob Garfield and Defendant Marc Randazza accused Plaintiff Cox of attacking a child online, of being guilty of extortion, and all manner of unethical and criminal activity. These  false and defamatory statements to a third party concerning Plaintiff Cox in this world wide medium of communication has caused Plaintiff Cox immeasurable, irreparable damage.

On Jun 18th 2012, Defendant Marc Randazza filed a Czech court complaint against Plaintiff Cox and Eliot Bernstein, to initiate a domain name dispute. In this case, Defendant Marc Randazza stated false and defamatory statements to a third party concerning Plaintiff Cox.


Defendant Marc Randazza used Defendant Kashmir Hill, Defendant Jordan Rushie and Defendant David Carr's false and defamatory statements as his evidence to steal the intellectual property of Plaintiff Cox.

On July 27th 2012, Defendant Marc Randazza filed a WIPO complaint against Plaintiff Cox and Eliot Bernstein, to initiate a domain name dispute. In this case, Defendant Marc Randazza stated false and defamatory statements to a third party concerning Plaintiff Cox.  Defendant Marc Randazza used Defendant Kashmir Hill, Defendant Jordan Rushie and Defendant David Carr's false and defamatory statements as his evidence to steal the intellectual property of Plaintiff Cox. Defendant Marc Randazza also stated to third party WIPO that Plaintiff Cox was guilty of Extortion and had also extorted him, yet attorney Defendant Marc Randazza had filed no criminal charges against Cox nor allowed her due process of law.

On November, 28, 2012 Defendant Marc Randazza filed a legal action against Plaintiff Cox in the District of Nevada. Defendant Randazza's attorney of record in this case is Ronald D. Green of Randazza Legal Group, the case number is District of Nevada Case 2:12-cv-02040-GMN-PAL. In this legal action, a third party, Defendant Marc Randazza, Cox's former attorney stated that Plaintiff Cox had extorted him and gave the false and defamatory statements of Defendants as his evidence.

Defendant Marc Randazza did not file criminal charges with the "authorities. Nor did Defendant Randazza file charges with the attorney general or any other body of authority, regarding his allegations that Plaintiff Cox had extorted him, was guilty of extortion or had been in a prior case where Cox was found guilty of extortion. Defendant Marc Randazza, an attorney, would certainly know how to file criminal charges. Defendant Marc Randazza violated the rights of his former client, Plaintiff Cox in not filing charges and allowing Cox due process of law. Instead, this well known attorney used world renowned media outlets such as Forbes, the New York Times and NPR, and an international, highly reputable publication put out by WIPO as his court of law, judge and jury and simply pronounced that Plaintiff Crystal Cox was guilty of extortion. As did Defendant Kashmir Hill, Defendant David Carr, Defendant David Aman, Defendant Kevin Padrick and John and Jane Doe Defendants.

Defendant Marc Randazza used the false and defamatory statements in Forbes and the New York Times made by Defendant Kashmir Hill and Defendant David Carr, as well as the false and defamatory statements made by attorney Defendant Jordan Rushie, as PROOF, evidence in a federal court case, that Plaintiff Cox had acted in "bad faith", had extorted him, and had attacked his child. Judge Gloria Navarro called this evidence "legal commentary" though it was false and defamatory statements made by Defendants to a third party concerning Plaintiff Cox. Consequently Plaintiff Cox lost massive online content, blogs and domain names simply due to the false and defamatory statements of defendants used by Judge Gloria Navarro as factual evidence.

On Nov. 30th 2011, Defendant Peter L. Michaelson, Sole WIPO Panelist, published false and defamatory statements to a third party concerning Plaintiff Cox And Eliot Bernstein in a WIPO publication, which has a widespread, international reader base. Defendant Peter L. Michaelson quoted Defendant David Carr's defamatory and false statements made to a third party concerning Plaintiff and used Defendant Carr and Defendant Hill's false and defamatory statement as evidence against Plaintiff Cox in seizing domain names belonging to her and to Bernstein. Defendant Peter L. Michaelson  took the stated word of Defendant Marc Randazza and published these false and defamatory statements to a third party. Defendant WIPO and Defendant Peter L. Michaelson accused Plaintiff Cox of the Crime of Extortion, of which is a false and defamatory statement to a third party, concerning Plaintiff Cox.

After Defendant Peter L. Michaelson's false and defamatory statements to a third party concerning Plaintiff Cox  And Eliot Bernstein were published in an International WIPO complaint, Defendant Marc Randazza via his attorney Ronald D. Green of Randazza Legal Group, at this point, used these false and defamatory statements to a third party concerning Plaintiff Cox to further harm, harass, defame and retaliate against Plaintiff Cox, even though Defendant Randazza was the one who made the Statements to WIPO in the first place.  At this point the statements in the WIPO publication made by Defendant Peter L. Michaelson of Defendant WIPO BECAME official evidence and proof in Defendant Randazza's case against Plaintiff Cox and Eliot Bernstein (District of Nevada Case 2:12-cv-02040-GMN-PAL).

Next, Judge Gloria Navarro used the "evidence", "legal commentary" and slough of false and defamatory statements as justification to give massive domain names and intellectual property to Defendant Marc Randazza in a preliminary injunction. This wiped out thousands of links, wiped out the search engine ranking of Plaintiff Cox, deleted massive amounts of content that Cox had created online, and damaged her intellectual property and online media. This action by a federal judge also caused a backlash of defamation, harassment, retaliation and loss of reputation, clients, friends and family (caused HARM to Plaintiff Cox).

Defendant Marc Randazza submitted false and defamatory statements by third parties into District of Nevada Case 2:12-cv-02040-GMN-PAL as factual evidence against Cox. Judge Gloria Navarro gave Defendant Marc Randazza the property of Plaintiff Cox without First Amendment Adjudication, without due process of law based on the false and defamatory statements of Defendants in this case.

**Plaintiff appears in this action "In Propria Persona" and asks that her points and authorities relied upon herein, and issues raised herein, must be addressed "on the merits" and not simply on her Pro Se Status.**

Oftentimes courts do not take Pro Se Litigants serious. I, Plaintiff Crystal Cox wish to be taken serious and to not have my allegation dismissed.

"Court errs if court dismisses pro se litigant without instructions of how pleadings are deficient and how to repair pleadings." Plaskey v CIA, 953 F .2nd 25. The Court granted such leniency, or "liberal construction," to pro se pleadings against the backdrop of Conley v. Gibson's undemanding "no set of facts" standard. ( See Conley v. Gibson, 355 U.S. 41, 45-46 (1957) ("[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."), abrogated by Bell Atl. Corp. v. Twombly, 550 U.S. 544, 561-63 (2007). This standard epitomized the notice-pleading regime envisioned by the drafters of the Federal Rules, who emphasized discovery as the stage at which a claim's true merit would come to light, rather than pleading. See Christopher M. Fairman, The Myth of Notice Pleading, 45 ARIZ. L. REV. 987, 990 (2003) ("With merits determination as the goal, the Federal Rules create a new procedural system that massively deemphasizes the role of pleadings.").

The Court's failure to explain how pro se pleadings are to be liberally construed. ( See Bacharach & Entzeroth, supra note 7, at 29-30 (asserting that because the Supreme Court never defined the "degree of relaxation" afforded pro se pleadings in comparison to the liberal notice pleading standard applicable to all litigants, lower

courts adopted different iterations of the rule). ~ .. indicates its belief that the standard was already lenient enough to render a detailed articulation of the practice unnecessary to prevent premature dismissal of meritorious cases. However, with Bell Atlantic Corp. v. Twombly ( 550 U.S. 544 (2007). and Ashcroft v. Iqbal ( 129 S. Ct. 1937 (2009) retiring the "no set of facts" standard and ratifying the means by which lower courts dismissed more disfavored cases under Conley, ( See generally Richard L. Marcus, The Revival of Fact Pleading Under the Federal Rules of Civil Procedure, 86 COLUM. L. REV. 433, 435-37 (1986) (explaining how the reemergence of fact pleading resulted from lower courts' refusals to accept conclusory allegations as sufficient under the Federal Rules in particular categories of suits).

.. liberal construction as presently practiced is not—if it ever was—sufficient to protect pro se litigants' access to courts. The new plausibility standard ( See Twombly, 550 U.S. at 570 (requiring a complaint to allege "enough facts to state a claim to relief that is plausible on its face").. with which courts now determine the adequacy of complaints disproportionately harms pro se litigants. ( See Patricia W. Hatamyar, The Tao of Pleading: Do Twombly and Iqbal Matter Empirically?, 59 AM. U. L. REV. 553, 615 (2010) (observing a substantially greater increase in the rate of dismissal of pro se suits than represented suits post-Iqbal).

"Pro se complaint[s], 'however inartfully pleaded,' [are] held to 'less stringent standards than formal pleadings drafted by lawyers. ( Estelle v. Gamble, 429 U.S. 97, 106 (1976) (quoting Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (per curiam)).

HAINES v. KERNER, ET AL. 404 U.S. 519, 92 S. Ct. 594, 30 L. Ed. 2d 652. Whatever may be the limits on the scope of inquiry of courts into the internal administration of prisons, allegations such as those asserted by petitioner, however inartfully pleaded, are sufficient to call for the opportunity to offer supporting evidence. We cannot say with assurance that under the allegations of the pro se complaint, which we hold to less stringent standards than formal pleadings drafted by lawyers, it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). See Dioguardi v. Durning, 139 F.2d 774 (CA2 1944).

ESTELLE, CORRECTIONS DIRECTOR, ET AL. v. GAMBLE 29 U.S. 97, 97 S. Ct. 285, 50 L. Ed. 2d 251. We now consider whether respondent's complaint states a cognizable 1983 claim. The handwritten pro se document is to be liberally construed. As the Court unanimously held in Haines v. Kerner, 404 U.S. 519 (1972), a pro se complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears "beyond

doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Id., at 520-521, quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)

BALDWIN COUNTY WELCOME CENTER v. BROWN 466 U.S. 147, 104 S. Ct. 1723, 80 L. Ed. 2d 196, 52 U.S.L.W. 3751. Rule 8(f) provides that " pleadings shall be so construed as to do substantial justice." We frequently have stated that pro se pleadings are to be given a liberal construction.

HUGHES v. ROWE ET AL. 449 U.S. 5, 101 S. Ct. 173, 66 L. Ed. 2d 163, 49 U.S.L.W. 3346. Petitioner's complaint, like most prisoner complaints filed in the Northern District of Illinois, was not prepared by counsel. It is settled law that the allegations of such a complaint, "however inartfully pleaded" are held "to less stringent standards than formal pleadings drafted by lawyers, see Haines v. Kerner, 404 U.S. 519, 520 (1972). See also Maclin v. Paulson, 627 F.2d 83, 86 (CA7 1980); French v. Heyne, 547 F.2d 994, 996 (CA7 1976). Such a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Haines, supra, at 520-521. And, of course, the allegations of the complaint are generally taken as true for purposes of a motion to dismiss. Cruz v. Beto, 405 U.S. 319, 322 (1972).

Both the right to proceed pro se and liberal pleading standards reflect the modern civil legal system's emphasis on protecting access to courts. ( See, e.g., Phillips v. Cnty. of Allegheny, 515 F.3d 224, 230 (3d Cir. 2008) ("Few issues . . . are more significant than pleading standards, which are the key that opens access to courts."); Drew A. Swank, In Defense of Rules and Roles: The Need to Curb Extreme Forms of Pro Se Assistance and Accommodation in Litigation, 54 AM. U. L. REV. 1537, 1546 (2005) (noting that "[o]pen access to the courts for all citizens" is one of the principles upon which the right to prosecute one's own case is founded).

**Self-representation has firm roots in the notion that all individuals, no matter their status or wealth, are entitled to air grievances for which they may be entitled to relief.** ( See Swank, supra note 1, at 1546 (discussing the importance of self-representation to the fundamental precept of equality before the law).

Access, then, must not be contingent upon retaining counsel, lest the entitlement become a mere privilege denied to certain segments of society. Similarly, because pleading is the gateway by which litigants access federal courts, the drafters of the Federal Rules of Civil Procedure purposefully eschewed strict sufficiency standards. ( See Proceedings of the

Institute on Federal Rules (1938) (statement of Edgar Tolman),  reprinted in RULES OF
CIVIL PROCEDURE FOR THE DISTRICT COURTS OF THE UNITED STATES 301-13
(William W. Dawson ed., 1938).

In their place, the drafters instituted a regime in which a complaint quite easily entitled its
author to discovery in order to prevent dismissal of cases before litigants have
had an adequate opportunity to demonstrate their merit. ( See Mark Herrmann, James M.
Beck & Stephen B. Burbank, Debate, Plausible Denial: Should Congress Overrule
Twombly and Iqbal? 158 U. PA. L. REV. PENNUMBRA 141, 148 (2009), (Burbank,
Rebuttal) (asserting that the drafters of the Federal Rules objected to a technical pleading
regime because it would "too often cut[] off adjudication on the merits").

Recognizing that transsubstantive pleading standards do not sufficiently account for the
capability differential between represented and unrepresented litigants, the Supreme Court
fashioned a rule of special solicitude for pro se pleadings. ( See Robert Bacharach & Lyn
Entzeroth, Judicial Advocacy in Pro Se Litigation: A Return to Neutrality, 42 IND. L.REV.
19, 22-26 (2009) (noting that courts created ways to ensure that meritorious pro se suits
would not be dismissed simply because the litigants lacked legal knowledge and
experience, one of which was liberal construction).

Far from just articulating a common systemic value, though, the right to prosecute one's
own case without assistance of counsel in fact depends significantly upon liberal pleading
standards. ( Cf. Charles E. Clark, The New Federal Rules of Civil Procedure: The Last
Phase— Underlying Philosophy Embodied in Some of the Basic Provisions of the New
Procedure, 23 A.B.A. J. 976, 976-77 (1937) (commenting that liberal pleading rules were
necessary to mitigate information asymmetries between plaintiffs and defendants that often
led to premature dismissal of suits).

Notably, in no suits are such information asymmetries more apparent than those in which
pro se litigants sue represented adversaries. These types of suits comprise the vast
majority in which pro se litigants appear. Cf. Jonathan D. Rosenbloom, Exploring Methods
to Improve Management and Fairness in Pro Se Cases: A Study of the Pro Se Docket in
the Southern District of New York, 30 FORDHAM URB. L.J. 305, 323 (showing that the
majority of pro se cases involve unrepresented plaintiffs who sue governmental
defendants).

Plaintiff appears in this action **"In Propria Persona"** and asks that her points and
authorities relied upon herein, and issues raised herein, must be addressed **"on the
merits"**, Sanders v United States, 373 US 1, at 16, 17 (1963); and addressed with "clarity

and particularity", McCleskey v Zant, 111 S. Ct. 1454, at 1470-71 (1991); and afforded " a full and fair" evidentiary hearing, Townsend v Sain, 372 U.S.293, at p.1 (1962). See also Pickering v Pennsylvania Railroad Co., 151 F.2d 240 (3d Cir. 1945).

Pleadings of the Plaintiff SHALL NOT BE dismissed for lack of form or failure of process.

All the pleadings are as any reasonable man/woman would understand, and: "And be it further enacted. That no summons, writ, declaration, return, process, judgment, or other proceedings in civil cases in any of the courts or the United States, shall be abated, arrested, quashed or reversed, for any defect or want of form, but the said courts respectively shall proceed and give judgment according as the right of the cause and matter in law shall appear unto them, without regarding any imperfections, defects or want of form in such writ, declaration, or other pleading, returns process, judgment, or course of proceeding whatsoever, except those only in cases of demurrer, which the party demurring shall specially sit down and express together with his demurrer as the cause thereof.

And the said courts respectively shall and may, by virtue of this act, from time to time, amend all and every such imperfections, defects and wants of form, other than those only which the party demurring shall express as aforesaid, and **may at any, time, permit either of the parties to amend any defect in the process of pleadings upon such conditions as the said courts respectively shall in their discretion, and by their rules prescribe (a)"** *Judiciary Act of September 24, 1789*, Section 342, FIRST CONGRESS, Sess. 1, ch. 20, 1789.

## General Allegation / Background

I, Plaintiff Crystal L. Cox re-allege, and fully incorporate all previous paragraphs..

I, Plaintiff Crystal L. Cox Allege as Follows upon my knowledge and belief;

**False and Defamatory Statements were, without a doubt, made by Defendants to a Third Party Concerning Plaintiff and have caused Plaintiff Crystal Cox harm. Therefore Plaintiff Cox is entitled to recovery.**

## False and Defamatory Statements, Plaintiff Cox alleges;

**False and Defamatory Statements made by Defendant Kashmir Hill, Defendant Forbes Inc. to a third party concerning Plaintiff Cox.**

Allegations of False and Defamatory Statements published to a third party concerning Plaintiff Crystal Cox by Defendant Hill, Defendant Forbes.

**Defendant Kashmir Hill, Defendant Forbes stated;**

"Cox was unable to make much headway in ruining his Google search results with her domain-name buying and blogging. So she moved on to Randazza's family members who did not have much online content associated with their names. She bought the domain name for Marc's wife, Jennifer Randazza (and has already started dominating her first page of Google results with her hyperbolic posts). When Randazza still wouldn't buy her services Cox moved on to a younger member of the family:"

Defendant Kashmir Hill, Defendant Forbes has posted this false and defamatory statement to third parties concerning Plaintiff Cox. Defendant Kashmir Hill, Defendant Forbes has no way to prove this statement true, as Plaintiff Cox was never attempting to ruining Defendant Marc Randazza's "Google Search". Plaintiff Cox was fighting back, as she was being attacked by Defendant Marc Randazza and numerous attorney blogger attacking her reputation online, defaming her, harassing her and threatening her. Plaintiff Cox was exercising her right to Free Speech and criticizing Defendant Marc Randazza. Plaintiff Cox, never posted information regarding Defendant Marc Randazza or anyone else and asked for money to remove it. This NEVER happened, in any way, EVER.  Plaintiff Cox never threatened that if Defendant Marc Randazza did not buy her services, she would retaliate, and move on to a "younger member of the family". Plaintiff Cox never had a blog regarding a "younger member" of the family.  Plaintiff Cox has ever First Amendment right to criticize Jennifer Randazza.

Defendant Kashmir Hill, Defendant Forbes published the above false and defamatory statement to third parties concerning Plaintiff Cox with total disregard for the truth, and seemingly, no fact checking whatsoever.

**Defendant Kashmir Hill, Defendant Forbes stated;**

"Cox is an outlier. Her tactics are extreme ones. But we do now live in a world where

money can be made from ruining reputations and then offering to fix them. In the business world there is RipOffReport.com, a site that hosts negative reviews of businesses and offers a paid "ambassador program" to those businesses to help them improve the reviews on the site. There's also a series of sites that dig up people's mug shots from public records and post them so that they appear in those people's search results; they then offer to take them down for a fee.

How do we draw the line between speech rights and digital forms of extortion? It is not a new question for us in the Internet age, but it remains an unanswered one."

Defendant Kashmir Hill, Defendant Forbes insinuates unlawful "tactics" that do not exist nor has Plaintiff Cox ever been under investigation or convicted of such tactics.

False and Defamatory Statements published to a third party concerning Plaintiff Crystal Cox by Defendant Kashmir Hill, Defendant Kevin Padrick

"Cox contacted Obsidian and offered them "reputation services." Padrick sent along a copy of an email that Cox sent to his attorney:

## David Aman

| | |
|---|---|
| **From:** | Crystal L. Cox [savvybroker@yahoo.com] |
| **Sent:** | Wednesday, January 19, 2011 2:23 PM |
| **To:** | David Aman |
| **Subject:** | From Crystal L. Cox |

Hello David, I hope this eMail finds you doing well. All said and done, looks like Summit boys going to and Well I don't think that Kevin acted with the Highest of Integrity.. however at this Point in my Life it i to Think of Me.

So I want to Let you know and Obsidian Finance that I am now offering PR Services and Search Engine Management Services starting at $2500 a month to promote Law Firms... Finance Companies.. and to pro online reputations and promote businesses..

Please Let me know if Tonkon Torp or Obsidian Finance is interested in this service..

thanks for your time..

In Love and Light



**Crystal L. Cox**
Investigative Blogger
Real Estate Broker Owner -

**After a failed attempt to get the Oregon Attorney General to investigate Cox, Obsidian filed a defamation case in January 2011,"**

Upon knowledge and belief of Plaintiff Crystal Cox, Defendant Kevin Padrick, made false and defamatory statements to third party, Defendant Kashmir Hill, Defendant Forbes regarding Plaintiff Crystal Cox and an Oregon Attorney General Investigation.

Defendant Kashmir Hill, Defendant Forbes then made false and defamatory statements concerning Plaintiff Cox being investigated by the Oregon Attorney General to a third party. This has caused irreparable harm, stress, and global retaliation against Plaintiff Cox. And has thereby put her under constant attacks, harassment, threats and retaliation and has ruined her life. Each day or week, a new online media source picks up the information from the false and defamatory statements to third party, Defendant Kashmir Hill,

Defendant Forbes concerning Plaintiff Crystal Cox

Upon knowledge and belief of Plaintiff Crystal Cox, Defendant (attorney) Kevin Padrick, made false and defamatory statements to third party, Defendant Kashmir Hill, Defendant Forbes regarding Plaintiff Crystal Cox allegedly offering "reputation services" to him, through his attorney, Defendant David Aman. Defendant Kevin Padrick sent a partial eMail, in false light to entrap Plaintiff Crystal Cox for the crime of extortion, there were 5 emails and the email shown above was a direct RESPONSE from Plaintiff Cox in regard to a communication FROM Defendant Kevin Padrick's attorney Defendant David Aman. And the above partial eMail was sent a month after a legal threat communication, and after a 10 million dollar lawsuit was filed against Plaintiff Crystal Cox. The eMail was a private communication between counsel, as Plaintiff Crystal Cox was acting in her Pro Se manner and Defendant David Aman was the attorney of record for Defendant Kevin Padrick in this manner.

The email had the following Tonkon Torp, David S. Aman Disclaimer, of which Plaintiff Crystal Cox believed and relied on in her RESPONSE to Defendant David Aman's communication:

"The information contained in this e-mail message may be privileged, confidential, and protected from disclosure.  If you are not the intended recipient, any dissemination, distribution, or copying is strictly prohibited.  If any portion of this communication is interpreted as providing federal tax advice, Treasury Regulations require that we inform you that we neither intended nor wrote this communication for you to use in avoiding federal tax penalties that the IRS may attempt to impose and that you may not use it for such purpose.  If you think you have received this e-mail message in error, please e-mail the sender at david.aman@tonkon.com"

Defendant David Aman did not treat the emails with care, confidentiality, nor protect them from disclosure. Defendant David Aman mislead Plaintiff Crystal Cox, and used partial, private communications in order to paint Plaintiff Crystal Cox in false light, defame her, harass her, and ruin her life and business. Also note that Defendant David Aman, Defendant Kevin Padrick gave this email to Defendant Kashmir Hill, Defendant Forbes, after they already received a $2.5 million dollar judgement against Plaintiff Cox. Thereby insuring that Plaintiff Cox's life and way to make a living would be ruined, in defamatory retaliation. This was whistleblower retaliation and was unnecessary to the case in any way, as Defendant David Aman, Defendant Kevin Padrick, Defendant Kashmir Hill, and Defendant Forbes, clearly knew the truth BEFORE they maliciously defamed, attacked,

harassed, endangered and retaliated against Plaintiff Cox by publishing false and defamatory statements concerning Plaintiff Cox, to a third party.

On December 11, 2011, Defendant David Carr published a New York Times Article titled, "When Truth Survives Free Speech". In regard to Plaintiff Cox, Defendant David Carr stated,

"She said she remained convinced that Mr. Padrick would be indicted, "even if I have to stay on it for the next decade." But, as Forbes first pointed out following the verdict, she had been willing to negotiate a cease-fire."

Thereby proving that Forbes knew that the eMail was a way for Cox to show willingness to end the litigation and to "negotiate" a cease-fire, another words to STOP a 10 million dollar lawsuit against her from moving forward. Yet Defendant David Carr and Defendant Kashmir Hill still insinuated and flat out accused Plaintiff Cox of extortion, which is a crime, and did so, based on that same email and set of facts they already admitted to knowing.

Defendant David Carr interviewed Plaintiff Cox and knew that Cox claimed the email was in response to what attorney Defendant David Aman had sent her. Yet Defendant David Aman lied to Defendant David Carr and Carr believed Aman over Plaintiff Cox, though the facts were easy to see when the emails were read in context. It is a an easily PROVEN fact that Plaintiff Cox sent that eMail in reply to an email from Defendant David Aman, an email threatening a lawsuit. And an email sent after that legal threat was put into action in a 10 Million Dollar Defamation Lawsuit against Cox.

**Defendant (attorney) Marc Randazza, made false and defamatory statements to third party concerning Plaintiff Crystal Cox.**

Upon knowledge and belief of Plaintiff Crystal Cox, Defendant (attorney) Marc Randazza, made false and defamatory statements to third party concerning Plaintiff Crystal Cox, Defendant Kashmir Hill, Defendant Forbes regarding his being extorted by Plaintiff Cox, regarding a blog about a 3 year old that never existed.

See Exhibit G, Article Titled "Ugly New Reputation-Smearing Tactic: Going After A Toddler's Internet Footprint", Dated, 04/02/12

"Apparently I was not sufficiently threatened by this tactic, so Cox went on to register: fuckmarcrandazza.com, marcrandazzasucks.com, marcjrandazza.com, marcjohnrandazza.com, She also registered a great many Blogger accounts bearing my name, including markrandazza.blogger.com."

Plaintiff Crystal Cox was not threatening Defendant Marc Randazza, nor was Plaintiff

Crystal Cox using any alleged, "tactic". Plaintiff Crystal Cox simply asked her former attorney if he knew anyone that would hire her for marketing, and he went into a rage and retaliation campaign in big media, court documents, radio and online media in order to defame, harass, threaten, and discredit Plaintiff Cox.

Plaintiff Crystal Cox has every lawful and constitutional right to criticize her former attorney Defendant Marc Randazza. Plaintiff Cox never asked for money to remove online comment and Plaintiff Crystal Cox never told Defendant Marc Randazza, or insinuated that she would post false statements if he did not hire her "services". Defendant Marc Randazza and Defendant Kashmir Hill, Defendant Forbes painted this picture, published these false and defamatory statements concerning Plaintiff Crystal Cox to the world through various mediums of communication.

Exhibit G states, "..Perhaps due to the negative attention Cox took down the content she had started publishing on the nataliarandazza.com site." Defendant Marc Randazza stated this false and defamatory statement concerning Plaintiff Cox to Defendant Kashmir Hill, Defendant Forbes.

Defendant Kashmir Hill, Defendant Forbes then stated this false and defamatory statement concerning Plaintiff Cox to third parties. This statement is FALSE and there is no way to prove it true, as Plaintiff Cox never had content on that domain name, especially "negative attention" regarding a 3 year old. It is hard to imagine, or for me to have even fully understand at the moment I read this article, as to what toll it would take on my life. I, Plaintiff Crystal Cox, found that my lifetime friends, the person I loved dearly and was in a relationship with at the time, my family, my clients, online media, blogs, big media, radio, and people and mediums of communication around the world believed that I had targeted a three year old and that I had posted hate about a "toddler".

The backlash this created in my life is without the words to express it's depth of hate, harassment, and retaliation against me, Plaintiff Crystal Cox on a Daily Basis. And this is false and defamatory statement concerning Plaintiff Cox to third parties were not true, and not even based in truth. This lie, this false statement with total disregard for the truth, ruined my life in unimaginable ways.

Defendant Marc Randazza stated this false and defamatory statement concerning Plaintiff Cox, regarding this attack on a three year old,  to Defendant Kashmir Hill, Defendant Forbes. Defendant Kashmir Hill then published this to the world in a major media outlet

known by every household, worldwide, Defendant Forbes. Defendant Kashmir Hill did not question Godaddy for domain information, did not question Plaintiff Cox, did not have any proof at all that such a blog existed, yet went ahead and posted false and defamatory statement concerning Plaintiff Cox to the World.

Days after Defendant Kashmir Hill published the false and defamatory statements, on April 6th 2012, Defendant Bob Garfield interviewed Defendant Marc Randazza on Defendant wNYC, Defendant New York Public Radio. The show was called "COMBATING "BAD" SPEECH WITH MORE SPEECH", Dated, April 06, 2012. Defendant On the Media, as Exhibits show.

Defendant Bob Garfield and Defendant Marc Randazza stated false and defamatory statements to a third party concerning Plaintiff Cox. Defendant Bob Garfield and Defendant Marc Randazza accused Plaintiff Cox of attacking a child online, of being guilty of extortion, and all manner of unethical and criminal activity. Of which was not true. These false and defamatory statements to a third party concerning Plaintiff Cox in this world wide medium of communication has caused Plaintiff Cox immeasurable, irreparable damage.

It is a fact that Plaintiff Crystal Cox never extorted Defendant Marc Randazza, and it is a FACT that Plaintiff Cox, never had a blog posting negative remarks of any kind regarding a 3 year old.

Defendant Kashmir Hill, Defendant Forbes, in the above statements, makes it seem as if Plaintiff Cox does this "same thing", posts negative reviews and falsehoods and then offers to take them down for a fee. Plaintiff Cox never did this to Defendant Marc Randazza, nor to anyone else, EVER. Yet Defendant Hill is publishing this false and defamatory statement accusing Plaintiff Cox of Habitual Conduct.

Defendant Kevin Padrick, insinuates that Plaintiff Cox posted negative information and falsehoods about him, and then offered to take the information down for a fee. When the truth is, if this court reviews all the facts, it is easy to see that the email that Defendant David Aman send to Defendant Kevin Padrick, who then sent this information to Defendant Kashmir Hill, was an email sent in DIRECT response, a REPLY to an email sent to Plaintiff Crystal Cox by Defendant David Aman on behalf of his client Defendant Kevin Padrick ( Note, both Aman and Padrick are Oregon Attorneys that were involved in the $40 million dollar bankruptcy scandal that blogger Cox was reporting on.) The email send to Cox by Aman on behalf of Padrick, was a legal THREAT. 25 days later Defendant David Aman on behalf of his client Defendant Kevin Padrick filed a 10 million dollar lawsuit, after this

Plaintiff Cox sent the email to negotiate a settlement. Defendant Kashmir Hill and other defendants made this email look to be extortion, which was not based in factual evidence.

Defendant Kashmir Hill, Defendant Forbes makes it seem as if Defendant Cox posted Defamatory information because Padrick refused to pay for her "services".

Defendant Kashmir Hill, Defendant Forbes was reporting on the Obsidian Finance Group v. Crystal Cox defamation trial, whereby Plaintiff Cox received a $2.5 million dollar judgement against her. Plaintiff Cox was on trial for a blog post dated December 25th 2010. Plaintiff Cox was not on trial for extortion, nor were emails or extortion allegations material factors in this case.

Yet, maliciously, negligently, irresponsibly, Defendant Kashmir Hill, Defendant Forbes published / reported on an email sent between counsel (Cox being Pro Se), a month after the blog post that Cox was on trial for. The partial, out of context, email that Defendant Kashmir Hill, Defendant Forbes published was unnecessary to the story, and was not a material factor of the case. Defendant Hill simply posted this partial email in order to defame, discredit, harass and attack Plaintiff Cox, with total disregard to the facts of the case or the issue she was reporting on.

The truth is, the email was a communication between parties of a 10 million dollar litigation, and was part of one email, out of 5 emails sent after a legal threat and after a lawsuit was filed AGAINST Cox.

In context, with the ENTIRE reply email, and the surrounding emails, it clearly shows that Cox flat out stated she would not remove information and that the email was simply a negotiation of cease fire in order to get attorneys David Aman and Kevin Padrick to STOP a 10 million dollar litigation. It was a settlement offer, AFTER a legal threat and was AFTER a 10 million dollar lawsuit was filed against Cox by the parties involved in the eMail.

Plaintiff Cox is an Anti-Corruption Blogger and had been reporting on the unethical practices of Defendant David Aman and Defendant Kevin Padrick for 3 years prior. Plaintiff Cox never, EVER, posted a story, piece, blog post in order to get paid to take it down. Plaintiff Cox remains, to this day, dedicated to reporting on the details of that bankruptcy in order to bring justice and transparency to the U.S. bankruptcy courts.

Be it Defamation by Insinuation or flat out malicious defamation with knowledge of the facts, Defendant Kashmir Hill, Defendant Forbes has the world believing that Plaintiff Cox

using her powerful internet marketing skills to attack the online reputation of a 3 year old and to publish bad, negative, or false information and then ask for a fee to remove it. Plaintiff Crystal Cox has never done this, been investigated for such extortionary practices, nor ever convicted of such crimes.

Defendant Kashmir Hill, Defendant Forbes has published false and defamatory statement to third parties concerning Plaintiff Cox, and is liable for the damage they have caused Plaintiff Cox over 17 months and counting.

Also on April 6th, 2012, Defendant Bob Garfield interviewed Trevor Timm of EFF. The show was called "A Problematic Test Case for Bloggers as Journalists".

In this interview, Defendant Bob Garfield heard Trevor Timm speak of the fact that the Obsidian v. Cox trial was about ONE Blog Post dated December 25th, 2010. Yet Defendant Bob Garfield published false and defamatory allegations in regarding to Plaintiff Cox being guilty of extortion, or some tactic in which was extortionary. And Defendant Bob Garfield, along with Defendant Marc Randazza published false and defamatory to a third party regarding Plaintiff Cox, that claimed that Plaintiff Cox had been involved in some sort of ongoing shakedown, or extortion racket, and that Defendant Marc Randazza was one of her victims. However, this was not factual, in any way whatsoever. It was FALSE and Defamatory concerning Plaintiff Cox, and therefore Plaintiff Cox is entitled to recover of damages caused by these false and defamatory statements to a third party, accusing Cox of criminal activity of which she had not participated in, was not under investigation for and had not been convicted of in a court of law.

### Allegations of False and Defamatory Statements published to a third party concerning Plaintiff Crystal Cox made by Defendant Marc Randazza.

Defendant Marc Randazza, former attorney to Plaintiff Crystal Cox, went on a 17 month and counting, retaliation and defamatory attack on his former client Plaintiff Crystal Cox

**randazza.wordpress.com, Titled"Judge rules, again, that blogger Crystal Cox is not a journalist. You know why? Because she ISN'T a journalist.", dated March 30th, 2012**

"According to Kash, Padrick's firm found that Cox had created nearly 2,000 websites used to write about other companies. Padrick then said that Cox attempted to offer her "PR and search engine services" in order to fix Obsidian Finance's reputation. Sort of like a protection racket."

This is a false and defamatory statement concerning Plaintiff Cox. It is a malicious statement as Cox offered PR in a settlement negotiation. This was 3 years after she started reporting on Padrick and after Padrick sued Cox. Cox never offerd to fix Obsidian's reputation nor remove blog posts, as surrounding emails show. Plaintiff Cox was Defendant Randazza's attorney at one point and Defendant Randazza has copies of ALL emails in that thread, and has deliberately posted false and defamatory information concerning Cox with knowledge of the facts.

Defendant Randazza is in violation of law in his malicious retaliatory defamation.

"The message was clear. Shame about your messed up reputation. I can fix it for you. Never mind that I'm the one who messed it up."

This is a false and defamatory statement concerning Plaintiff Cox. This is defamation by insinuation and from a defamation lawyer specializing in this field and therefore having a greater duty of care to speak the truth. Especially a lawyer who once represented Plaintiff Cox and had ALL her files, emails and documents concerning the Obsidian case, including emails.

"Hernandez reasoned in his opinion that Cox did not qualify as a journalist. Go figure, given the fact that her writing is barely comprehensible. The only thing clear about it is that she does not seem to write as a journalist or an essayist, but more as an extortionist trying to hide among the bloggers."

This is a false and defamatory statement concerning Plaintiff Cox. Defendant Randazza again insinuates that Plaintiff Cox is an extortionist and repeatedly slams his former client and publishes false statements.

Defendant Marc Randazza should have a higher degree of care,  as Defendant Randazza was Plaintiff Cox's attorney and knew the facts, and Defendant Marc Randazza knew that Obsidian v. Cox was a Civil Trial, yet Defendant Marc Randazza published false and misleading statement concerning Plaintiff Cox to a third party, knowing full well that Plaintiff

Cox was not on trial for, convicted of, or even under investigation for being an "extortionist".

Plaintiff Cox never received money to remove blog posts, never asked to be paid to remove blog posts, and never posted investigative blogging on anyone, in order to later ask for payment of any kind. This is FALSE and Defamatory, and has led to immeasurable, irreparable damage to the life, business, quality of life and interpersonal relationships of Plaintiff Crystal Cox.

Defendant Marc Randazza claims that Plaintiff Cox extorted him too, just as she did Padrick. Yet Crystal Cox had extorted no one, was not under investigation for extortion nor was Cox convicted of extortion. Therefore all statements that Plaintiff Cox is an extortionist or extorted Defendant Marc Randazza or Defendant Kevin Padrick ARE, without a doubt, defamatory and false statement with actual malice, actual knowledge of the facts.

If Defendant Marc Randazza, Defendant David Aman or Defendant Kevin Padrick felt that had been victims of the crime of extortion, then as attorneys, which all 3 of them are, they would know how to file a criminal complaint and therefore allow Plaintiff Cox due process of law in the criminal justice system. However that is not what Defendant Marc Randazza, Defendant David Aman or Defendant Kevin Padrick did.

Instead Defendant Marc Randazza, Defendant David Aman, Defendant Kevin Padrick stated these false and defamatory statements concerning Plaintiff Cox to third party; Defendant Forbes, Defendant Kashmir Hill, Defendant David Coursey, Defendant Bob Garfield, Defendant NPR, Defendant Kenneth White, Defendant David Carr, Defendant New York Times, Defendant Philly Law Blog's Defendant Jordan Rushie, Defendant Peter L. Michaelson, Defendant WIPO, and Defendant 1-25 John and Jane Does. Who then stated these false and defamatory statements concerning Plaintiff Cox to third party ( the World), via an International WIPO publication, New York Times articles, NPR radio shows, Forbes news articles, legal blogs and more.

Defendant Marc Randazza, published the following false and defamatory statement regarding Plaintiff Cox, on The Legal Satyricon, his blog, in an article titled "Carlos Miller on Crystal Cox", dated, April 2nd 2012, as shown in Exhibits, Here is the statement:

"He wrote about **the Crystal Cox extortion** case back in December, and I missed the story. He's done as good a job as anyone, if not better, in showing how this is not a bloggers vs. journalists story at all."

Defendant Marc Randazza stated that "the Crystal Cox" was a case of extortion. Defendant Marc Randazza stated, "the Crystal Cox extortion case" on his attorney, legal commentary blog. Defendant Marc Randazza is an attorney and has a greater obligation to the public of care, duty, and negligence.

Extortion is Criminal. Stating the Crystal Cox extortion case implies that Plaintiff Crystal Cox was on trial for and convicted of the CRIME of Extortion. When in TRUTH, Plaintiff Crystal Cox was on trial for defamation in a civil case. Plaintiff Cox was not under investigation of extortion, was not involved in a "Crystal Cox extortion case" and had not been ever convicted of the crime of extortion.

As an attorney of law, Defendant Marc Randazza knew this and yet knowingly posted false and defamatory statements concerning Crystal Cox to a third party.

Also, as a greater degree of care, negligence, breach of duty, breach of confidentiality, and deliberately posting  false and defamatory statements concerning Crystal Cox to a third party, with actual knowledge of the facts, Defendant Marc Randazza was  acting as Plaintiff Cox's Attorney in December of 2011. Defendant Randazza had a phone conference with Plaintiff Cox, and was given ALL files pertaining to the Obsidian v. Cox Case. Defendant Randazza was negotiating a deal with Defendant David Aman and Defendant Kevin Padrick in this case. Defendant Marc Randazza knew full well that it was a civil trial and that it was in regard to defamation and ONE blog post. And that Obsidian v. Cox was NOT a criminal trial and was not a trial about extortion.  Defendant Marc Randazza posted this false and defamatory statements concerning Crystal Cox to a third party maliciously, deliberately and with absolute knowledge that is was false and defamatory.

Defendant Marc Randazza, published the following false and defamatory statement regarding Plaintiff Cox, on The Legal Satyricon, his blog, in an article titled ""How Crystal Cox is helping to prove the strength of the First Amendment"", dated, March 31st,  2012, as shown in Exhibits, Here is the statement:

"The campaign is now about exposing her so that she can't engage in her extortion scheme against anyone else. Popehat is leading the charge, and naturally, the Legal Satyricon is next to Popehat, shields to shoulders. Sequence, Inc. is part of the solution too, by exposing the attacks on Kevin Padrick, and shining a light on Cox's widespread extortion scheme, so is Philly Law Blog, and before any of the law blogger community jumped on the bandwagon, Salty Droid was out there all by himself, shining a little light "

This is a false and defamatory statement concerning Plaintiff Cox.  Defendant Randazza falsely states that his former client Plaintiff Cox is and has engaged in extortion, and is involved in a an extortion scheme, which is a crime.

**Allegations of False and Defamatory Statements published to a third party concerning Plaintiff Crystal Cox made by Defendant David Carr**

Defendant David Carr interview Plaintiff Cox and Defendant Kevin Padrick, and on December 11, 2011, Defendant David Carr published a New York Times Article titled, "When Truth Survives Free Speech".

"She said she remained convinced that Mr. Padrick would be indicted, "even if I have to stay on it for the next decade." But, as Forbes first pointed out following the verdict, she had been willing to negotiate a cease-fire.

"At this Point in my Life it is Time to Think of Me," she wrote in a letter to Mr. Padrick's lawyer, David Aman. "So I want to Let you know and Obsidian Finance that I am now offering PR Services and Search Engine Management Services starting at $2,500 a month," she wrote, to promote "Law Firms" and "Finance Companies" and "to protect online reputations and promote businesses."

What looked to be an unsubtle offer to holster her gun in exchange for a payoff was signed, "In Love and Light, Crystal Cox."

Ms. Cox said that she sent that note in response to a request from Mr. Padrick's attorney — Mr. Aman said he made no such inquiry — and that she was "not on trial for writing e-mails.""

This is a false and defamatory statement concerning Plaintiff Cox.

**Allegations of False and Defamatory Statements published to a third party concerning Plaintiff Crystal Cox made by Defendant Tracy Coenen**

**Defendant Tracy Coenen Article Titled "mArc RaNdaZza tAkeS bACk His NAmE", dated February 2nd, 2013.**

"He briefly agreed to represent Crystal Cox, then she changed her mind, got angry with Marc, and decided to register a bunch of domain names using Marc Randazza's name.

Then she  offered Randazza "reputation management services" (i.e. pay me a monthly fee, or else).  When he did not agree to pay her, Cox began posting defamatory content about him on multiple websites. This isn't the first time Cox has done this, and the rest of the world recognizes this as extortion."

Defendant Tracy Coenen obviously knows that Plaintiff Cox was represented in a legal matter by Defendant Randazza, be it brief or not, representation is representation, and as a fraud analyst Defendant Tracy Coenen has a heightened sense of duty of care to find the facts of these matters before posting false and defamatory statements concerning Plaintiff Crystal Cox.

Defendant Tracy Coenen admits to the fact that Randazza represented Cox, and Plaintiff Cox "changed her mind" and become upset with Marc. Indeed, I Plaintiff Cox did, as Defendant Randazza was negotiating a deal with Defendant Aman and Defendant Padrick, on my alleged behalf, of which I knew nothing about. My blogs were to criticize a former attorney for treating me badly, and to exercise my First Amendment right and NOT to extort my ex-attorney.

Defendant Tracy Coenen says that Plaintiff Cox registered domain names in order to later demand that Defendant Marc Randazza pay for reputation services or else. This defamation by "insinuation" is false and defamatory concerning Plaintiff Crystal Cox and is published to a third party. Defendant Tracy Coenen, being a fraud investigator, and knowledgeable in white collar crime, is even more negligent than most in claiming that Plaintiff Cox had engaged in illegal activities. Defendant Tracy Coenen published these false statement knowing they were false, as it was clear that Plaintiff Cox had not been under investigation of extortion or convicted of extortion.

"**Libel by implication** occurs when a defendant (1) juxtaposes a series of facts to as to imply a defamatory connection between them, or (2) creates a defamatory implication even though the particular facts are correct. Toney v. WCCO, 85 F.3d 383 (8th Cir. 1996)." Defendant Tracy Coenen is guilty of defamation by implication, in stating "ie or else.

A publication can convey a false and defamatory meaning by omitting or juxtaposing facts, even though all of the individual statements considered in isolation are literally true or non-defamatory. Turner v. KTRK Television, Inc., 38 S.W.3d 103 (Tex. 2000).

**Implied defamation** occurs when a publication states facts that are literally true, but produces a defamatory meaning apparent from a plain reading of the publication in its entirety. Chapin v. Knight-Ridder, Inc., 993 F.2d 1087 (4th Cir. 1993)


**Defendant Tracy Coenen Stated;**

""Crystal Cox didn't only lash out at Marc Randazza. She lashed out at his wife and their three year old daughter. Randazza and his family took Cox to court, alleging cyberpiracy and cybersquatting, among other things. In the meantime, a list of domain names containing Marc Randazza's name and registered by Crystal Cox were turned over to Marc Randazza pursuant to an arbitration decision by the World Intellectual Property Organization (WIPO). The WIPO decision stated that the domain names were registered and used in bad faith by Cox, who was attempting to extort Randazza and confuse consumers.

Defendant Tracy Coenen published false and defamatory statements concerning Plaintiff Cox to a third party in stating that Plaintiff Cox lashed out at a three year old. The Fact is that Plaintiff Cox never, EVER, posted anything regarding this three year old. Defendant Tracy Coenen knowingly published this harassing, retaliatory, false and defamatory statement concerning Plaintiff Cox.

**Defendant Tracy Coenen published false and defamatory statements in concerning Plaintiff Cox being guilty of extortion.**

Defendant Kashmir Hill, Defendant Forbes published an email from Plaintiff Cox to Defendant David Aman, and accused Plaintiff Cox of Extortion, which is criminal.

Defendant Marc Randazza also told Defendant Kashmir Hill, Defendant Forbes that Plaintiff Cox had extorted him. Defendant David Carr, Defendant New York Times then published these false and defamatory statements accusing Plaintiff Cox of the crime extortion. Defendant Marc Randazza then took the Defendant David Carr's false and defamatory statements, and the false and defamatory statements of Defendant Kashmir Hill, Defendant Forbes and filed a complaint with Defendant WIPO using the Forbes and New York Times articles as proof of Plaintiff Cox being GUILTY of extortion. Defendant Marc Randazza claimed to WIPO that Plaintiff Cox was guilty of extortion, had extorted him, and had a pattern and history of extortion. Though Plaintiff Cox had not been under investigation for extortion, on trial for extortion, nor EVER convicted of the crime of extortion.

Defendant Peter L. Michaelson, Panelist for Defendant WIPO then issued an international WIPO publication in which published false and defamatory statements to a third party concerning Plaintiff Crystal Cox and accusing her of the crime of extortion.

Then, Defendant Tracy Coenen published false and defamatory statements to a third party concerning Plaintiff Crystal Cox and the false and defamatory statements made by Defendant Peter L. Michaelson. "The WIPO decision stated that the domain names were registered and used in bad faith by Cox, who was attempting to extort Randazza and confuse consumers".

**Defendant Tracy Coenen article titled, "Stopping Crystal Cox's Harassment and Extortion" dated 7 December 2012.**

On top of this article is a copyrighted picture of Plaintiff Crystal Cox taken by Defendant Tracy Coenen and on the picture of Plaintiff Crystal Cox's fact, the words read "Extortionist Crystal Cox", the JPEG file is titled, "crystal-cox-blogger-extortion", and is thereby picked up by the search engine as such.

The picture is defamatory and false statements made to a third party concerning Plaintiff Cox and therefore Defendant Tracy Coenen is liable for damages to Plaintiff Crystal Cox.

**False and Defamatory Statement made by Defendant Tracy Coenen;**

"She offered Randazza "reputation management services," whereby she would refrain from posting defamatory things about him on her websites if Randazza paid her enough. That, my friends, is extortion."

This is a false and defamatory statement concerning Plaintiff Cox. Plaintiff Cox did not state to Defendant Randazza that if he paid her she would refrain from posting defamatory statements, this is not true. Tracy Coenen flat out claims that Plaintiff Cox is guilty of extortion. Tracy Coenen is a fraud analyst and has a greater duty of care to Plaintiff Cox.

**False and Defamatory Statement made by Defendant Tracy Coenen;**

"First she started her extortion plot against Randazza, asking him to pay her a large sum of

money, and posting defamatory content on marcrandazza.com when he refused. Cox then registered at least 31 more domain names with all or part of the names of plaintiffs. Defamatory content was added to those websites in an attempt to damage Randazza's reputation and mislead those who might be using a search engine to find Marc Randazza.

Crystal Cox's pricetag to stop the Randazza madness? $5 million. And she told the public that she'd keep registering domain names related to Randazza's name unless a court stopped her from doing so.

Marc Randazza and his family have sued to stop Cox from cybersquatting via domain names that include Randazza's name. And they have nicely outlined some of the interesting tactics Cox has used to terrorize them and others:

'As Cox targets many other individuals with her extortion scheme, the intent to profit is clear. Cox, on information and belief, when targeting other individuals, shows them what she is doing to [Randazza] and his family and uses this as a basis to extract or attempt to extract extortion fees from other third parties.'

"Randazza also says that Cox tried to stop him from testifying in a deposition related to one of the lawsuits against Cox."

This is a false and defamatory statement concerning Plaintiff Cox. The above quote is maliciously false and defamatory. Plaintiff Cox did not ask for money from Randazza. Plaintiff Cox did not terrorize Randazza. Plaintiff Cox exercised her first amendment right to criticize Defendant Randazza. The above statement is filled with false and defamatory statements published to a third party concerning Plaintiff Cox.

**False and Defamatory Statement made by Defendant Tracy Coenen;**

Defendant Tracy Coenen article titled, "Crystal Cox: Still an Extortionist"
6 December 2012.

"You may recall that earlier this year, Crystal Cox was up to her old tricks of defaming people on the internet, and offering them "reputation management services," whereby for a

nice sum of money she would remove the negative things she wrote about those individuals.

Cox went after Marc Randazza after becoming angry with him over his potential representation of her in another case involving extortion. The original case was noteworthy, not so much because it demonstrated Cox's fondness for attempting to destroy reputations and then offering to repair those reputations for a large sum of money, but because the judge ruled that Crystal Cox is not a journalist. (This is not to be confused with "bloggers are not journalists," which some people incorrectly reported after a key decision in the case. The decision was only that **blogger Crystal Cox** is not a journalist.)

In attempting to destroy Marc Randazza's reputation, Cox bought up a bunch of domain names associated with him, such as marcrandazza.com. Predictably, she offered "reputation management services," whereby if Marc agreed to pay her every month, she would not post reputation-destroying content about him on her websites.

Cox denied that she was trying to extort money from Randazza, writing on one of her sites (yes, this is verbatim, odd capitalization and all):

This is a false and defamatory statement concerning Plaintiff Cox.

**False and Defamatory Statement made by Defendant Tracy Coenen;**

"An arbitration panel issued a decision in favor of Marc Randazza, and has ordered that the domain names marcjohnrandazza.com, marcjrandazza.com, marcrandazza.com, marcrandazza.biz, marcrandazza.info and marcrandazza.mobi be transferred to him.

In that decision, the arbitration panel discusses the extortionist activities of Crystal Cox (emphasis mine):

Such websites are not "criticism sites" but merely a pretext for [Cox]'s bad faith **extortionate** use.

[snip]

Third, [Cox] attempted to commercially benefit from registration of these names by offering "reputation management" services to [Randazza] – through baiting [Randazza] into an **extortionate scheme**. Specifically, once [Randazza] declined her "reputation management" services, [Cox] then registered domain names that contained not only [Randazza]'s surname, but also the personal names of his wife and three year old daughter, and then included falsehoods about [Randazza] on her websites to which the domain names resolved. [Cox] would then eliminate such sites, and hence the ensuing injury to [Randazza]'s reputation, only if [Randazza] would purchase her "reputation management" services. Further, [Cox] repeatedly engaged in the same general type of **extortionate conduct** by offering her "reputation management" services to others, including as her targets various business people and third-party attorneys, thus reflecting a pattern of such conduct.

[snip]

Furthermore, [Cox]'s actions in registering and using the disputed domain names may appear, at a first glance, to simply be a vehicle through which she provides advertising through pay-per-click sites, but on slightly closer examination are actually components of an artifice intended to **extort** funds from [Randazza] and thus a pretext for a rather egregious variant of cybersquatting. As such, none of those actions can or will serve as a predicate upon which [Cox] can lawfully develop any rights or legitimate interests in any of the disputed domain names.

[snip]

In any event, for purposes of the Policy the Panel finds [Cox]'s intention, as reflected by the record, was never to solely provide, through her websites, speech critical of [Randazza]. Rather, her objective in both registering and using the disputed names was apparently to engage in a rather sinister and tenacious scheme to **extort** money from [Randazza]. Specifically, [Cox] first posted negative and false commentary on her websites that was intentionally calculated to injure [Randazza]'s on-line reputation and disrupt [Randazza]'s business conducted through his law firm. Thereafter, [Cox] used those sites in a manner that apparently optimized their ranking on the Google search engine in order to increase their visibility and prominence on search results yielded through a Google search of [Randazza], thus likely exacerbating the injury caused to [Randazza]. Once all this occurred, [Cox] then offered her reputational management services to [Randazza] through which, for a considerable fee, she would remediate [Randazza]'s on-line reputation by eliminating all the negative and false commentary of her own making and presumably also ceasing her use of the disputed domain names. Basically, for a price, she would undo the injury to [Randazza] for which she was responsible for having created in the first place. This egregious conduct clearly constitutes bad faith under the Policy.

So there you have it. Another discussion of Crystal Cox that concludes she was trying to extort people, not be an "investigative blogger" or "reputation manager" as she would have you believe."

This is a false and defamatory statement concerning Plaintiff Cox. It is not a defense that Tracy Coenen republished these statements, she is liable for posting false and defamatory statements even if she posts them from another blog / website.

**False and Defamatory Statement made by Defendant Tracy Coenen;**

Defendant Tracy Coenen article titled "Crystal Cox, Extortionist? You Decide"
Dated April 4, 2012

"the story began to focus on acts by investigative blogger Crystal Cox that appeared to be extortionate. Namely, Cox smeared Kevin Padrick and Obsidian Finance using domain names like obsidianfinancesucks.blogspot.com and kevinpadrick.com, then offered to provide them "reputation management services" " he implication was clear: pay me into infinity and I will remove what I posted about you."

This is a false and defamatory statement concerning Plaintiff Cox.

**False and Defamatory Statement made by Defendant Tracy Coenen;**

Defendant Tracy Coenen article titled, ""Investigative Journalist" Crystal Cox Attacks Attorney Kevin D. Padrick", Dated March 31st 2012.

"It gets even better. Crystal Cox then attempted to extort Kevin D. Padrick and Obsidian Finance by offering to provide services to "protect online reputations" for a fee of $2,500 per month. Translation: "Pay me to take down the defamatory material."

**This is a false and defamatory statement concerning Plaintiff Cox.**

"Crystal Cox is hell-bent on destroying people who don't give in to her wishes. She has now gone after Marc Randazza, an attorney she begged to help her with an appeal in the Obsidian case, even going after Marc's wife and three year old daughter." "This tells you what kind of woman we are dealing with: Crystal Cox attacked Marc's innocent wife and three year old daughter."

**This is a false and defamatory statement concerning Plaintiff Cox. It is** not a defense in a court of law the Defendant Marc Randazza told her this and she believed it and posted it, it is false and defamatory.

Nor is it a defense that Defendant Kashmir Hill posted that Plaintiff Cox had a blog about a three year old, or attacked a 3 year old. The only defense against defamation is fact, and there is no way that Defendant Tracy Coenen can prove that Plaintiff Cox extorted Defendant Randazza, had a blog about a three year old, attacked a three year old, was involved in a shakedown, is an extortionist, or was on trial for extortion as Defendant Tracy Coenen stated / published to a third party concerning Plaintiff Cox.

Reposting false and defamatory statements is still defamation.

## Allegations of False and Defamatory Statements published to a third party concerning Plaintiff Crystal Cox made by Defendant Jordan Rushie, Defendant Mulvihill and Rushie LLC

Article on Philly Law Blog, by Jordan Rushie, Titled " The Evolution of Crystal Cox: Anatomy of a Scammer", dated, April 3rd 2012.

### Defendant Jordan Rushie, Defendant Mulvihill and Rushie LLC False and Defamatory Statements published to a third party concerning Cox.

"The trial transcript in Obsidian v. Cox is also now available. At trial, several expert witnesses testified that Kevin Padrick acted entirely appropriately in the Summit bankruptcy. Padrick also explained that when a company goes bankrupt, the money doesn't get taxed when it goes to the trust. This is because taxing the money when it went into the trust would essentially be taxing Summit's creditors, who are the victims, for the misdeeds of Summit. The testimony went uncontroverted."

This is false and defamatory. There were not several expert witnesses that stated that "Kevin Padrick acted entirely appropriately in the Summit bankruptcy". In a 1031 exchange company the creditors most certainly do owe tax if the exchange is not completed properly. The "victims" were parties in the  middle of an IRS code 1031 exchange, it was ALL a tax based business and tax issue.  Defendant Jordan Rushie has stated falsehoods and painted Plaintiff Cox in false and defamatory light.

Also one must note that there were eternally emails between many attorneys, and the Department of Justice, in which made the allegations of tax issues with not paying the taxes appropriate of a 1031.

Also note The testimony was also not uncontroverted, as I, Plaintiff Cox provided over 500 documents of proof. This is a false and defamatory statement to a third party concerning Cox.

Crystal L. Cox, Plaintiff, is a Real Estate Broker, essentially an expert herself on a 1031 Exchange.

**Defendant Jordan Rushie, Defendant Mulvihill and Rushie LLC False and Defamatory Statements published to a third party concerning Cox.**

"This is how Crystal Cox's scam works generally: Cox calls herself an investigative blogger / journalist. She posts a bunch of negative stuff about you on the internet. Then she buys a bunch of domain names about you, your family, and your business to make sure all her posts are at the top of a Google search. But lucky for you, Cox also happens to be a "reputation management specialist." Cox then offers to sell you "reputation management services" to clean it all up to the tune of $2500 a month.

As Carlos Miller aptly put it, Crystal Cox "is the cyber equivalent of the mob goons who firebomb your business, before demanding protection money.""
"You may remember that over the weekend I wrote a piece about Crystal Cox, when Cox went after Marc Randazza's three year old daughter after offering to sell Randazza "reputation management" services which he declined.

Yes, you read that right – apparently Crystal Cox went after a three year old when Randazza wouldn't buy reputation management services."

This is a false and defamatory statement concerning Plaintiff Cox.  Defendant Rushie flat out lies about Plaintiff Cox. Cox has never offered reputation services as an extortionary tactic.  Plaintiff Cox has never asked for protection money nor went after a three year old. This is false and defamatory statements concerning Plaintiff Cox made to a third party by Defendant Jordan Rushie.

"The truth is that this is the "Crystal Cox is not a journalist story because Cox tried to shake down people down and got burned for it" case."

This is a false and defamatory statement concerning Plaintiff Cox.

Defendant Jordan Rushie is an attorney, and therefore has a greater duty of care to not mislead the public as to what the Obsidian v. Cox case was about.  Defendant Jordan Rushie insinuates that the Crystal Cox case was about a shakedown, when it was about a $40 million bankruptcy and where the money went once the trustee took over. The blog post in which Cox was on trial for was a financial matter regarding a bankruptcy of a 1031 exchange company. This case was not about a shakedown, nor accusations of one. In fact the email that Defendant Jordan Rushie insinuates is extortionary, was sent a month after the blog post Cox was on trial for and AFTER Cox was sued and had nothing to do with why Cox was on trial.

"Marc Randazza wrote about what Cox did to his wife and 3 year old child. Popehat helped lead the charge to the truth. The New York Times and Forbes followed suit by writing the truth about Crystal Cox – that making defamatory posts and then demanding money for "reputation management" to take it down is not protected speech. David Carr, a writer for the New York Times specifically wrote a piece about how Cox tried the scam on him. Heroically, blogger Kashmir Hill wouldn't be be silenced when it comes to Crystal Cox, and neither would the Salty Droid or our friends over at the Fraud Files blog."

This is a false and defamatory statement concerning Plaintiff Cox.  Defendants acted in conspiracy to defame Plaintiff Cox. This statement paints a false and defamatory picture that an anti-corruption blogger, an advocated for victims of corruption has some sort of scam to buy domain names and then write false statements and charge a fee to remove those statements. This is not fact. This is a false and defamatory statement concerning Plaintiff Cox.

"David Aman, Kevin Padrick's attorney, sent a cease and desist letter to Cox on December 22, 2010. Padrick and Obsidian finally filed a lawsuit against Cox alleging defamation on January 14, 2011 in connection with those websites.

Shockingly, on January 19, 2011, just a few days after suit was filed, Cox offered Padrick and Obsidian, through their attorney David Aman, an offer to purchase her reputation management services:

Presumably, the offer was declined."

This is a false and defamatory statement concerning Plaintiff Cox.  Defendant Rushie seems to know that the email was AFTER the lawsuit was filed, yet accuses Cox of extortion.  Defendant Rushie paints Cox in false and defamatory light.  Defendant Rushie leaves out the surrounding emails which detail the offer and it was a settlement negotiation to end the threat of litigation and STOP the 10 million dollar lawsuit against Cox.

## Allegations of False and Defamatory Statements published to a third party concerning Plaintiff Crystal Cox made by Defendant Forbes Inc., Defendant Kashmir Hill

## Article, Exhibit C, Dated 7th, 2011, Titled "Why An Investment Firm Was Awarded $2.5 Million After Being Defamed By Blogger"

Defendant Forbes Inc., Defendant Kashmir Hill was negligent in posting the following false and defamatory statement in internationally published Forbes Inc. Publications.

Defendant Forbes Inc., Defendant Kashmir Hill's first false and defamatory publication was, Dated 7th, 2011, Titled "Why An Investment Firm Was Awarded $2.5 Million After Being Defamed By Blogger"

False and Defamatory Statements published to a third party concerning Plaintiff Crystal Cox made by Defendant Kashmir Hill.

"This has led to a slew of angry stories, pointing out that bloggers are journalists. But these stories have not dug deeply enough. The facts in the case are far more complicated, and after hearing them, most journalists will not want to include Cox in their camp."

AND

"This story is not like that of Johnny Northside Hoff, the Minneapolis blogger who was (unfairly) ordered to pay $60,000 to a university employee after a truthful post about mortgage fraud led to his firing."

AND

"If you Google Crystal Cox's work about Obsidian Financial Group, you will find a host of websites full of erratic writing about the firm's allegedly unethical practices, with domain names like "obsidianfinancialsucks.com." She mainly directed her ire at firm principal Kevin Padrick. His search results are ruined — dominated by posts on websites Cox created, such as "bankruptcytrustfraud.com,"

AND

" Obsidian's tech team found dozens of sites that appeared to have been created by Cox to write about Obsidian, says Padrick, and over 1,900 others that she had created to write about other people and companies. This is not the work of a journalist, but the work of someone intent on destroying reputations."

AND

"Cox contacted Obsidian and offered them "reputation services." Padrick sent along a copy of an email that Cox sent to his attorney:

## David Aman

| | |
|---|---|
| **From:** | Crystal L. Cox [savvybroker@yahoo.com] |
| **Sent:** | Wednesday, January 19, 2011 2:23 PM |
| **To:** | David Aman |
| **Subject:** | From Crystal L. Cox |

Hello David, I hope this eMail finds you doing well. All said and done, looks like Summit boys going to and Well I don't think that Kevin acted with the Highest of Integrity.. however at this Point in my Life it i to Think of Me.

So I want to Let you know and Obsidian Finance that I am now offering PR Services and Search Engine Management Services starting at $2500 a month to promote Law Firms... Finance Companies.. and to pro online reputations and promote businesses..

Please Let me know if Tonkon Torp or Obsidian Finance is interested in this service..

thanks for your time..


in Love and Light



**Crystal L. Cox**
Investigative Blogger
Real Estate Broker Owner -


After a failed attempt to get the Oregon Attorney General to investigate Cox, Obsidian filed a defamation case in January 2011, and Padrick first met Cox on the first day of the trial."


AND


"Obsidian's lawyers had asked for a million dollars. The jury awarded Obsidian and Patrick $2.5 million."

**False and Defamatory Statements published to a third party concerning Plaintiff Crystal Cox made by Defendant Forbes Inc., Defendant Kashmir Hill**

Defendant Forbes Inc., Defendant Kashmir Hill article dated, April 2nd 2012, Titled "Ugly New Reputation - Smearing Tactic; Going After a Toddler's Internet Footprint",

Plaintiff Cox never wrote a word about this "Toddler", nor did Plaintiff Cox go "after a Toddler's Internet Footprint".

Defendant Forbes Inc., Defendant Kashmir Hill was negligent in posting the following false and defamatory statement in internationally published Forbes Inc. Publications

Defendant Forbes Inc., Defendant Kashmir Hill's second false and defamatory publication

""Obsidian's lawyers had asked for a million dollars. The jury awarded Obsidian and Patrick $2.5 million."

AND

"After Obsidian sued Cox, she contacted them offering her "reputation services;" for $2,500 a month she could "fix" the firm's reputation and help promote its business. (In some circles, we call that "extortion."

AND

"the judge clarifying that bloggers can be journalists, but that Cox is a serial harasser, not a journalist.)"

AND

"Another lawyer, Marc Randazza, had also spoken with Cox about her case; after deciding not to work with him, Cox sent him an email letting him know that she "needed to make money" and was willing to offer him her reputation management services. In fact, she had

already bought his domain name (marcrandazza.com). Randazza writes on his blog:

> Apparently I was not sufficiently threatened by this tactic, so Cox went on to register:
>
> fuckmarcrandazza.com, marcrandazzasucks.com, marcjrandazza.com, marcjohnrandazza.com
>
> She also registered a great many Blogger accounts bearing my name, including markrandazza.blogger.com.
>
> via Judge rules, again, that blogger Crystal Cox is not a journalist. You know why? Because she ISN'T a journalist. « The Legal Satyricon."

AND

"(For disclosure's sake, I should mention that Cox also began blogging about me repeatedly around this time using the same tactics she used on Obsidian and Padrick, because I was the first to write a critical article about her tactics. When David Carr of the New York Times followed suit he also attracted her ire. "

AND

"She bought the domain name for Marc's wife, Jennifer Randazza (and has already started dominating her first page of Google results with her hyperbolic posts). When Randazza still wouldn't buy her services Cox moved on to a younger member of the family:

> When this didn't get the desired response, Cox turned to a place where even the lowest of the low would not stoop — she focused her stalkerish attention on my three-year-old daughter and registered NataliaRandazza.com.

via <u>Judge rules, again, that blogger Crystal Cox is not a journalist. You know why?</u>
<u>Because she ISN'T a journalist. « The Legal Satyricon</u>."

AND

"The search engine results for **three-year-old** Natalia Randazza are at this time dominated by content from her father, including a <u>'the baby has arrived' blog post with accompanying</u> <u>wrinkly newborn photo</u> and a few YouTube <u>baby videos</u> (classics like "Natalia's first bath"). There's also a page by some confused data grabber that suggests Natalia and Marc Randazza <u>are business associates</u>. Perhaps due to the negative attention Cox took down the content she had started publishing on the nataliarandazza.com site.

Randazza's struggle with Cox is representative of a much larger battle being waged on the Internet pitting free speech against our rights to protect our reputations. Randazza, a lawyer who has <u>in his career</u> fought to protect lots of troubling speech, understands this tension more than most. Yet he writes:

Fortunately, I had a large enough public reputation and the <u>Google</u> juice to withstand her attacks.

Kevin Padrick didn't have that luxury.
Other people won't have that luxury.
My three year old daughter doesn't have that luxury...

There is no doubt that the blogging community needs as many protections as it can get, and I believe many bloggers who I read, talk to and work with would qualify for protection under Oregon's shield statute. Crystal Cox did not, does not, and cannot advance this goal. If the blogging community wishes to stand among those with the title of "journalist," then it must reject people like Crystal Cox, and relegate them to their own bizarre, obsessive and child-targeting corner of the Internet.

She is not one of us.

She harms us.

via <u>Judge rules, again, that blogger Crystal Cox is not a journalist. You know why?
Because she ISN'T a journalist. « The Legal Satyricon</u>.

Cox is an outlier. Her tactics are extreme ones. But we do now live in a world where money can be made from ruining reputations and then offering to fix them."

"How do we draw the line between speech rights and digital forms of extortion?"

**Allegations of False and Defamatory Statements published to a third party
concerning Plaintiff Crystal Cox made by Defendant David Coursey, Defendant
Forbes.**

Defendant David Coursey, Dated 3/29/2012. Titled, "Are Bloggers Really Journalists? Not If They Ask For Money"

"Are Bloggers Really Journalists? Not If They Ask For Money"

This is a false and defamatory statement concerning Plaintiff Cox, published to a third party.

" anyone who supported Cox as a "member of the media" could look pretty foolish. When I read her blogs, I thought they were suspiciously over-the-top for journalism and "hinky" besides. The latter being a technical term I learned in newsrooms that describes something that doesn't seem right but you can't immediately figure out why and as a result stay away from reporting.

If what Judge Hernandez describes as true, Crystal Cox is not a journalist."

This is a false and defamatory statement concerning Plaintiff Cox, published to a third party.  Defendant David Coursey cannot prove this statement true of Plaintiff Cox.

"The bigger point — and this was apparently not known previously — was the shake-down aspect of the case which, if true, violates every standard that a real journalist — regardless of medium — holds dear."

This is a false and defamatory statement concerning Plaintiff Cox, published to a third party. There was no shakedown.  Defendant David Coursey knowingly posted these false and defamatory statements.

" This is an example of where journalism and pornography are both hard to define, but I know them when I see them."

This is a false and defamatory statement concerning Plaintiff Cox, published to a third party

**Allegations of False and Defamatory Statements published to a third party concerning Plaintiff Crystal Cox made by Defendant Peter L. Michaelson, Defendant WIPO.**

Marc J. Randazza v. Cox, Bernstein, WIPO Case No. D2012-1525, Publication Date November 30th, 2012.

**In WIPO Decision Case No. D2012-1525, Defendant Peter L. Michaelson states the following false and defamatory statements regarding Plaintiff Cox to a third party:**

"Respondent's actions in registering and using the disputed domain names may appear, at a first glance, to simply be a vehicle through which she provides advertising through pay-per-click sites, but on slightly closer examination are actually components of an artifice intended to extort funds from the Complainant and thus a pretext for a rather egregious variant of cybersquatting. As such, none of those actions can or will serve as a predicate upon which the Respondent can lawfully develop any rights or legitimate interests in any of the disputed domain names."

Defendant Peter L. Michaelson can only use truth as a defense in a defamation lawsuit, and Defendant Peter L. Michaelson cannot prove that Plaintiff Cox profited from said

domains, had pay per click ads in which she profited from, and "intended to extort funds". Defendant Peter L. Michaelson cannot prove that Plaintiff Cox is guilty of cybersquatting regarding said domain names. Nor can Defendant Peter L. Michaelson cannot prove that Plaintiff Cox had criminal intent. As he states that Plaintiff Cox had actions that predicate that are not lawful and therefore Cox is engaged in unlawful actions with said domain names and therefore not entitled to ownership of the domain names. This is false and defamatory and suggest that Plaintiff Cox was involved in criminal, unlawful activity of which Plaintiff Cox was not.

Defendant Peter L. Michaelson is accusing Plaintiff Cox of the crime of intending to extort funds. Defendant Peter L. Michaelson did not perform an investigation, nor did he file a criminal complaint and allow Plaintiff Cox due process of law, in order for a court of law to convict Plaintiff Cox, instead Defendant Peter L. Michaelson, a New Jersey, New York Attorney, simply flat out stated that Plaintiff Cox "intended to extort funds".  Plaintiff Cox NEVER intent to extort funds and did NOT extort funds.

**In WIPO Decision Case No. D2012-1525, Defendant Peter L. Michaelson states the following false and defamatory statements regarding Plaintiff Cox to a third party:**

"the Respondent's intention, as reflected by the record, was never to solely provide, through her websites, speech critical of the Complainant. Rather, her objective in both registering and using the disputed names was apparently to engage in a rather sinister and tenacious scheme to extort money from the Complainant."

Defendant Peter L. Michaelson published false statements regarding what the record shows and the "intentions" of Plaintiff Cox. Defendant Peter L. Michaelson accuses Plaintiff Cox of criminal activity and of being guilty of, somehow previously convicted of a "scheme" to "extort money".

Defendant Peter L. Michaelson has no way of "truth as defense", as Plaintiff Cox is not involved in an extortion scheme, nor has Plaintiff Cox been convicted by a court of law of extortion. It is not enough that Defendant Peter L. Michaelson may claim that Defendant Marc Randazza told him he was extorted by Plaintiff Cox. Nor is it a defense that Defendant Forbes Defendant New York Times, Defendant Jordan Rush published that Plaintiff Cox was guilty of extortion. It is a fact that Plaintiff Cox has not been under investigation for extortion, charged with the CRIME of extortion or convicted of extortion.

**In WIPO Decision Case No. D2012-1525, Defendant Peter L. Michaelson states the following false and defamatory statements regarding Plaintiff Cox to a third party:**

"Specifically, the Respondent first posted negative and false commentary on her websites that was intentionally calculated to injure the Complainant's on-line reputation and disrupt the Complainant's business conducted through his law firm. Thereafter, the Respondent used those sites in a manner that apparently optimized their ranking on the Google search engine in order to increase their visibility and prominence on search results yielded through a Google search of the Complainant, thus likely exacerbating the injury caused to the Complainant."

Defendant Peter L. Michaelson published false statements regarding the "Respondent", Plaintiff Cox, "posted negative and false commentary on her websites that was intentionally calculated to injure the Complainant's on-line reputation and disrupt the Complainant's business conducted through his law firm". Defendant Peter L. Michaelson has no way of "truth as defense", as Plaintiff Cox did not intentionally calculate to injure. Plaintiff Cox was well within her First Amendment right to criticize her former attorney Defendant Marc Randazza and to criticize his law firm of whom she had personal experience with.  Plaintiff Crystal Cox has every right to Rank higher in the search engines then Complainant Defendant Marc Randazza and his law firm Defendant Randazza Legal Group.

**In WIPO Decision Case No. D2012-1525, Defendant Peter L. Michaelson states the following false and defamatory statements regarding Plaintiff Cox to a third party:**

"Once all this occurred, the Respondent then offered her reputational management services to the Complainant through which, for a considerable fee, she would remediate the Complainant's on-line reputation by eliminating all the negative and false commentary of her own making and presumably also ceasing her use of the disputed domain names. Basically, for a price, she would undo the injury to the Complainant for which she was responsible for having created in the first place. This egregious conduct clearly constitutes bad faith under the Policy."

Defendant Peter L. Michaelson, known to be "buddies" with Defendant Marc Randazza such as INTA members reported to Plaintiff Cox, intentionally, knowingly published false and defamatory statement to a third party concerning Plaintiff Cox.

WIPO Panelist Defendant Peter L. Michaelson has stated false and defamatory statements to a third party concerning Plaintiff Cox involved in "bad faith" and offering to eliminate "all the negative and false commentary of her own making and presumably also ceasing her use of the disputed domain names. Basically, for a price, she would undo the injury to the Complainant for which she was responsible for having created in the first place."

Defendant Peter L. Michaelson has accused Plaintiff Cox of criminal behavior in which Plaintiff Cox did not partake in.  Defendant Peter L. Michaelson published to a global third party that Plaintiff Cox was engaged in criminal activity.

Defendant Peter L. Michaelson cannot use truth as a defense, as Plaintiff Cox had not published any reviews regarding Defendant Marc Randazza, good or bad, and then AFTER these postings ask for a payment of any kind to remove anything that she had posted. That simply NEVER happened.  Defendant Peter L. Michaelson published these false and defamatory statements to a third party concerning Plaintiff Cox with actual knowledge of the fact that they were not true. As there was no record of any online postings by Plaintiff Cox in any way regarding Defendant Marc Randazza prior to asking for any kind of job, and Plaintiff Cox never asked for money to remove negative or false commentary, that she had made prior, this never happened and proof does not exist.

**In WIPO Decision Case No. D2012-1525, Defendant Peter L. Michaelson states the following false and defamatory statements regarding Plaintiff Cox to a third party:**

"Third, the Respondent attempted to commercially benefit from registration of these names by offering "reputation management" services to the Complainant – through baiting the Complainant into an extortionate scheme."

This is a false and defamatory statement concerning Plaintiff Cox, published to a third party.  Plaintiff Cox did not attempt to commercial benefit and was not engaged in an "extortionate scheme".

**In WIPO Decision Case No. D2012-1525, Defendant Peter L. Michaelson states the following false and defamatory statements regarding Plaintiff Cox to a third party:**

"Specifically, once the Complainant declined her "reputation management" services, the Respondent then registered domain names that contained not only the Complainant's

surname, but also the personal names of his wife and three year old daughter, and then included falsehoods about the Complainant on her websites to which the domain names resolved."

This is a false and defamatory statement concerning Plaintiff Cox, published to a third party.

**Allegations of False and Defamatory Statements published to a third party concerning Plaintiff Crystal Cox made by Defendant Jason Jones of the Salty Droid Blog**

Defendant Jason Jones emailed Plaintiff Cox just after her trial and threatened to use whatever means necessary if she did not do as he wished her to do with her Obsidain v. Cox case appeal.

Below is from that eMail Thread

**"live to fight another day"**

**"I'm going to be inserting myself into this situation one way or another ... negotiating peace by pressuring both parties would be my first choice ... but there are other choices."**

"**From:** saltydroid <saltydroid@gmail.com>
**To:** Crystal@CrystalCox.com
**Sent:** Friday, December 9, 2011 4:28 PM
**Subject:** Complaint

Crystal ::

Can I see the complaint in the case please?

Also :: can you give me the elevator pitch for what the bad actions of Obsidian and Kevin Padrick have been? Off the record.

Did you try to get some pro bono help before you filed your response?

SaltyDroid "

'**From:** saltydroid <saltydroid@gmail.com>
**To:** Crystal L. Cox <savvybroker@yahoo.com>
**Sent:** Tuesday, December 13, 2011 1:57 AM
**Subject:** Re: Complaint

i guess you forgot about me.  it's strange ... people so rarely do.

On Fri, Dec 9, 2011 at 9:53 PM, Crystal L. Cox <savvybroker@yahoo.com> wrote:
 No I did not try to get pro bono, it all happened fast and at a bad time.
 I will forward you documents tomorrow, if i forget please email me, so much is going on..
 I am starting a new blog to focus for folks who just learn it..
 thank you for emailing me. .. i appreciate you..
 **Crystal L. Cox**

 **From:** saltydroid <saltydroid@gmail.com>
 **To:** Crystal L. Cox <savvybroker@yahoo.com>
 **Sent:** Tuesday, December 13, 2011 2:24 PM
 **Subject:** Re: Complaint

Hmmm.

I wonder ... if things are bad for you right now ... then why are you escalating and compounding your attacks? I don't fancy that's a very good idea.

Before I was an "investigative blogger" as you say, I was a lawyer. I think it is quite shocking that the court didn't apply the New York Times v. Sullivan standard in your case. It freaked me out when I first saw it ... but once I looked at the details **I understood.**

Crystal I think there's a very, very, good chance this will **end with you going to jail.** Having "Reputation Manager" and "Investigative Blogger" both in your signature line kinda tells the whole story. **Those two jobs are opposites** ... doing them both is hell-a like extortion. Add that to the fact that

you're attacking members of the bar ... a court appointed member of the bar no less ... and the fact that your case got all this press that didn't tell the whole story and made the court system look silly ... things are prolly much worse for you right now than you think.  You're going to force them {the government} to do something {the only way they ever do anything is when they're forced}.

You should stop not helping yourself as soon as possible.

Any chance you'd want **to negotiate the end** of this fiasco? You take down all your sites about Kevin and Obsidian and walk away into the sunset ... live to fight another day. Then they turn around and walk away as well without pressing the judgement or giving you any further issues ... avoiding establishing such a horrible precedent for free speech. I don't know if they'd do that but if you offered and they refused they'd look unreasonable.

**I'm going to be inserting myself into this situation one way or another ...** negotiating peace by pressuring both parties would be my first choice ... **but there are other choices.**

jason"


**The Salty Droid Article, "Crystal Cox's 5th Amendment Rights", Dated April 3 2012, written by Jason Jones.**

"The real The Crystal Cox Story is about local law enforcement's repeated failure to stop someone who obviously needed to be stopped."

This is a false and defamatory statement concerning Plaintiff Cox, published to a third party.


"You can count on one hand the number of people who wrote good stories about how extorting productive citizens shouldn't really count as journalism."

This is a false and defamatory statement concerning Plaintiff Cox, published to a third party.

"forcing Crystal Cox Investigative Cyber Extortionist to do what any hero of free speech would do"

"Thing is :: Crystal Dipshit is right about that. The Internet is currently being used for extortion on a grand scale ..."

""Nothing but respect" does not describe my feelings about defending criminal-non-speech as speech ..."

"There's a legal cliché about free speech not extending to shouting fire in crowded theatre ... it also doesn't extend to telling the theatre owner that if she doesn't pay you $2500 per month you're going to shout fire during every weekend showing of Hunger Games. That's crime not speech ... it needs to be stopped not protected.

The fight for free speech on the Internet is going to be about perception ... not precedent. Most people are silenced by the threat of expensive litigation before anybody starts cracking the goddamn precedent ... because the perception battle is being badly lost. It's the temperature of the chilling effect that will determine how much of the new people power will be boot stomped back underground ... and how much will survive to change the world."

This is a false and defamatory statement concerning Plaintiff Cox, published to a third party.

The Salty Droid Article, "Crystal Cox :: iS nOt a BLOgGER", December 14th, 2011.

Defendant Jason Jones Reposted the Forbes email and insinuated extortion.

Reposting false and defamatory statements is not protected speech.

The Salty Droid Article, "The Crystallization Method" Dated April 14th 2013, written by Jason Jones.

"Extortion is one of the categories of online speech in serious need of a chilling effect. You're not exactly the best example of it {whAt with your inAnity And All} :: but close enough"

This is a false and defamatory statement concerning Plaintiff Cox, published to a third

party.

The Salty Droid Article,  "The Trillion Dollar Trial of the Millennium" Dated March 21, 2013,

"Bernstein's got himself a top lawyer to handle the case too :: gal goes by the name of Cox … Crystal L. Cox."

This is a false and defamatory statement concerning Plaintiff Cox, published to a third party.

"Cox lost a lawsuit that seemed to have implications for free speech :: but turned out to be about cyber-extortion instead. 1st Amendment lawyer Marc Randazza was going to help out with the case :: but then he didn't."


## Allegations of False and Defamatory Statements published to a third party concerning Plaintiff Crystal Cox made by Defendant Roxanne Grinage

Upon Knowledge and Belief, Roxanne Grinage published defamatory statements concerning Cox to third party Bruce Sewell, APPLE General Counsel, Former Intel General Counsel AND to APPLE PR executive Steve Dowling.

Roxanne Grinage false and defamatory statements published to a third party concerning Plaintiff Cox.

http://www.hirelyrics.org/hirelyricscopyrighttrademarkcasestudies.html#.UXWNRbVJO9U

" Victims of Eliot Bernstein and Crystal Cox Cyber Extortion and Domain Name Defamation Schemes Justice is Alive and Well."


This is a false and defamatory statement concerning Plaintiff Cox, published to a third party.


"FREE SPEECH ALL GOOD UNTIL 30 BUSINESS LEADERS TELL THE TRUTH ABOUT CRYSTAL COX AND ELIOT BERNSTEIN CYBER EXTORTION SCHEMES"

This is a false and defamatory statement concerning Plaintiff Cox, published to a third party.  Plaintiff Cox is not guilty of Extortion, this is a false and defamatory statement.

"Feb 17 2013 CNNireport HireLyrics: Free Speech All Good Until 30 Business Leaders Tell The Truth About Eliot Bernstein Crystal Cox Cyber Extortion Schemes."

This is a false and defamatory statement concerning Plaintiff Cox, published to a third party.  Plaintiff Cox is not guilty of Extortion, this is a false and defamatory statement.

"seeking to bring our own charges against the Scam Blogger already adjudged $2.5M civilly liable/guilty in the Oregon Federal Court Kevin Padrick vs. Obsidian Financial for acquiring domain names of business people posting abusive and defamatory content, trying to sell them her reputation management services $2,500.00 per month to not publish defamatory content"

This is a false and defamatory statement concerning Plaintiff Cox, published to a third party.  Plaintiff Cox is not guilty of Extortion, this is a false and defamatory statement.

"Executives Steven Dowling and Bruce Sewell essentially warning them that the defamatory content they are posting on Bernstein and Cox owned stevedowling.com and brucesewell.net "will continue unless you pay us some money" ......."Eliot Bernstein and Crystal Cox attempt and massive con job with public opinion and post on Reverend Crystal Cox owned asking for tips to be sent to CrystalCox.com which is owned by Eliot Bernstein that the reason Cox and Bernstein couldn't get Apple to pay them is because of something Roxanne Grinage did which is to say on November 9th 2012 "DON'T PUT MY NAME ON ANY OF BERNSTEIN AND COX'S EXTORTION CRAP.""

This is a false and defamatory statement concerning Plaintiff Cox, published to a third party.  Plaintiff Cox is not guilty of Extortion, this is a false and defamatory statement. Plaintiff Cox never threatened to defame anyone EVER, if they did not pay money. This is maliciously false.

"Crystal Cox is running around the country demanding jury trials, selling her domains to Eliot Bernstein to hide her assets from having to pay the $2.5M Obsidian Financial v Cox Defamation Judgment; "

This is a false and defamatory statement concerning Plaintiff Cox, published to a third party.  Defendant Grinage accuses Plaintiff Cox of a Crime of hiding assets, of which is not factual. Defendant Grinage has knowingly posted this false and defamatory statement.

"01/14/13 Roxanne Grinage HireLyrics Administrative Services U.S. Citizens Public Docket Notice of Appearance and Certificate Service and Disclaimer in re Federal Trademark Lawsuit

Randazza et al vs Crystal Cox and Eliot Bernstein USDC NV Case No.
2-12-cv-02040-GMN-PAL"

The above links to a Notice of Appearance and Certificate of Service and claimi to be filed on 1/
14/2013  however this document was never filed in District of Nevada Case
2:12-cv-02040-GMN-PAL. This is a false and defamatory statement concerning Plaintiff Cox.

Upon Knowledge and Belief, Defendant Grinage states she filed this document and alleges to be
part of a federal case, yet it is a matter of record, that this document is not on the docket for
District of Nevada Case 2:12-cv-02040-GMN-PAL. This is a fraudulent statement.

"... posting her abusive and defamatory content at cyber extortion domains owned by Crystal
Cox and Eliot Bernstein"

This is a false and defamatory statement concerning Plaintiff Cox, published to a third
party.

"Your complaint filed 11/28/2012 in U.S. District Court of Nevada, against Bernstein and Cox and
my review of the docket report through yesterday, confirm for me that I have first-hand irrefutable
evidence against Eliot Bernstein that may assist law enforcement in learning Eliot Bernstein is
the sinister coward criminal mind behind a not too smart Crystal Cox who has sold some of her
domains to Eliot Bernstein to hide her assets and posts the defamatory content about Apple
Executives and now roxannegrinage.com after I told Eliot Bernstein and Crystal Cox on
November 9, 2012 to get my name off of email(s) to Apple Executives Bruce Sewell and Steven
Dowling that had anything to do with demanding money from anyone based on the threat of
posting defamatory content on domains named for real people. "

This is a false and defamatory statement concerning Plaintiff Cox, published to a third
party.

"The truth is that Eliot Bernstein is backing Cox because Cox is alienated and ostracized by
responsible bloggers, journalists and certainly all professionals transacting any legitimate
business.  Eliot Bernstein is the criminal mastermind behind what I see now on hind sight and
review of two five inch expandable redwells of printed file materials, a 1.5 inch three ring binder
and 2 4.7GB DVD Data Discs, document and audio files"

This is a false and defamatory statement concerning Plaintiff Cox, published to a third
party.

"I am not too worried about Crystal Cox because as my husband pointed out she is just running all over the country abusing internet consumer audience reach to pick one fight after the next with anyone who won't succumb to Eliot Bernstein's and her extortion by domain defamation schemes.  She is spread way too thin and has not realized that Eliot Bernstein sits back comfortably watching her go on one kamikaze mission after the next: Defamation of Obsidian Financial people, Defamation of Apple Executives; Defamation of People and their families even children are fair game for Cox; offering to not defame people if you pay her $2,500 per month for reputation management services; breaking all kinds of laws like practicing law without a license....Cox speaks in court pleadings in pro se voice for herself but represents Eliot Bernstein Iviewit interests as well. "

This is a false and defamatory statement concerning Plaintiff Cox, published to a third party.

"Eliot Bernstein used his rage against me because I wouldn't go along with his extortion scheme with Crystal Cox against Apple executives Steven Dowling and Bruce Sewell,"

This is a false and defamatory statement concerning Plaintiff Cox, published to a third party.

Roxanne Grinage has also accused Plaintiff Cox of Extortion in videos published on YouTube.

## Cause of Action 1) Defamation
## 28:1332 Diversity-Libel,Assault,Slander

Common to All Defendants.

Plaintiff Crystal L. Cox re-alleges, restates and fully incorporates all of the previous paragraphs in their entirety.

Defendants have published the false and defamatory statements as alleged above to third parties on an internet website, in a WIPO publication, on radio, on blogs, and they have gone "viral". The Forbes article alone states it has had 17,700 views.

Defendants have knowingly and intentionally published the false and defamatory statements alleged with actual knowledge of their falsity and with actual malice, reckless

disregard for the truth and falsity of the statements. Defendant's acts in doing so were not privileged.

Upon the knowledge and Belief of Plaintiff Crystal L. Cox, Defendant Forbes Inc., Defendant Kashmir Hill published a communication to the public, in a national publication, which contained statements that make a claim, expressly stated or implied to be factual.

Defendant Forbes Inc., Defendant Kashmir Hill published false and defamatory statements in which gave the public at large, as well as potential customers and clients of Plaintiff Crystal Cox a negative or inferior image of Plaintiff Crystal Cox.

Defendant Forbes Inc., Defendant Kashmir Hill published false, misleading and defamatory statements against Plaintiff Crystal Cox which has led to irreparable damage to Plaintiff Crystal Cox.

Defendant Forbes Inc., Defendant Kashmir Hill had a "Duty of Care", a Professional Duty, and is experienced in legal matters as a paralegal and a previous law blogger,  to review all available information regarding the posting of the defamatory article and the privileged communication between attorneys ( Cox was acting in her Pro Se Capacity) in a legal case ( Obsidian Finance Group v. Crystal L. Cox). Defendant Kashmir Hill had access and knowledge of how to use Pacer, had access to case transcripts, could have contacted Plaintiff Crystal Cox for more information regarding eMails, and Defendant Kashmir Hill was negligent in simply posting the defamatory statements of Defendant Kevin Padrick to her, allegedly in a phone call interview, and following eMail in which contained a piece of one of five emails, in which painted Plaintiff Cox  in serious False Light, Defamed Plaintiff and over the last 17 months has been re-published in thousands of publications, and has cause massive hate, retaliation, legal action, threats and irreparable harm to Plaintiff Crystal Cox.

Civil Evidence Act 1968, Defendant Forbes Inc., Defendant Kashmir Hill alleged criminal acts committed by Plaintiff Cox, of which Plaintiff Cox had not been convicted of nor under investigation of.

Regarding Times v. Sullivan; Though Plaintiff Cox was a public figure at the time and remains to be, I Defendant Forbes Inc., Defendant Kashmir Hill had a duty, an obligation to verify information in which alleged, stated, or led readers, the public at large and potential customers and clients to believe that Plaintiff Cox was Guilty of the Crime of Extortion.

It would have been simple for a reporter, especially one with a strong background in legal commentary and blogger and one that is a paralegal experienced in which collar crime, to verify if what Defendant Kevin Padrick alleged to Defendant Forbes Inc., Defendant Kashmir Hill about Plaintiff Crystal Cox was fact or if it was simply a retaliatory act by a disgruntled litigant, who is an attorney.

Upon the knowledge and Belief of Plaintiff Crystal L. Cox, Defendant Forbes Inc., Defendant Kashmir Hill made the life and quality of life of blogger Crystal Cox the collateral damage in protecting the rights of journalist over the rights of bloggers.

Defendant Forbes Inc., Defendant Kashmir Hill flat out lied, and knowingly posted false and defamatory statements without any fact checking whatsoever, upon the knowledge and belief of Plaintiff Crystal Cox.

The false and defamatory statements that Defendant Forbes Inc., Defendant Kashmir Hill published, have been consistently re-published, globally for over 17 months and have been picked up by thousands of other publications.

Forbes is a household name, people take what Forbes says as FACT. Therefore, Defendant Forbes Inc., Defendant Kashmir Hill has an even greater degree to be responsible and duty of care in their reporting.

Defendant Forbes Inc., Defendant Kashmir Hill has no lawful right to publish statements that lead the public at large to believe that Plaintiff Crystal Cox was guilty of the crime of extortion.

### Claim for Defamation Requirement Legal Qualifications

### Elements of Claim of Defamation

The elements of a claim of defamation are (1) a false or defamatory statement by defendant concerning the plaintiff (2) publication to a third party (3) amounting to at least negligence, and (4) damages

Defendant Kashmir Hill, Defendant Forbes Inc. published false and defamatory statements concerning Plaintiff Cox. Defendant Kashmir Hill, Defendant Forbes Inc. published these false and defamatory statements to a third party. Defendant Kashmir Hill, Defendant Forbes Inc. published false and defamatory statements with seriously negligent, as

Defendant Kashmir Hill did not research facts, did not contact Plaintiff Cox for her side, did not read court transcripts, nor did Defendant Kashmir Hill contact the Oregon Attorney General in regard to allegations of an investigation requested of Plaintiff Cox. Defendant Kashmir Hill is a paralegal, and is experienced in white collar crime, as well as, is an experienced legal commentary blogger, and has an even higher sense of duty in performing diligence and fact checking before ruining the life and business of Plaintiff Cox, with total disregard for the Truth.

Published is defined in law by each time a viewer reads the post, therefore, the publishing is on going, 17 months and counting, as is the liability.

Defendant Marc Randazza, published false and defamatory statements concerning Plaintiff Cox.  Defendant Marc Randazza published these false and defamatory statements to a third party. Defendant Marc Randazza published false and defamatory statements with seriously negligent, as Defendant Marc Randazza knew that Plaintiff Cox was not on trial for Extortion nor under investigation of extortion.  Defendant Marc Randazza had represented Plaintiff Cox in this manner as her attorney briefly and had spoke, in depth with Plaintiff Cox and received privileged information in the case. Defendant Marc Randazza acted with total disregard for the Truth in publishing false and defamatory statements regarding Plaintiff Cox.

Defendant Defendant David Coursey, **David S. Aman, Forbes Inc., Randazza Legal Group,** and other defendants also published false and defamatory statements concerning Plaintiff Cox to a third party and were negligent.

### Defendant, Reporter Kashmir Hill had a heightened sense of responsibility.

The evidence to the world that she posted in Forbes to allegedly back up her allegations of Plaintiff Cox being an extortions was an email that she took as fact, painted to be the whole story and Defendant Kashmir Hill completely distorted the facts in order to paint Plaintiff Cox in false light and out to be a criminal guilty of extortion.

As a paralegal, an experienced legal blogger, and someone who worked in a law firm and is experienced in white collar crime, Defendant, Reporter Kashmir Hill could have easily determined the facts of the allegations she was making, stating, implying, and insinuating.

Defendant, Reporter Kashmir Hill could easily note that the private, personal email written by Plaintiff Cox that Defendant Hill posted, was a partial email and not the whole story. She could see that the eMail was sent from a Pro Se Litigant, as the record clearly shows a lawsuit had been filed against Plaintiff Cox with the parties in the email, BEFORE that email was sent.

Defendant, Reporter Kashmir Hill could easily note that the email was missing key elements such as the FACT that the email was a REPLY email from Plaintiff Cox to Defendant David Aman as he was the attorney of record for Defendant Kevin Padrick. This email was a communication between attorneys and a privileged one at that. Yet, in total disregard for the facts of the issue, Defendant Kashmir Hill went ahead and posted false and defamatory statements. Statements in which ruined the life of Plaintiff Crystal Cox, alienated friends and family, ruined business opportunities, caused massive global hate toward Plaintiff Cox, and constant online and in person attacks, ridicule, harassment and beratement.

With her background, Defendant, Reporter Kashmir Hill could easily see that the eMail written by Plaintiff Crystal Cox, in which Defendant Kashmir Hill published in Forbes, was dated January 19th, 2011. The blog post that Plaintiff Crystal Cox was on trial for in Obsidian v. Cox, and the ONLY blog post that the $2.5 Million VERDICT of Obsidian v. Cox was based on, was PUBLISHED on December 25th, 2010, as the record shows.

Therefore the accusations, allegations, and defamatory and false statement of Defendant Kashmir Hill are with BLATANT disregard of the facts. There is no way that an eMail sent 25 days after the "Cause of Action" of a lawsuit, a trial, was a material fact, in any way to why that cause of action may have occurred.

There is no way that the email had anything to do with the blog post, or the reason it was alleged to be defamation, as the eMail was sent 25 days later. This is a fact, and is easily notable to a paralegal, and someone as experienced in legal blogging, and white collar crime as Defendant Kashmir Hill is.

As a paralegal, a legal blogger and a seasoned reporter, Defendant Kashmir Hill would easily note that this email was sent AFTER a 10 Million Dollar lawsuit was filed against Plaintiff Cox, and nearly a month after the blog post Plaintiff Cox was on trial for, and therefore obviously had nothing to do with the material facts of the case. Yet Defendant Kashmir Hill took the word of Defendant Kevin Padrick, and with complete disregard for the truth, published false and defamatory statements regarding Plaintiff Cox in which has cause irreparable damage to Plaintiff Crystal Cox.

Defendant Kashmir Hill posted the false and defamatory statements for shock value, and to ruin the life, business and reputation of Plaintiff Crystal Cox, in retaliation, as she does not want bloggers to have equal rights under the law as journalists. Defendant Kashmir Hill took the stated word of Defendant Marc Randazza and Defendant Kevin Padrick and, in total disregard of the truth, published false and defamatory statements concerning Plaintiff Crystal Cox.

Defendant Kashmir Hill painted Plaintiff Cox in false and defamatory light to a global audience. Defendant Kashmir Hill made it seem to massive readers that Plaintiff Crystal Cox was a criminal, had extorted someone, and was guilty of extortion.

Defendant Kashmir Hill made it seem as if Anti-Corruption investigative blogger Plaintiff Crystal Cox had reported on alleged corruption in order to later extort those she was reporting on. When there was no factual base to this allegation. Plaintiff Cox had not been on trial for extortion allegations. Plaintiff Cox had not been under investigation for extortion allegations, nor had Plaintiff Cox EVER been convicted of Extortion. Yet Defendant Kashmir Hill has the whole world believing that Defendant Cox is guilty of the crime of extortion, and is thereby not trustworthy.

Defendant Kashmir Hill stated in Forbes Publication that Plaintiff Cox had been under investigation by the Oregon Attorney General and that when this did not "work", Defendant Kevin Padrick filed legal action against Plaintiff Cox. However, Plaintiff Crystal Cox was never under investigation by the Oregon Attorney General.

Plaintiff Cox was not reported to the Oregon Attorney General for criminal, civil nor does Plaintiff Cox have any kind of bad review or information reported to the Oregon Department of Justice / Oregon Attorney General.

Under a recent request by Plaintiff Cox, Pursuant to the Oregon open records law, ORS 192.410 to 192.505 to the Oregon Attorney General / Oregon Department of Justice, as shown in Exhibit D, Plaintiff Cox was told the following;

"On reviewing your request for records, we do not appear to have anything responsive to your request. Neither our **consumer protection nor our criminal justice unit** has a record of any complaints or other filings about you. And we have found no basis to think that the current or former Attorney General had any communications about you with anyone."

Yet Defendant Kashmir Hill stated that the Oregon Attorney General had been notified of Plaintiff Cox's activities, and Defendant Kashmir Hill insinuated that Plaintiff Cox was guilty of extortion, however seeings how the Oregon Attorney General complaint did not work, Defendant Padrick resorted to a lawsuit against Plaintiff Cox. This is false and defamatory, misleading information to the public concerning Plaintiff Cox.

Defendant David Aman sent to Defendant Kevin Padrick, and Defendant Padrick published to third party Defendant Kashmir Hill via an eMail to a high profile reporter, Defendant Kashmir Hill.  Then Defendant Forbes Inc. and Defendant Kashmir Hill, published to yet another third party, the entire world through Forbes Inc.'s trusted brand global media, which was picked up by thousands of other sites and blogs over 17 months and counting.

### The Truth is an affirmative Defense to Allegations of Defamation

There is no way for Defendant Forbes, Defendant Hill, Defendant Randazza to prove that statements, insinuations, or allegations of extortion are true.

Defendant Forbes, Defendant Hill, Defendant Randazza made false and defamatory statements concerning Plaintiff Crystal Cox.

Upon the knowledge and Belief of Plaintiff Crystal L. Cox, Defendant Forbes Inc., Defendant Kashmir Hill was negligent in posting the following false and defamatory statement in internationally published Forbes Inc. Publications

Defendant Forbes Inc., Defendant Kashmir Hill's first false and defamatory publication, Dated 7th, 2011, Titled "Why An Investment Firm Was Awarded $2.5 Million After Being Defamed By Blogger"

" Obsidian's tech team found dozens of sites that appeared to have been created by Cox to write about Obsidian, says Padrick, and over 1,900 others that she had created to write about other people and companies. This is not the work of a journalist, but the work of someone intent on destroying reputations."

Upon the knowledge and Belief of Plaintiff Crystal L. Cox, Defendant Forbes Inc., Defendant Kashmir Hill was negligent in reporting that Plaintiff Cox had 1900 blogs that had been created by Cox, and that these sites were used to write about Obsidian and

Padrick. Defendant Forbes Inc., Defendant Kashmir Hill was negligent did not fact check this information, nor ask Plaintiff Cox if she had that many sites, and if so what was the purpose of those sites.

Upon the knowledge and Belief of Plaintiff Crystal L. Cox, Defendant Forbes Inc., Defendant Kashmir Hill was negligent discriminated against Crystal Cox and took the word of Attorney, Plaintiff Kevin Padrick, without any investigations into the facts. Defendant Kashmir Hill has an even greater care of duty as she is not only an experienced reporter, and was a legal blogger at AboveTheLaw.com prior to being a Forbes Inc. Reporter, Defendant Kashmir Hill, as a paralegal at Covington & Burling in Washington, D.C., assisting on white collar crime cases.

"Cox contacted Obsidian and offered them "reputation services." Padrick sent along a copy of an email that Cox sent to his attorney:

## David Aman

| | |
|---|---|
| **From:** | Crystal L. Cox [savvybroker@yahoo.com] |
| **Sent:** | Wednesday, January 19, 2011 2:23 PM |
| **To:** | David Aman |
| **Subject:** | From Crystal L. Cox |

Hello David, I hope this eMail finds you doing well. All said and done, looks like Summit boys going to and Well I don't think that Kevin acted with the Highest of Integrity.. however at this Point in my Life it i to Think of Me.

So I want to Let you know and Obsidian Finance that I am now offering PR Services and Search Engine Management Services starting at $2500 a month to promote Law Firms... Finance Companies.. and to pro online reputations and promote businesses..

Please Let me know if Tonkon Torp or Obsidian Finance is interested in this service..

thanks for your time..

in Love and Light



**Crystal L. Cox**
Investigative Blogger
Real Estate Broker Owner

After a failed attempt to get the Oregon Attorney General to investigate Cox, Obsidian filed a defamation case in January 2011,"

It is negligent to simply take the word of one man, an attorney that a blogger had been reporting on for unethical actions for over 3 years, and to not ask the blogger for her side, nor bother to research the facts of the matter.

This eMail was taken out of context.  This eMail was in response, an actual REPLY to a Cease and Desist eMail ( a Legal Threat). This email was a negotiation to attempt to STOP years of Plaintiff Crystal Cox's life being tied up in litigation.

Defendant Kevin Padrick maliciously sent this eMail to Defendant Kashmir Hill in order to defame Cox, retaliate against Cox, and this was after Defendant Kevin Padrick had already received a $2.5 Million Dollar Judgement against Plaintiff Crystal Cox.
There was no reason to send an email out of context that was sent by a Pro Se Litigant acting as her own attorney, to Opposing Counsel ( Defendant David Aman, attorney for Defendant Kevin Padrick) And if Defendant Kevin Padrick and Defendant Kashmir Hill thought there was reason, then why take part of one eMail, in a 5 eMail thread, to simply paint Plaintiff Crystal Cox in false light, and maliciously defame Plaintiff Cox.

This is false and Defendant Forbes Inc., Defendant Kashmir Hill have caused massive, irreparable harm to Plaintiff Crystal Cox.

Article One, Exhibit C, Dated 7th, 2011, Titled "Why An Investment Firm Was Awarded $2.5 Million After Being Defamed By Blogger"

"If you Google Crystal Cox's work about Obsidian Financial Group, you will find a host of websites full of erratic writing about the firm's allegedly unethical practices, with domain names like "obsidianfinancialsucks.com." She mainly directed her ire at firm principal Kevin Padrick. His search results are ruined — dominated by posts on websites Cox created, such as "bankruptcytrustfraud.com,"

Defendant Forbes Inc., Defendant Kashmir Hill was negligent in not performing a simple whois search before reporting this fraudulent information. Defendant Forbes Inc., Defendant Kashmir Hill did not see a blog full of erratic writings alleging unethical practices, she simply took the word of Defendant Kevin Padrick and posted non-factual information regarding Plaintiff Crystal Cox. Proof being that Plaintiff Crystal Cox never owned nor had a blog, EVER, at the domain name "obsidianfinancialsucks.com." NOR

"bankruptcytrustfraud.com". Now, as seen in Exhibit E, numerous blogs around the world have picked up this Forbes Article and republished this bad, non-factual, defaming false information over and over, for 17 months and counting.

It is a Fact that Plaintiff Crystal L. Cox never owned nor published a blog on domain names, "obsidianfinancialsucks.com." NOR "bankruptcytrustfraud.com". Defendant Kashmir Hill has posted false and defamatory statements concerning Plaintiff Cox.


### Truth is the only defense in allegations of Defamation;

Defendant Forbes Inc., Defendant Kashmir Hill cannot prove that Plaintiff Crystal Cox has been convicted of Extortion,  as Plaintiff Crystal Cox has not been convicted of the crime of extortion, yet Defendant Forbes Inc., Defendant Kashmir Hill, published this allegation world wide and mislead the public at large, Defendant Forbes Inc.,
Defendant Kashmir Hill is liable for the damage this has caused Plaintiff Crystal Cox.

Defendant Forbes Inc., Defendant Kashmir Hill cannot prove that Plaintiff Crystal Cox owned domain names "obsidianfinancialsucks.com." NOR "bankruptcytrustfraud.com" and that Plaintiff Cox published "erratic writing about the firm's allegedly unethical practices" regarding Kevin Padrick and Obsidian on those domain names / sites. It is a fact that Plaintiff Crystal Cox has never owned domain names "obsidianfinancialsucks.com." NOR "bankruptcytrustfraud.com"

Defendant Forbes Inc., Defendant Kashmir Hill cannot prove that "Cox contacted Obsidian and offered them "reputation services." Padrick sent along a copy of an email that Cox sent to his attorney." This is false and misleading, as Plaintiff Crystal Cox replied to an email from Defendant Kevin Padrick's Attorney, Defendant David Aman of Defendant Tonkon Torp. Plaintiff Crystal Cox replied to an email containing a legal threat, and did so acting as her own attorney, in her Pro Se Capacity, that is a FACT. Defendant Forbes Inc.,
Defendant Kashmir Hill simply took the version of the communication from Defendant Kevin Padrick and did not fact check these allegations nor obtain a copy of the original email in full context, in order to actually paint the true story.


Defendant Forbes Inc., Defendant Kashmir Hill cannot prove this Forbes Inc. published statement { **"After a failed attempt to get the Oregon Attorney General to investigate Cox, Obsidian filed a defamation case in January 2011," }**

Yet Defendant Forbes, Defendant Kashmir Hill published this criminal allegation, this false, defamatory and misleading information.  Defendant Hill published this information without any kind of fact checking whatsoever. Defendant Hill took the word of Defendant Kevin Padrick and in breach of duty, breach of duty of care, and negligence did not bother to contact the Oregon Attorney General by phone, email or even through the use of the Oregon open records law, ORS 192.410 to 192.505, which is a simply matter of a quick eMail to the Oregon Department of Justice / the Oregon Attorney General.  And instead, Defendant Kashmir Hill simply published this false and defamatory statement to the public at large, which was picked up by thousands of other online publication. And has caused massive backlash and irreparable damage to Plaintiff Crystal Cox.

It is serious to allege, state, that Plaintiff Crystal Cox had a complaint filed with the Oregon Attorney General by an Oregon Attorney (Kevin D. Padrick), especially without contacting Plaintiff Cox, nor Oregon Officials in order to verify this defaming, harassing, false information that has caused irreparable harm to Plaintiff Crystal Cox, and has caused hate, retaliation, attacks, and constant duress for 17 months and counting. Defendant Forbes Inc., Defendant Kashmir Hill are liable for this damage.

Flat out stating that there was a complaint called in, written or in any way submitted to the Oregon Attorney General in regard to an investigation of Plaintiff Crystal Cox is life endangering, defamatory, harassing, negligent, unconstitutional and is quite possibly criminal endangerment and criminal defamation, upon the knowledge and belief of Plaintiff Crystal Cox.

**It is a Fact that there is no such record of this allegation, as proven by a sworn letter from the Oregon Attorney General office to me, Plaintiff Crystal Cox, this is Exhibit D.**

It is not a Freedom of Speech, nor covered under Shield Laws for Defendant Forbes, Defendant Kashmir Hill to state that Plaintiff Cox was under investigation by the Oregon Attorney General, when Plaintiff Cox was NOT under investigation nor had Cox even had so much as a "consumer complaint".

Defendant Forbes Inc., Defendant Kashmir Hill cannot prove that ""Obsidian's

lawyers had asked for a million dollars. The jury awarded Obsidian and Patrick $2.5 million." This statement is false, misleading and defamatory as it suggests that Plaintiff Cox is so "bad" that the jury awarded 1.5 million more than asked for. A quick fact check of court documents, easily found online. The lawsuit was for 10 Million Dollars against Cox filed by Padrick via Aman. At the time of the trial, the jury instructions was 1 million to Padrick and 1 million to Obsidian. NOT simply one million as Defendant Hill flat out stated. I, Plaintiff Crystal Cox am now a Pro Se Litigant in many cases due to these defamatory attacks. Information such as a million dollar difference in a jury instruction is an important fact, one that an experienced legal blogger, a paralegal experienced in white collar crime and a  seasoned reporter such as Defendant Hill is, should have been able to easily research and to understand the importance of this MILLION dollar difference.

Defendant Forbes Inc., Defendant Kashmir Hill cannot prove this allegation of extortion, or even misleading suggestion of Extortion; "After Obsidian sued Cox, she contacted them offering her "reputation services;" for $2,500 a month she could "fix" the firm's reputation and help promote its business. (In some circles, we call that "extortion." First of all Defendant Kashmir Hill admits knowledge that a lawsuit had already been filed when that email was sent, and as a paralegal, she would easily know that, at this time Plaintiff Cox was already acting as her own attorney and therefore Defendant Kashmir Hill was posting privileged attorney - client emails between attorneys in a 10 million dollar defamation case.

Also with this admitted knowledge, Defendant Kashmir Hill, a legal blogger and a paralegal,  would know that Plaintiff Cox was responding in regard to the legal action, the lawsuit against her and was not simply offer to fix some alleged damage to Padrick reputation that Cox had allegedly caused, and therefore this was a private settlement communication between attorneys of which she was not a party to and had no legal right to post part of one email, out of 5 in this negotiation and thereby paint Plaintiff Crystal Cox in false light and ruin her life, with total disregard of the facts of the case.

Defendant Forbes Inc., Defendant Kashmir Hill cannot prove that a "Judge" said the following; "the judge clarifying that bloggers can be journalists, but that Cox is a serial harasser, not a journalist.)" A "Judge" did not claim that Plaintiff Cox was a serial harasser.

Defendant Forbes Inc., Defendant Kashmir Hill cannot prove that ""Another lawyer, Marc Randazza, had also spoken with Cox about her case; after deciding not to work with him, Cox sent him an email letting him know that she "needed to make money" and was willing to offer him her reputation management services."

Defendant Marc Randazza was acting as an attorney for Plaintiff Crystal Cox in negotiations with Defendant David Aman and Defendant Kevin Padrick, that is a fact.

Defendant Marc Randazza had conversations with Plaintiff Crystal Cox regarding her online marketing, and the allegations against Cox and the fact that they were not true. Defendant Marc Randazza told Plaintiff Cox that he had no issue with her asking for a job. Plaintiff Crystal Cox had not posted anything online whatsoever regarding Marc Randazza when she asked him, her former attorney, if he knew anyone needing a marketing specialist as she needed a job. Defendant Forbes Inc., Defendant Kashmir Hill has distorted the facts, painted Plaintiff Crystal Cox in false light and maliciously defamed Plaintiff Crystal Cox.

Defendant Forbes Inc., Defendant Kashmir Hill States: "(For disclosure's sake, I should mention that Cox also began blogging about me repeatedly around this time using the same tactics she used on Obsidian and Padrick, because I was the first to write a critical article about her tactics. When David Carr of the New York Times followed suit he also attracted her ire." this is a false statement, as I, Plaintiff Crystal Cox was not using a "tactic" against Defendant Hill, in which she leads the reader to believe was also used against Defendant Randazza and Defendant Padrick.   I, Plaintiff Crystal Cox blogged about Kashmir Hill in order to defend myself against her defamatory publishings, as she removed my comments on her blog in which posted the proof that her allegations were false, misleading, defamatory and even endangering.

Defendant Forbes Inc., Defendant Kashmir Hill States: "She bought the domain name for Marc's wife, Jennifer Randazza (and has already started dominating her first page of Google results with her hyperbolic posts). When Randazza still wouldn't buy her services Cox moved on to a younger member of the family." this is false and misleading. I have every lawful right to buy the domain name of Defendant Randazza's wife and poke fun at this porn attorney and his attack on women in the public media.

I, Plaintiff Crystal Cox did not extort Defendant Randazza as this suggests, I simply asked if he knew anyone that would hire me. I did not state that if you don't hire me I will post bad stuff online. There was no retaliation for not buying my services.

Also note this was after Obsidian V. Cox and I was under high public scrutiny, it was not my intention in Obsidian nor with Defendant Randazza to "extort" anyone. The goal of Plaintiff Crystal Cox has always been to expose corruption, not to be corrupt. The goal of Plaintiff Crystal Cox has always been to support victims of corruption, citizen journalists and whistleblowers. Thousands of blog posts over 7 years by Plaintiff Crystal Cox proves this fact. Defendant Forbes Inc., Defendant Kashmir Hill did not research the facts regarding Plaintiff Crystal Cox, Defendant Hill simply maliciously defamed and attacked Plaintiff Crystal Cox with total disregard of the effect it would have on the personal life and business of Plaintiff Crystal Cox.

Defendant Forbes Inc., Defendant Kashmir Hill cannot prove that "The search engine results for **three-year-old** Natalia Randazza are at this time dominated by content from her father, including a 'the baby has arrived' blog post with accompanying wrinkly newborn photo and a few YouTube baby videos (classics like "Natalia's first bath"). There's also a page by some confused data grabber that suggests Natalia and Marc Randazza are business associates. Perhaps due to the negative attention Cox took down the content she had started publishing on the nataliarandazza.com site."

This is malicious defamation that has alienated my family, friends, clients, customers and the public at large and it is false. Plaintiff Crystal Cox never had a blog regarding this child. Plaintiff Crystal Cox never even had ONE blog post naming this child. Plaintiff Crystal Cox never took down anything published in this regard, as NOTHING ever was, this is a FACT. Defendant Forbes Inc., Defendant Kashmir Hill is liable for the massive stress and irreparable damage that she has caused to the life and business of Plaintiff Crystal Cox.

Defendant Forbes Inc., Defendant Kashmir Hill cannot prove that Plaintiff Crystal Cox ruined ANY reputation with the intent to profit, Defendant Hill States "Cox is an outlier. Her tactics are extreme ones. But we do now live in a world where money can be made from ruining reputations and then offering to fix them."

"How do we draw the line between speech rights and digital forms of extortion?"" Defendant Forbes Inc., Defendant Kashmir Hill has, AGAIN, misled the public that Plaintiff

Crystal Cox is guilty of extortion. Plaintiff Crystal Cox is an Anti-Corruption Blogger and does not do this to profit, nor to ruin reputations and certainly not to extort anyone. This is a false, defamatory and misleading statement by Defendant Forbes Inc., Defendant Kashmir Hill which has caused irreparable harm and suffering to Plaintiff Crystal Cox.

Also it is important to note, that not only did Defendant Forbes Inc., Defendant Kashmir Hill not get nor post my side, nor fact check these allegations, Defendant Forbes Inc., Defendant Kashmir Hill also removed comments I made on the articles defending myself from the false and defamatory remarks.

It is important to not that Defendant Kashmir Hill use to work at AboveTheLaw.com as a legal commentary blogger and Defendant Marc Randazza was their counsel. Defendant Kashmir Hill has a history, and serious conflicts of interest taking the word of Defendant Marc Randazza as fact without "fact checking" in any way.

Defendant Forbes, Defendant Kashmir Hill is not protected under the First Amendment, nor Shield Law, nor Times v. Sullivan, nor Gertz v. Welch, to negligently, with malice and without duty of care, defame Plaintiff Crystal Cox, maliciously.

## Publication and the Internet

It is often assumed that publication of internet material takes place when the material is first put online, but in law, publication occurs when a reader accesses the text. This means that a fresh publication takes place every time someone reads the material.

In Loutchansky v Times Newspapers Ltd (No. 2) (2001) The Times published articles claiming that Grigori Loutchansky, a businessman, was involved in crime. He sued for both the paper publication, and the use of the stories on the newspaper's website. The paper argued that, regarding online stories, publication should be deemed to take place just once, when the story was placed on the website. The Court of Appeal disagreed, and confirmed that each time the story was accessed it was a fresh publication. Therefore each time the story in which Defendant Marc Randazza, Defendand Forbes, Defendant Bob Garfield, Defendant Jordan Rushie, Defendant David Carr, Defendant Kashmir Hill published false and defamatory remarks, constitutes "publication", as a matter of law.

## Spoofs and Jokes in Defamation Law

It is often thought that if a defamatory allegation is clearly presented as part of a joke, there will be no liability, but this is not the case. Remember that in defamation, what is important is not what the speaker or writer meant, but the effect the statement would have on a listener or reader. If an ordinary, reasonable person would assume there was some truth behind the words, then there may be liability for defamation. The fact that satirical programmes and articles regularly take this risk does not mean that the risk does not exist. In Galloway v Jewish Communications Ltd (2008), MP George Galloway won £15,000 in damages from the Jewish community radio station Jcom. He sued over a programme which featured a fictitious Middle Eastern reporter called 'Georgie Galloway', whose only phrase was 'Kill the Jews!' Mr Galloway said that it implied he held anti-semitic views. Mr Justice Eady said that although the character was clearly intended to be a joke, the defamatory implication it carried was a serious one. Damages would have been higher had it not been for the fact that the radio station had relatively few listeners, and had apologised on its website.

If, however, it would be clear to any reasonable person that the words were not meant to be taken seriously, and that the writer is not alleging there is any truth behind the joke, there will be no defamatory meaning.  Elton John v The Guardian (2008),

**Obviously, saying that someone is guilty of an offence when they are not is defamatory.**

Even if Defendant Forbes, Defendant Hill, Defendant Randazza, Defendant Jason Jones, and other Defendants argue they did not state Cox was convicted of extortion, they are still guilty of defamation by Innuendoes.  A statement does need not make a direct criticism in order to be defamatory – a defamatory implication or innuendo is also defamation.

Libel by implication occurs when a defendant (1) juxtaposes a series of facts to as to imply a defamatory connection between them, or (2) creates a defamatory implication even though the particular facts are correct. Toney v. WCCO, 85 F.3d 383 (8th Cir. 1996).

A publication can convey a false and defamatory meaning by omitting or juxtaposing facts, even though all of the individual statements considered in isolation are literally true or non-defamatory. Turner v. KTRK Television, Inc., 38 S.W.3d 103 (Tex. 2000).

Implied defamation occurs when a publication states facts that are literally true, but produces a defamatory meaning apparent from a plain reading of the publication in its entirety. Chapin v. Knight-Ridder, Inc., 993 F.2d 1087 (4th Cir. 1993)

Defendants posted false and defamatory statements regarding Plaintiff Cox to a third party. Defendants are

liable for these statements and that harm caused to Plaintiff Cox.

ALL Defendants have "Unprivileged Publications" Status as a matter of law. The false and defamatory statements published to a third party concerning Plaintiff Crystal Cox and Eliot Bernstein are Unprivileged Publications.  Unprivileged Publications are those which falsely claim the plaintiff is guilty of a crime when no crime has been committed.

## Cause of Action 2.) 440 Civil Rights Violation

California Civil Jury Instructions, 3000. Violation of Federal Civil Rights (42 U.S.C. � 1983) In General - Essential Factual Elements

Plaintiff Cox claims that Defendants violated her civil rights. Plaintiffs Cox claims that defendants intentionally posted defaming and hateful statements online in global publications to defame, harass, intimidate, threaten and retaliate against Plaintiff Cox.

Plaintiff Crystal Cox was directly harmed by the actions of Defendants.

## Cause of Action 3.) Copyright Infringement

Common to Defendants Jason Jones of Salty Droid, Defendant David Aman, Defendant Kevin Padrick, Defendant Forbes Inc. Reporter Defendant Kashmir Hill and Defendants John and Jane Doe.

Plaintiff Cox incorporates the allegations and information in all preceding paragraph in their entirety.

Defendant David Aman, Defendant Kevin Padrick had no copyright to distribute Plaintiff Cox's intellectual property, her words to Defendant Forbes Inc. Reporter Defendant Kashmir Hill.

Defendant Kashmir Hill had no copyright license to publish this copyrighted material.

Defendant Jason Jones and other John and Jane Doe Defendants have violated copyright laws in publishing the copyrighted words of Plaintiff.

The email is Plaintiff Cox's own words, and is therefore copyrighted as such.

Defendant Jason Jones has stolen parts of videos, and photos that are copyrighted material and has no copyright license to have done so. Defendant Jason Jones has altered the manner in which these videos and photos were presented and has further defamed Plaintiff through violations of her copyrighted material.

Defendant Tracy Coenen has used copyrighted photos belonging to Plaintiff Cox on her blog to defame Cox with the words Extortionist over these stolen defamatory photos.

## Cause of Action 4.) Civil Conspiracy

Common to All Defendants. Plaintiff Cox incorporates the allegations and information in all preceding paragraph in their entirety.

Civil conspiracy is a recognized cause of action in California and in federal law.

The standard California jury instruction for conspiracy is governed by Rule 2.1050 of the California Rules of Court,

Upon Knowledge and Belief, Plaintiff Crystal Cox claims that she was harmed by Defendants acting in conspiracy to discredit her, defame her, pressure her to stop a federal court appeal, ruin her reputation acting together in online publications, speaking with each other and acting in concert and connection to each other to defame Plaintiff Cox and pressure her to stop her appeal in a high profile free speech case.

Upon Knowledge and Belief, Plaintiff Crystal Cox claims that Defendants are responsible for the harm caused to the reputation of Plaintiff's search engine business, investigative blog business and connected contracts and potential jobs, damage to interpersonal relationships and business relationships, inciting hate and affecting her quality of life, putting her under extreme hate and duress.

Upon Knowledge and Belief, Plaintiff Crystal Cox claims that Defendants emailed each other, spoke on the phone and in person and conspired to damage the reputation, business and life of Plaintiff Crystal Cox. And conspired to discredit the merits of Crystal Cox's appeal in order to favor Defendants ongoing Trade, pressure Plaintiff Cox to stop

her appeal or take a settlement offer, harass and threaten Plaintiff Cox, pressure Cox to silence her voice online, use these conspired publications to sue Plaintiff Cox and shut down blogs belonging to Plaintiff Cox.

Upon Knowledge and Belief, Defendants were aware that Plaintiff Crystal Cox had not been convicted of Extortion, and had not been under federal or local authorities investigation for the crime of Extortion, yet Defendants knowingly and in conspiracy with each other launched a continually campaign over 17 months and still ongoing, in order to paint Plaintiff Cox out to be guilty of extortion and thereby ensuring that Plaintiff Cox receive no more independent contracts for media related service, no search engine management clients and put Plaintiff Cox under massive pressure to force her to stop her ninth circuit appeal in Obsidian v. Cox.

Upon Knowledge and Belief, Defendants agreed that Plaintiff Cox was guilty of Extortion and that they would paint her out to be an extortionist, based on their own personal agreements of causing such harm and not based on any fact of conviction of Plaintiff Cox of the crime of Extortion.

Defendants are liable for the damage they have caused Plaintiff Cox personally and professionally over the last 17 months, and the irreparable, immeasurable damage their actions will cause for the remainder of Plaintiff's Cox's life.

"As long as two or more persons agree to perform a wrongful act, the law places civil liability for the resulting damages on all of them, regardless of whether they actually commit the tort themselves. 'The effect of charging . . . conspiratorial conduct is to implicate all . . . who agree to the plan to commit the wrong as well as those who actually carry it out.' " (*Wyatt v. Union Mortgage Co.* (1979) 24 Cal.3d 773, 784 [157 Cal.Rptr. 392, 598 P.2d 45], internal citations omitted.)

"The elements of a civil conspiracy are '(1) the formation and operation of the conspiracy; (2) the wrongful act or acts done pursuant thereto; and (3) the damage resulting.' " (*Mosier v. Southern California Physicians Insurance Exchange* (1998) 63 Cal.App.4th 1022, 1048 [74 Cal.Rptr.2d 550], internal citations omitted.)

Defendants have engaged in conspiracy to harm Plaintiff Cox.

Under California Law and Federal Law Defendants have engaged in tortuous conduct based on civil conspiracies that discriminate against Plaintiff Cox

The Cartwright Act governs actions based on conspiracies in restraint of trade. Defendants have acted in conspiracy against Plaintiff's Trade.

Defendants agreed, conspired, and engaged in collusion to deprive Plaintiff Cox of her reputation, future media contracts, right to quiet enjoyment and quality of life, business opportunity, and put Plaintiff Cox under extreme duress, hatred, and ongoing retaliation.

Upon Knowledge and Belief, Each Defendant agreed and published false and defamatory statements to a third party concerning Plaintiff Cox in order to discredit Plaintiff Cox and paint her in false light in order to further their cause, their agenda and their first amendment rights over the rights of Plaintiff Cox.

Many Defendants such as Forbes and the New York Times are large corporations. These defendants conspired to defame, discredit, humiliate and paint Plaintiff Cox in false light in order to STOP Plaintiff Cox from having support in her appeal to the ninth circuit in Obsidian v. Cox which is a case directly involving the rights of blogger vs. the rights of Media such as Forbes and the New York Times.

As a direct and proximate result of Defendants conduct, Plaintiff Crystal Cox has suffered and will continue to suffer, monetary loss, emotional suffering, quality of life suffering, irreparable injury to her business, reputation and good will.

Under NRS 597.810, Plaintiff Cox is entitled to relief, actual damages and punitive damages.

**Defendants such as Forbes and the New York, as well as other John and Jane Doe Defendants desperately needed to slow down, or even halt the Crystal Cox Story as it had set off a global alarm in a ruling that bloggers are not journalists.**

This opened a decade long debate and controversy on just who is concerned a journalist, as a matter of law. Most had thought this was established long ago and was shocked at this new development and flat out statement that a blogger is not a journalist and therefore does not have equal rights under the law or the constitution.

Defendants such as Forbes and the New York, as well as other John and Jane Doe

Defendants needed the Crystal Cox case to have immediate discrediting tactics and to even do all possible to actually stop her from appealing in whatever means necessary.

News spread quickly of a federal judge ruling that a blogger reporting on a a high profile bankruptcy trustee was not a journalist and therefore was not protected under shield laws, retraction laws, and other reporters privilege laws because she was a blogger and not associated with any known media.

Not only had this federal judge ruled that laws that apply to traditional media do not apply to new media and bloggers, but also this judge ruled that the First Amendment did not apply to this blogger, because she was not a journalist. Thereby completely disregarding the fact that she is a citizen of the United States and is equally protected under the constitution as any other person, whether a journalists, reporter or any other citizen. This too caused massive alarm and controversy.

There were scholars, lawyers, independent media worldwide, and all manner of uproar in defense of Plaintiff's rights. Defendants such as Forbes and the New York, as well as other John and Jane Doe Defendants desperately needed to change the public perception of this situation and to halt the global uproar defending Cox in this manner, and thereby defending the rights of all whistle blowers, bloggers, and citizen journalists.

So Defendants such as Forbes and the New York, as well as other John and Jane Doe Defendants began to paint Plaintiff Cox out to be a Criminal and to defame, humiliate, harass and discredit Plaintiff Cox in order to quiet her supporters and to squash the idea that she should have equal protection as traditional media.

Defendant Kashmir Hill, Forbes, took an email from Defendant Kevin Padrick completely out of context, without research of facts and used this as her ammunition to discredit Plaintiff Cox worldwide. Defendant Kashmir Hill, Forbes used this partial email out of

context and painted a picture of Crystal Cox as a criminal guilty of extortion. Defendant Kashmir Hill, Forbes also accused Cox of extorting Defendant Marc Randazza who was Cox's attorney briefly and of attacking a toddler via blog. None of which is true, and is defamation as a matter of law.

After Getting massive pressure on the Ruling, the Judge in the case joined the Defendants in discrediting Plaintiff Cox and suddenly in a denial for a new trial, Judge Marco Hernandez claimed that bloggers can be journalists just not this blogger. This judge suddenly turned a civil case into a criminal case and insinuated that Cox was not a journalist because of her standards, ethics and even seemed to used the words of an email from Crystal Cox sent in her pro se capacity, long after the blog post she was on trial for, as some NEW reason that Plaintiff Cox was not a journalist and therefore not protected under the laws that apply to journalists nor was Plaintiff Cox protected under the constitution of the United States.

Judge Marco Hernandez singled out blogger Crystal Cox in selective prosecution as if to be the only blogger in the world that did not have free speech rights, first amendment rights or equal rights as traditional journalists.  Judge Marco Hernandez did this to appease Defendants such as Forbes and the New York, as well as other John and Jane Doe Defendants, as it is not based in law, facts nor even the established merits of the Crystal Cox Case.

KBOO Radio station in Portland Oregon, a small supposedly independent Radio station reported to Plaintiff Cox that they had received a memo telling them to stay clear of the Crystal Cox story. It is reported that this memo went to all "traditional" media and demanded, suggested and even threatened to stop funding if they reported on the Crystal Cox case.

It seemed that even Democracy Now had been involved in quieting the Crystal Cox story as

quickly as possible and the easiest way to do this was to discredit Plaintiff Cox, make her look as if she is a criminal and somehow paint her out to be some kind of monster attacking a "toddler".

Defendants are liable for the damage they have caused Plaintiff Cox personally and professionally over the last 17 months, and the irreparable, immeasurable damage their actions will cause for the remainder of Plaintiff's Cox's life.

As you read the following please note that this issue is heightened by the fact that it is not simply a matter of an Oregon blogger allegedly defaming an Oregon Financial Company. As Obsidian is involved in multiple state activities, and blogger Crystal Cox was a resident of Montana when Obsidian sued her, and was a resident of Colorado when the Blog post she went to trial for was published. This is not simply a state matter, and has global impact

OBSIDIAN FINANCE GROUP, LLC, ET AL., v. Crystal Cox Ninth Circuit Amicus Brief Points regarding the importance of the Obsidian V. Cox case and the motive to violate anti-trust laws and involve in conspiracy to discredit, defame, intimidate, harass and ruin Plaintiff Cox.

Defendants are engaged in conspiracy to discredit Plaintiff Cox, in a desperate attempt to keep their monopoly of journalistic privilege, reporter privilege and free speech.

Defendants are engaged in conspiracy to defame Plaintiff Cox in effort to discredit blogs in the legal precedence as a viable source of news in direct competition with Defendant Forbes and Defendant New York times as well as other John and Jane Doe Defendants.

Points regarding Obsidian V. Cox, and its massive importance to New Media, made in the BRIEF AMICUS CURIAE OF THE REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS. Below are quotes from this brief, in effort to show the importance of the Obsidian v. Cox case and the motive for Defendants to STOP Plaintiff Cox from appealing, and at the same time single her out, discredit her and paint her in a false light as undeserving of constitutional rights and protection under the laws that protect traditional journalists / reporters.

"Amicus has a strong interest in ensuring that courts apply broad constitutional protections to all manner of journalists subject to defamation suits, whether mainstream reporters or bloggers.

Amicus has concerns about the lower court's interpretation and application of Oregon's defamation law, particularly its analysis concerning when speakers can be classified as members of the media and what speech constitutes matters of public concern."

"The decision in the trial court below turned on whether a blogger defendant was a journalist and whether her speech involved a matter of public concern – both of which affects the standard of liability under Oregon law."

"In addressing the question of who qualifies as a member of the news media, the lower court adopted several restrictive criteria that do not take into account the fast-evolving nature of the journalism profession and that severely limited the class of individuals who can take advantage of the increased First Amendment protections that limit the law of defamation. The determination of whether a particular person qualifies for such protections cannot be based on what a journalist's job traditionally has been; rather, any test must be closely matched to the constitutionally protected function journalists perform.

In assessing whether the speech in this case involved a matter of public concern, the lower court focused on the status of the plaintiffs and pointed out the lack of public debate in the subject matter of the speech. But speech that has yet to stir any public controversy may be no less a matter of public concern than speech that arises after a public dispute develops. To hold otherwise has the potential to

provide newsgatherers who are first to alert the public to potential misconduct –breaking the story before there is any public awareness, much less interest – a lesser degree of constitutional protection than individuals who speak out only after the public is already aware of the facts of the story. Such a rule would turn First Amendment jurisprudence on its head. The lower court is in error and should be reversed."

"The distinction between media and non-media defendants in private-figure libel suits creates a heightened interest in broadly defining the term "news media.""

"The distinction between the standard of liability for a media defendant and a nonmedia defendant thus makes the definition of that term critically important in libel cases decided under Oregon law."

"Courts must interpret the term "media defendant" broadly enough to include any content providers who have the intent, when gathering information, to disseminate it to the public."

"Long before the advent of the Internet, the Supreme Court recognized that the definition of "press" does not depend on the medium of distribution of the speech in question."

The press in its historic connotation comprehends every sort of publication which affords a vehicle of information and opinion." 303 U.S. 444, 452 (1938). Indeed, many courts and legal scholars have openly expressed their concerns with the difficulties of defining who may fairly be classified as a journalist.

Many courts, including this one , have adopted workable definitions of news media in reporter's privilege cases, holding that a testimonial privilege applies to individuals engaged in the practice of compiling information for public dissemination. The criteria adopted encompass not simply the traditional press but also nontraditional newsgatherers such as those who, without any affiliation with a recognized media entity, publish their material online."

*"The U.S. Court of Appeals for the Second Circuit was among the first to establish that a nontraditional journalist can invoke a reporter's privilege when, at the time of the newsgathering, he or she has the intent to investigate and disseminate news to the public."*

*"The U.S. Court of Appeals for the Second Circuit was among the first to establish that a nontraditional journalist can invoke a reporter's privilege when, at the time of the newsgathering, he or she has the intent to investigate and disseminate news to the public. "*

*".., it is the author's function that determines whether he or she could be fairly classified as a member of the media and therefore entitled to the constitutional protections.."*

*"Courts must apply a broad definition of whether speech is in the public interest for purposes of establishing the standard of fault in libel cases." "The question of what constitutes a matter of public concern must be answered broadly to protect*

*constitutional interests."*

*"the analysis the lower court undertook in determining that Crystal Cox's speech was not a matter of public concern was too narrow to comply with the broad principles outlined by both this Court and the Supreme Court. Obsidian Finance Group, LLC v. Crystal Cox, No. 3:11-cv-57-HZ (D. Or. March 27, 2012). The lower court attempted to distinguish Cox's case with several cases she cited in her brief in support of her motion for a new trial by emphasizing that those cases demonstrated a higher level of public concern by exposing political corruption. Id. Such a narrow interpretation of the public concern test is at odds with both this Court and the Supreme Court. "*

## Defendants have great motive to STOP Crystal Cox and to defame and discredit Plaintiff Crystal Cox.

OBSIDIAN FINANCE GROUP, LLC, ET AL., v. Crystal Cox Ninth Circuit Amicus Brief Points regarding the importance of the Obsidian V. Cox case and the motive to violate anti-trust laws and involve in conspiracy to discredit, defame, intimidate, harass and ruin Plaintiff Cox.

*Here are quotes from the United States Court of Appeals for the Ninth Circuit Scotus Blog ("Supreme Court of the United States Blog" ) amicus brief, illustrating the importance of the Crystal Cox case, and why big media wants to discredit, defame, and paint Crystal Cox in false light.*

*"SCOTUSblog would also be unable to show that it has "credentials or proof of affiliation with any recognized news entity." The Supreme Court and Senate Press Gallery have refused to grant the blog a press credential."*

*"SCOTUSblog respectfully asks this Court to make clear that non-traditional news sources, such as blogs, that provide a useful public service by gathering, analyzing, and disseminating information are entitled to the same First Amendment protections as traditional news media even if they cannot make most of the showings outlined by the district court in this case. "*

*"...s this brief to illustrate for the Court how a "blog" that provides a useful public*

*service and that ought to receive the protections of the First Amendment .."*

*"The prospect that the blog could face lawsuits like the one at issue here, causing the blog to incur high legal costs to defend against a lawsuit and, if found liable, substantial money damages, will certainly have a chilling effect on the content of our posts. And that chilling effect will in turn result in less complete coverage of the events that transpire at one of the country's least understood, but most consequential, institutions: the Supreme Court of the United States."*

*"SCOTUSblog Could Not Satisfy Several Of The Criteria Articulated By The District Court." The question presented by this case creates significant concerns for SCOTUSblog, because of the prospect that it too could face lawsuits like the one filed by Obsidian in this case. Specifically, like Cox, the blog and its staff could not make several of the showings outlined by the district court in this case, leaving it vulnerable to an adverse decision in a defamation case."*

**If Defendants such as Forbes and the New York, as well as other John and Jane Doe Defendants could effectively discredit Plaintiff Cox or even stop her from appealing her case or giving up her appeal**

Defendants pressured Plaintiff Cox with emails such as from Defendant Jason Jones threatening that if Plaintiff Cox does not cut a deal and not appeal that he would interject himself into her case, her life and Defendant Jones has followed through, 17 months and counting of blog attacks, hate, defamation and retaliation against Cox. This after he emailed her and demanded she do as he says, as he wishes her to do in the Obsidian case or he will take action. Cox refused to do as Jones demanded and he followed through with her threats.

Plaintiff Cox has had offers to settle, threats, harassment, retaliation and even had her rights to appeal go to auction in Portland Oregon.

In November of 2012, Defendant David Aman and Defendant Steven Wilker of Tonkon Torp Law Firm conspired with Defendant Marc Randazza, Cox's former Attorney, and they filed documents in Jefferson County, Washington and in Multnomah County Oregon in order to file a judgement lien on Plaintiff's Cox's right to appeal Obsidian v. Cox, as an asset.

### Multnomah County Sheriff Office Case Number 1212-15329

Keep in mind that Plaintiff Crystal Cox is pro se in the matter of her judgment, her assets and the execution of a $2.5 million dollar judgement. And that Cox has attorney representation on her appeal to the Ninth Circuit, which is UCLA Law Professor Eugene Volokh.  At the time of this judgement lien filing Crystal Cox's appeal briefs were half way through.  Crystal Cox represented herself on matters of the judgement and therefore the conspiring of lawyers Defendant David Aman and Defendant Steven Wilker of Tonkon Torp Law Firm conspired with Lawyer Defendant Marc Randazza and Lawyer ( Plaintiff in Obsidian v. Cox) Defendant Kevin D. Padrick.

Defendant Marshall Ross, Senior Deputy for Defendant Daniel Staton, Sheriff in the name of the State of Oregon and of the Multnomah County Sheriff's Office issued a NOTICE of Judicial Sale of Crystal Cox's "right to appeal" Obsidian v. Cox., by virtue of a Writ of Execution, in the name of the State of Oregon, mailed to Cox by Defendant David Aman and Defendant Steven Wilker of Tonkon Torp Law Firm  delivered to Cox through the USPS and a Sheriff's sale to follow on the steps of the Multnomah County Courthouse.

### Multnomah County Sheriff NOTICE of Judicial Sale

"Case No. 1212-15329 - By virtue of a Writ of Execution issued out of the Circuit Court of the State of Oregon from Multnomah County, in the case entitled: In the Matter of a Foreign Judgment Rendered in the Case of Obsidian Finance Group, LLC and Kevin D. Padrick, Plaintiffs vs Crystal Cox, Defendant, on the 3rd day of January 2013, I levied upon the following intangible personal property of Crystal Cox, judgment debtor; to-wit:

All of judgment debtor's rights and interests in connection with the case originally filed in the United States District Court for the District of Oregon, styled as Obsidian Finance Group v. Cox, Case No. 3: 11-cv-57-HZ, and now pending in the United States Court of Appeals for the Ninth Circuit, Case Nos. 12-35238 and 12-35319, including her right to pursue an appeal in the matter.

Notice is hereby given that on Wednesday the 16th day of January 2013, at 10:30 AM at the east front entrance to the Multnomah County Courthouse, 1021 SW 4th Ave., Portland, OR, in Multnomah County, Oregon, I will sell the above described intangible property to the highest bidder for cash in hand; judgment creditor may bid against the judgment.

Full payment at time of sale in U.S. Currency required - no checks of any type accepted.

All potential bidders are subject to inspection of funds prior to or during participation in the auction. Individuals without proof of sufficient funds will not be allowed to participate.

DANIEL STATON, Sheriff

Marshall Ross, Senior Deputy

503-251-2516

Civil Unit"

This Judicial Sale Notice was executed in the name of the State of Oregon.

Defendants would have succeeded in taking this right to appeal from Cox, who had no representation in the matter of her judgement, had she not been diligent in checking her local mail and made a pitch to Attorney Eugene Volokh to aid her in this matter, and sign the appropriate contracts for representation in this matter and all over the Christmas holiday. Defendants tried to slip this in and flat out STEAL Plaintiff Cox's right to appeal a $2.5 Million Judgement and a Free Speech precedence that is the first of it's kind.

" to use state law proceedings to cut off the federal appellate process, and to eliminate defendant Crystal Cox's right to appeal. They have requested that the Multnomah County Sheriff seize and then sell Cox's "right to pursue an appeal"—as part of Cox's "intangible personal property." The Multnomah County Sheriff has scheduled a sale on Cox's right to appeal on January 16, 2013. Plaintiffs presumably plan to buy the right at auction for a nominal sum. (No one besides plaintiffs and defendant would find the right valuable.) Once plaintiffs acquire this right, it seems likely that they would try to use it to stop pursuing the appeal, whether by declining to file a reply brief, by declining to defend the cross-appeal, by declining to provide substantive argument at oral argument, or (most likely) by trying to dismiss the appeal.

This end run around Cox's federally secured rights to pursue the appeal in this case is improper, and ought to be blocked so that the appeal can proceed the way the Federal Rules of Appellate Procedure provide. This is so for six related reasons.

First, plaintiffs' attempt to seize Cox's appeal rights contravenes the Federal Rules

of Appellate Procedure, which provide that appeal decisions must be made by the appellant, with no provision for forcible seizure of those rights. See Part I, infra.

Second, while some federal and state statutes require an appeal bond for the amount of the judgment before defendants may appeal, the Rules reject any such requirement, thus securing poor defendants' ability to appeal even if they cannot afford such a bond. A supersedeas bond may be required for the amount of the judgment to stay the execution of the judgment, but no bond for the amount of the judgment is required to pursue the appeal itself. Plaintiffs' attempt, if successful, would contradict the Rules by effectively precluding poor defendants from appealing unless they can file a supersedeas bond and thus stay the execution of the judgment. See Part II, infra.

Third, plaintiffs' attempt to block this appeal would violate Cox's First Amendment rights to independent appellate review in libel cases. See Part III, infra.

Fourth, plaintiffs' attempt to block this appeal would violate Cox's First Amendment rights to petition the Ninth Circuit for redress of grievances. See Part IV, infra.

Fifth, plaintiffs' attempt to use state procedures to block a federal appeal impermissibly intrudes on the authority of the federal courts. See Part V, infra.

Sixth, a defendant's right to pursue an appeal is not an intangible property interest under Oregon law, and thus cannot be subject to levy and sale. See Part VI, infra.

"Cox moves for a temporary restraining order that would bar plaintiffs from attempting to buy her right to appeal at any forced sale, or in any transaction resulting from the forced sale.

Cox likewise moves that the Sheriff of Multnomah County be restrained under such an order from conducting the forced sale. The Sheriff is a "person[] who [is] in active concert or participation" with plaintiffs, FED. R. CIV. P. 65(d)(2)(C), in that he is planning to conduct the forced sale pursuant to a request by the plaintiffs (Exhibit 1 at 1), and in a context in which the plaintiffs or the plaintiffs' agents are likely to be the buyers. Under FED. R. CIV. P. 65(d), an order of this court could

*bind the Sheriff not to effectuate plaintiffs' attempt to circumvent the federal appellate process."*

*"The Federal Rules of Appellate Procedure Preclude Seizing or Otherwise Transferring the Appellant's Powers to Pursue the Appeal"*

*"The Federal Rules of Appellate Procedure Secure Defendants' Rights to Appeal, Even When Defendants Lack the Assets for Filing a Supersedeas Bond."*

*"erroneous denial of constitutional protection is a violation of constitutional rights, appellate courts must "exercise [independent] review in order to preserve the precious liberties established and ordained by the Constitution." Id. at 511. Second, independent appellate review should help "confine the perimeters of any unprotected category within acceptably narrow limits in an effort to ensure that protected expression will not be inhibited." Id. at 505.*

*The content of many Free Speech Clause rules "is not revealed simply by [the rule's] literal text"; rather, the rules must be "given meaning through the evolutionary process of common-law adjudication." Id. at 502. Therefore, appellate judges, "as expositors of the Constitution, must independently decide whether the evidence in the record is sufficient to cross the constitutional threshold." Id. at 511. This rule has been repeatedly applied in libel cases. See, e.g., Harte-Hanks Communications, Inc. v. Connaughton, 491 U.S. 657, 685–86 (1989); Time, Inc. v. Pape, 401 U.S. 279, 284 (1971); New York Times Co. v. Sullivan, 376 U.S. 254, 284–85 (1964*

*"Plaintiffs' Attempt to Use State Remedies to Interrupt a Federal Appeal Violates the Supremacy of Federal Law"*

*"Oregon Law Precludes Levying on a Defendant's Appeal Rights, Because Those Rights Do Not Constitute "Property""*

"A defendant-appellant's right to pursue an appeal, in the hope of erasing a judgment against her, does not qualify as a property right under these precedents. Neither federal law nor Oregon law has ever described this right as being "owned."

It lacks the normal incidents of ownership, such as alienability. See Part I, supra. It is not "something that . . . may be . . . possessed," nor does it constitute an "exclusive right to possess, use, enjoy, or dispose of a thing."

Excerpts from the EFF Amicus Brief, further proof of how important this case is to citizen journalists, new media, bloggers and free press AND why Defendants have fought so hard to defame, harass, threaten and retaliate against Plaintiff Cox.

*"The jury's verdict of November 29, 2011, finding the Defendant Crystal Cox liable for $2.5 million in defamation damages, is troubling not only because of the erroneous defamation standard applied and because of the excessively high award but also because of the speech chilling message it sends to the broader Internet community. The First Amendment protects all speakers, not just the press, from strict defamation liability. Moreover, protected-though-critical speech cannot be the basis for a verdict reached by a sympathetic jury. Especially when read in light of the Court's (unnecessary and erroneous) additional rulings regarding if and how online speakers can earn an elevated "media" or "press" status, these findings paint an unnecessarily risky legal landscape for such speakers in the district, one at odds with the First Amendment and Oregon law. Accordingly, the jury's verdict should be overturned and a new trial granted. Moreover, amicus urges the Court to additionally reconsider its rulings denying the Defendant the protections of Oregon's retraction and shield law statutes. "*

*"Under the First Amendment, contrary to the Court's Order of November 30, 2011, a successful defamation action requires at least a showing of negligence, regardless of the "media" status of the defendant. As the jury found Cox liable for defamation pursuant to jury instructions that did not include such a limitation, the verdict must be overturned and a new trial granted. Moreover, the jury's award – $2.5 million based on a single blog post, undifferentiated from the myriad other allegedly defamatory posts that the Court eventually found to be protected speech under the First Amendment – was excessive and unsupported by sufficient evidence and thus cannot stand. Combined with the other overreaching rulings regarding Cox's media status, these errors will leave online speakers in the district unnecessarily and unconstitutionally chilled."*

*"The Jury's Award Was Excessive and Lacked an Evidentiary Foundation. EFF also agrees with the Defendant that the jury's damages award was unsupported by the*

*evidence"*

*"The Court's Additional Erroneous Findings Regarding the Defendant's*

*Media Status Amplifies the Impact of the Improper Jury Instruction and*

*Threatens to Further Chill Speech.*

*Amicus is concerned not only with the improper application of First Amendment*

*standards to the Internet speaker in the immediate case but also with the message that the Court's rulings will send to the broader Internet community. Combined with the pre-trial rulings filed by the Court on November 30, 2011, they together threaten to chill speech in contravention of the First Amendment. Therefore, in addition to granting Defendant's motion for a new trial, amicus strongly urge the Court to reconsider two of its previous First Amendment decisions regarding the Defendant's "media" status."*

*"While the scope of the First Amendment protections afforded to Internet journalists is a salient and important question, here the primary question was not whether "a self-proclaimed 'investigative blogger' is considered 'media' for the purposes of applying a negligence standard in a defamation claim" but whether all speakers enjoy the same affirmative First Amendment protections regardless of media status."*

**Title 18, U.S.C., Section 241 - Conspiracy Against Rights, Title 18, U.S.C., Section 242 - Deprivation of Rights Under Color of Law, Title 18, U.S.C., Section 245 - Federally Protected Activities, Provisions against Conspiracies to Interfere with Civil Rights (42 U.S.C. § 1985), Section 241 of Title 18 is the civil rights conspiracy statute, Conspiracy Against Rights, 18 U.S.C. § 241. Section 241 of Title 18**

Defendants not only stated that Plaintiff Cox was engaged in Extortion, which is a crime but actually stated that Plaintiff Cox was an Extortionist, insinuated that Plaintiff Cox had been convicted of the crime of extortion by a court of law. And misleading the public at large, the world as to the merits of the Crsytal Cox case

being criminal in nature, when in fact Obsidian v. Cox was a civil trial regarding a defamation allegation and NOT a criminal trial regarding accusations of Extortion.

In fact Plaintiff Crystal Cox was not even under investigation for Extortion, was not on trial for Extortion, had no criminal complaint of extortion filed against her, and was not found guilty by a court of law, a judge, or any other official, for the crime of Extortion.

Defendants acted in conspiracy against the rights of Plaintiff Cox and have cause immeasurable, irreparable harm to Plaintiff Cox.

## Cause of Action 5.) 18:1964, Racketeering (RICO) Act 27:1332ri, Racketeering / Corrupt Organization

Common to All Defendants. Plaintiff Cox incorporates the allegations and information in all preceding paragraph in their entirety.

**RICO US Code Title 18, USAM 9-110.000 Organized Crime and Racketeering Violations of RICO, 18 U.S.C. 1962(c)), and Conspiracy to Violate RICO, Violation of 18 U.S.C. 1962 (d))**

Upon knowledge and belief Defendants Marc J. Randazza have violated Federal Rules of Civil Procedure 18 U.S.C. § 1961 through 1968, Federal Rules of Civil Procedure 18 U.S.C. §§ 1962(a),(b),(c), and/or (d) and have engaged in scams, conspiracy to steal intellectual property through fraudulent legal action and misinformation to the courts and to WIPO.

I, Crystal L. Cox, Plaintiff, Pro Se Plaintiff believe that Defendant Marc J. Randazza and his Clients, Co-Conspirators, Defendants have conspired to intimidate, pressure, harass and threaten sources, insiders, whistleblowers in order to silence me, Investigative Blogger Crystal L. Cox, Plaintiff,.

## Cause of Action 6.) Causation and Remoteness

Common to All Defendants. Plaintiff Cox incorporates the allegations and information in all preceding paragraph in their entirety.

Harm to Plaintiff would not have occurred if Defendant Kevin Padrick had not given Defendant Kashmir Hill Plaintiff's partial email, and if Defendant Kashmir Hill would not have published to third party Defendant Forbes.

Defendant's breach of a duty and care caused harm suffered by the claimant.

Defendants are responsible for harm caused by a third party as a direct result of defendant's negligence. Harm to Plaintiff Cox would not have occurred 'but for' the negligence of the defendants. Illistrated by:

Barnett v Chelsea & Kensington Hospital [1968] 1 All ER 1068

Robinson v Post Office [1974] 2 All ER 737

Cummings (or McWilliams) v Sir William Arrol & Co [1962] 1 All ER 623

Bux v Slough Metals Ltd [1974] 1 All ER 262

Bolitho v City & Hackney HA [1997] 4 All ER 771

The Empire Jamaica [1955] 1 All ER 452

### Cause of Action 7.)  Duty of Care; Breach of Duty

Common to All Defendants. Plaintiff Cox incorporates the allegations and information in all preceding paragraph in their entirety.

Defendants have violated Breach of Care in publishing false and defamatory statements regarding Plaintiff Cox without researching the facts of those statement prior to publishing. And by continuing 17 months and counting to publish.

Defendants owed Plaintiff a duty of care, before publishing  false and defamatory

statements concerning Plaintiff Cox in which ruined her business, reputation and caused her immeasurable, irreparable damage.

Media Defendants, Blog Owner Defendants, WIPO Defendants, Newsgathering Defendants owed a duty of care to Plaintiff Cox regarding statement that Cox was guilty of extortion, had a blog about a toddler and was under investigation by the Oregon Attorney General.  This statements are easily researched as to their truth, yet defendants recklessly posted  false and defamatory statements concerning Plaintiff Cox and thereby caused immeasurable, irreparable damage.

The skill level of Defendants as fraud investigators, attorneys, paralegals, seasoned reporters increases the duty of care owed to Plaintiff in this matter.

Defendant are specialists in tort law and media law, defendants are held to the standard of care of a specialist. (Wright v. Williams (1975) 47 Cal.App.3d 802, 810 [121 Cal.Rptr. 194].)

A reasonable person would have at least attempted to contact the Oregon Attorney General regarding allegations of Plaintiff Cox having been reported and that the Oregon Attorney General could do nothing in regard to the complaint or issue of Defendant Kevin Padrick, as published in Forbes by Defendant Kashmir Hill. Yet a quick email to the Oregon Attorney General under freedom of information laws and Oregon Open Source would have enabled Defendant Kashmir Hill to know the facts before reporting, falsely publishing that Plaintiff Cox had been reported to the Oregon Attorney General in any way. Or had ever been investigated in any way by the Oregon Attorney General. Plaintiff Cox has obtained such records and as Exhibits show, the Oregon Attorney General / Oregon Department of Justice says that no such complaint exists nor does a reason to believe that any complaint civil or criminal, or even a complaint of business was reported regarding Plaintiff Crystal L. Cox. Yet Defendant Kashmir Hill published worldwide, 17 months and counting now, the false and defamatory statements regarding the Oregon Attorney General investigating Plaintiff Crystal Cox and due to this not working, then AFTER THIS, Defendant Kevin Padrick sued Cox through his attorney Defendant David Aman of Tonkon Torp Law Firm.


## Cause of Action 8.)  Negligence Tort, Professional Negligence


Common to All Defendants.  Plaintiff Cox incorporates the allegations and information in all preceding paragraph in their entirety.

Defendants have been negligent in their reporting on Plaintiff Cox. Defendants have been negligent in publishing false and defamatory statements worldwide.

It is not reasonable conduct to state that Plaintiff Cox is guilty of the crime of extortion or that Plaintiff Cox was involved in case, trials, or investigations of extortion, when this is not fact.

It is not reasonable conduct to state that Plaintiff Cox has attacked a toddler online when Plaintiff Cox has not ever wrote about the child nor had a blog regarding the child.

Plaintiff Cox was harmed by the negligence of Defendants.

Defendants were negligent in obtaining easily researched facts, and instead negligently posted false and defamatory statement regarding Plaintiff Cox being guilty of the crime of extortion and of having a blog about a toddler in which she attacked this child. Neither of which has any factual prove as neither are true, and are therefore defamatory.

Defendants negligence has caused Plaintiff Cox loss of business, massive duress from hate and attacks, retaliation, reposting of these false and defamatory statements in mass and has ruined the reputation of Plaintiff Cox.

Defendant Jason Jones of Salty Droid did not research the false and defamatory statement concerning Plaintiff Cox, he simply reposted these statements and this is NOT a defense in defamation law.

Defendants Bob Garfield simply went on the word of Defendant Marc Randazza and did not research the defamatory statements. Defendant David Carr re-posted the statements without researching their merits as did other Defendants in this case.

Defendants have no Defense as the facts are plain and simple. Plaintiff did not post any words regarding a toddler and Plaintiff was never convicted of the crime of Extortion, nor was Plaintiff Investigated by the Oregon Attorney General.

Defendants failed to exhibit a reasonable level of care, and injury, harm, was thereby caused to Plaintiff Cox.

**Defendant Tracy L. Coenen, Sequence Inc. is an expert** in Corporate Fraud and Fraud Investigation, and therefore has a heightened sense of duty and care to disseminate factual information regarding criminal activity.

Defendants David Aman, Kevin Padrick, Marc Randazza Jordan Rushie, Peter L. Michaelson are attorneys and a  heightened sense of duty and care to disseminate factual information regarding criminal activity, and facts of a legal proceeding.

All Defendants asense of duty and care to disseminate factual information regarding statements made about Plaintiff Cox's criminal activity, and her guilt of such.

Smoldon v Whitworth & Nolan [1997] PIQR P133, CA
Donoghue v Stevenson [1932] AC 562, HL

6 Witkin, Summary of California Law (10th ed. 2005) Torts, §§ 871—896

California Tort Guide (Cont.Ed.Bar 3d ed.) §§ 1.28—1.31

Haning et al., California Practice Guide: Personal Injury, Ch. 2(II)-H, *Negligence Predicated On Statutory Violation ("Negligence Per Se")*, ¶ 2:1845 (The Rutter Group)

Wegner et al., California Practice Guide: Civil Trials & Evidence, Ch. 8G-C, *Procedural Considerations—Presumptions*, ¶ 8:3604 (The Rutter Group)

1 Levy et al., California Torts, Ch. 3, *Proof of Negligence,* §§ 3.10, 3.13 (Matthew Bender)

4 California Trial Guide, Unit 90, *Closing Argument,* §§ 90.88, 90.89 (Matthew Bender)

California Products Liability Actions, Ch. 7, *Proof,* § 7.04 (Matthew Bender)

33 California Forms of Pleading and Practice, Ch. 380, *Negligence*, § 380.50 (Matthew Bender)

16 California Points and Authorities, Ch. 165, *Negligence,* §§ 165.70, 165.80, 165.81

## Cause of Action 9.) 18 USC § 1512 - Tampering with a witness, victim, or an informant

Common to Defendants.

Plaintiff Crystal Cox incorporates the allegations and information in all preceding paragraphs in their entirety.

Defendant Jason Jones eMailed Plaintiff Cox and demanded that she do as he say in her decisions regarding the Obsidian v. Cox appeal, as the record shows.

Defendant Jason Jones emailed Plaintiff Cox just after her trial of Obsidian v. Cox, and asked for case information. Plaintiff Cox thought he was a reporter, a journalist and was writing on the case. Defendant Jason Jones was an attorney, and he did not want Plaintiff Cox to appeal her case as it seems he had personal motive to pressure Plaintiff Cox, intimidate her, harass her and stop her from appealing to the ninth.

Defendant Jason Jones said;

"Crystal I think there's a very, very, good chance this will end with you going to jail."

"you're attacking members of the bar ... a court appointed member of the bar no less ... and the fact that your case got all this press that didn't tell the whole story and made the court system look silly ... things are prolly much worse for you right now than you think. You're going to force them {the government} to do something {the only way they ever do anything is when they're forced}. "

"
You should stop not helping yourself as soon as possible.

Any chance you'd want to negotiate the end of this fiasco? You take down all your sites about Kevin and Obsidian and walk away into the sunset ... live to fight another day. Then they turn around and walk away as well without pressing the judgement or giving you any further issues ... avoiding establishing such a horrible precedent for free speech. I don't know if they'd do that but if you offered and they refused they'd look unreasonable.

I'm going to be inserting myself into this situation one way or another ... negotiating peace by pressuring both parties would be my first choice ... but there are other choices."

Defendant Jason Jones was no part of Plaintiff's Cox's case, yet he threatened that if she

did not negotiate an end that he would pressure the parties and that "there are other choices". Defendant Jason Jones suggested that Plaintiff Cox had stepped on the wrong toes in reporting on, blogging on members of the bar. And Defendant Jason Jones simply interjected himself into the case, with force.

When Plaintiff Cox followed through with her Ninth Circuit appeal, Defendant Jason Jones followed through with pressuring Plaintiff Cox, and with other "choices". Defendant Jason Jones launched a hate and defamation campaign against Cox online and has gathered others to hate and defame Plaintiff Cox. Defendant Jason Jones has conspired with others to entrap Plaintiff Cox and paint false light to the world that Plaintiff Cox is guilty of extortion. Defendant Jason Jones threatened that if Cox did not do as he wished in her her court case, that he would pressure her and if that did not work he would resort to other choices. Defendant Jason Jones has followed through on his threat and has ruined the life, reputation, quality of life and put Plaintiff Cox in danger. Defendant Jason Jones goes so far as to allow the username Cox Killer to post comment on his articles regarding Plaintiff Cox.

Defendants Marc Randazza, Daniel Staton, Marshall Ross, David Aman and Kevin Padrick attempted to use a Governmental Office, the Sheriff's office of Multnomah County Portland Oregon in order to STOP Crystal Cox from her appeal. This is a violation of process, a violation of constitutional rights, and a conspiracy to pressure a federal defendant to STOP an appeal that will set a massively groundbreaking precedence.

Defendant Randazza evaded legal process summoning him for testimony regarding his former Client Plaintiff Cox, in the Obsidian v. Cox case.

Upon Knowledge and Belief, Men connected to Defendant Randazza threatened to come Plaintiff's town and insinuated violence. Defendant Randazza threatened posted the car model and address of one of Cox's witnesses, sources and threatened her. Defendant Randazza has also pressured Cox's source in the Obsidian case and threatened legal action if she did not cooperate with what he was conspiring to do in entrapping Plaintiff Cox and painting Plaintiff Cox in false and defamatory light.

Defendants have interfered with witness Plaintiff Cox, and with her witnesses.

## Cause of Action 10.) Tortious Interference with Business

**Title 11 of United States Code, 11 U.S.C. §101-1330, All Laws applying to Tortious Interference.   Interference with Plaintiff's Prospective Business Advantage**

**Defendants have Tortiously Interfered with the business prospects, contracts, online marketing and more business opportunity of Plaintiff Cox.**

Plaintiff Crystal L. Cox re-allege and incorporate the preceding paragraphs in their entirety.

Defendant have Violated Tortious Interference Laws and have interfered tortiously with the business, future business, clients, customers, buyers of Plaintiff Crystal Cox's products and services.

Defendant have Tortiously Interfered with Plaintiff Cox getting clients and business by accusing her of criminal activity and being guilty of a crime. Plaintiff Crystal L. Cox is not guilty of, was not on trial for, nor ever had a criminal complaint in regard to extortion, yet Defendants have painted Cox in false light as guilty of the crime of extortion.

Defendant Marc Randazza and Co-Conspirators and Defendants have maliciously lied about Plaintiff, painted her in false light, defamed her, mobbed her online, threatened her and  attacked her in this public accusation of committing a crime.

Plaintiff Crystal L. Cox has suffered irreparable damage personally and professionally.

Plaintiff Crystal L. Cox Requests a judgment against Each Defendant for actual and punitive damages, and all other relief allowable under the law and federal court rules.

Defendant are guilty of Tortious Interference.

Defendant have painted Plaintiff Cox in false light. There is a now a public image that Plaintiff Crystal L. Cox makes money by extortionary methods, of which there is no proof of Cox ever having this stated business model, scheme or criminal activity.

Defendant are guilty of Tortious Interference with the business advantage of Plaintiff Cox.

### Interference with Plaintiff's Prospective Business Advantage

Plaintiff Crystal L. Cox re-allege and fully incorporate the preceding paragraphs.

Defendants have Interfered with Plaintiff's Prospective Business Advantage.

Plaintiff Crystal L. Cox has suffered irreparable damage personally and professionally. Wherefore, Plaintiff Crystal L. Cox Requests a judgment against Each Defendant for actual and punitive damages, and all other relief allowable under the law and federal court rules.

By painting Plaintiff Crystal L. Cox in false light, defaming her, accusing her of Extortion of which there is no prosecution or trial record of, Defendant have Interfered with Plaintiff Cox's Prospective Business Advantage.


## Cause of Action 11. ) Anti-Trust Laws, Competition Laws, the Sherman Act, Clayton Act, Antitrust Procedures and Penalties Act ("APPA" or "Tunney Act")

Plaintiff Crystal Cox incorporates the allegations and information in all preceding paragraphs in their entirety.

Plaintiff Crystal Cox alleges that Defendant Forbes, Defendant New York Times, and Defendant WIPO along with other Defendants of this complaint and John and Jane Doe Defendants, have engaged in activity that violate Anti-Trust Laws, "competition laws", and violates the Sherman Antitrust Act and Section 3 of the Clayton Act.

Plaintiff alleges that Defendant Forbes, Defendant New York Times, and Defendant WIPO are engaged in a civil conspiracy to discredit, defame, threaten, pressure a blogger that is representative of all independent media, free press, citizen journalists, whistleblowers, and online media sources that are not owned by large corporations and associated press media companies such as Defendant Forbes and Defendant New York Times.

Plaintiff Crystal Cox alleges that Defendant Forbes, Defendant New York Times, and Defendant WIPO along with other Defendants have engaged in activities in which attempt to disqualify new media such as blogs as a viable source of news competing with their massive news corporations that have held such a long standing stronghold.

Plaintiff Crystal Cox alleges that Defendant Forbes, Defendant New York Times, and Defendant WIPO along with other Defendants have engaged in activities that paint Plaintiff Crystal Cox out to be a criminal and one who attacks "toddlers" online and therefore is not media, is not a journalist and is not protected under the constitution or the laws that protect traditional journalists such Defendant Kashmir Hill of Forbes and Defendant David Carr of

the New York Times.

Defendants combined actions, in civil conspiracy, have effectively shut down Plaintiff's online media business in a way of potential and promised revenue, and ad dollars.

Defendant's have ruined the reputation of Plaintiff Cox as an investigative blogger and search engine manager. Plaintiff thereby lost revenue and future jobs with those she had been under prior independent media contract with. And Plaintiff Cox was denied future jobs of which Plaintiff was working toward, and also Plaintiff lost immeasurable business that Plaintiff would have secured over the life of her business.

The actions of Defendants have caused irreparable harm to Plaintiff Crystal Cox. And have violated anti-trust laws in wiping out competition of blogs as media equal in law and rights as "Big Media" such as Defendant Forbes and Defendant New York Times.

Defendants created a media storm in what is deemed as reputable publications such as Forbes, the New York Times, and WIPO, in which painted Plaintiff out to be a criminal guilty of the crime of extortion. Defendants flat out stated that Plaintiff was guilty of extortion, had committed extortion. There is no fact in this accusation and it directly caused contracts to cease, future business to come to a halt and hate and retaliation to ignite.

Defendant Forbes, the Defendant New York Times, and Defendant WIPO are major corporations, organizations and powerful entities. Plaintiff Cox alleges that they, along with other Defendants of this complaint and John and Jane Doe Defendants, have engaged in activity that violates Anti-Trust Laws, "competition laws", and violates the Sherman Antitrust Act and Section 3 of the Clayton Act.

Plaintiff Cox allege that Defendants conspired by way of emails to pressure Plaintiff Cox, threats of false testimony, intimidation, harassment, seizing appeal rights, constant publications of Plaintiff being a criminal, threats of violence, suing Plaintiff, seizing blogs and intellectual property without due process, destroying interpersonal relationships and public opinion of Plaintiff Cox, and various other tactics in order to STOP Plaintiff Cox from

appealing her highly controversial legal case Obsidian v. Cox. A case in which could set a precedence that would end the monopoly that Defendants Forbes, Defendants New York times and other "big media" have firmly in place.

Obsidian v. Cox is the most important free speech, First Amendment legal case of our times ( new media) and for the equal rights of citizen journalists, independent media, free press and their equal rights of protection under the U.S. legal codes and the Constitution.

Obsidian v. Cox will firmly establish once and for all who is media, who is a journalist and who is protected under those media privilege rights that established, traditional media have historically benefitted from.

Blogs, new media online, and independent web sites are the only voice that the victims of corruption have. Bloggers, whistleblowers, new media reporters are providing a service that is a necessity in order for true, independent news to get to the people aKa consumers, clients, customer, public at large.

Defendant Forbes, the Defendant New York Times absolutely need the Obsidian v. Cox case to come to a halt, and they need Plaintiff Cox to be discredited, intimidated and they were involved in attempting to stop Cox from her appeal. Defendants have singled out Plaintiff Cox, have selectively prosecuted Plaintiff Cox and painted the picture that she is the only blogger, the only woman, the only citizen in the United States in which the First Amendment does not apply. Defendants have created a false light internationally making Plaintiff Cox look like someone who does not deserve "journalistic privilege", "reporters privilege", shield laws, retraction laws, anti-slapp laws, and does not "deserve" rights of Free Speech nor rights under the Constitution of the United States of America.

Defendant Forbes, the Defendant New York Times, and Defendant WIPO along with other Defendants of this complaint and John and Jane Doe Defendants have engaged in behavior that has eliminated the competition of blogs as a viable media source, by effectively discrediting a blogger whose case merits are "who has journalistic protect by law", "who can be called a journalist", "who does the first amendment apply to in media",

"who is a media defendant", and will once and for all truly clarify the issues debated over who should be protected under media privilege and who should not.

If a blogger such as Crystal Cox who is breaking stories of corruption and reporting on news that Forbes and the New York Times refuses to report in effort to protect politicians, advertisers, big corporations, judges and elite law firms, then the playing field will be leveled and Defendant Forbes, the Defendant New York Times will lose their monopoly, their ad dollars and their stronghold over the news. As bloggers, new media will have equal protection under the law.

Therefore Defendant Forbes, the Defendant New York Times have great motive to use extreme measures to discredit, harass, paint in false light, defame, and thereby eliminate any idea that Plaintiff Cox, n anti-corruption blogger should have equal rights as they have in their firmly established traditional media cartel monopoly. The actions defendants have taken to harass, discredit, defame, and retaliate against Plaintiff Cox violates Anti-Trust laws, competition laws and seeks to wipe out bloggers, citizen journalists, investigative bloggers, and whistleblowers as competition in providing news content to consumer, to the public at large.

That is not to say that Plaintiff claims to be in direct competition with, or the New York Times. However, Plaintiff provided another way for consumers to give news tips to and to receive news, as do thousands of bloggers, citizen journalists, investigative bloggers, and whistleblowers like her.  Defendants Kashmir Hill, Defendant Forbes AND Defendant David Carr, Defendant New York Times and other John and Jane Doe defendants have sought to squash this possibility, in a global retaliation, defamatory campaign against Plaintiff Cox, who is the precedence, the example, the representative in courts for ALL bloggers, citizen journalists, investigative bloggers, and whistleblowers who are reporting the news, publishing tips, investigative stories, exposing corruption and providing a truly independent news "product" to consumers of news and information online.

Plaintiff was a successful online marketing expert, and was engaged in independent contracts to perform online media services. This came to a halt as Defendants successfully convinced the world the Plaintiff Crystal Cox is an Extortionist, thereby guilty of the crime of extortion and that Plaintiff Cox had a blog about a "toddler". Of which neither is true, nor can defendants prove them true. Therefore under Defamation Law Plaintiff is entitled to compensations, relief, punitive damage and all other relief under the law.

Defendants wanted to stop Plaintiff Cox from appealing here highly controversial First

Amendment case, so as to keep their stronghold in place as the "real" news, protected news, "credible" news, and to keep the laws, constitution and courts protecting traditional media as a firmly established source of news, and thereby discrediting blogs, independent media, free press, and whistleblowers using blogs as a medium of communication to the public to publish their news and information content.

Plaintiff Cox alleges that Defendants conspired to make Plaintiff look like a bad person, a criminal, one who attacks children, and therefore to create a media falsehood that would single out blogger Crystal Cox as somehow "not media" nor protected by the same media laws as "journalists" who work for media such as Defendant Forbes and the Defendant New York Times.

Defendants managed to single out Plaintiff Cox as the only person in the world in which could not be protected under free speech laws, the constitution, shield laws and other reporters privilege laws and "special" rights.

Defendants such as Forbes and the New York, as well as other John and Jane Doe Defendants desperately needed to slow down, or even halt the Crystal Cox Story as it had set off a global alarm in a ruling that bloggers are not journalists. This opened a decade long debate and controversy on just who is concerned a journalist, as a matter of law. Most had thought this was established long ago and was shocked at this new development and flat out statement that a blogger is not a journalist and therefore does not have equal rights under the law or the constitution.

Defendants such as Forbes and the New York, as well as other John and Jane Doe Defendants needed the Crystal Cox case to be discredited quickly. As public outcry was in an uproar that bloggers were not to be treated equally under the law as traditional media.

Defendants such as Forbes and the New York, as well as other John and Jane Doe Defendants began to discredit, defame and attack Plaintiff Crystal Cox as quickly as possibly.

Defendant Kashmir Hill's first article Titled "Why An Investment Firm Was Awarded $2.5 Million

After Being Defamed By Blogger", was published on December 7th, 2011. This was the exact same date that the Judgement for Obsidian v. Cox was entered onto the docket. Defendant Kashmir Hill was the first to post the email sent to her by Defendant Kevin Padrick, in which they used to paint Plaintiff Crystal Cox in false light and defame Plaintiff Cox.

Defendant Kashmir Hill of Defendant Forbes moved quickly to discredit Plaintiff Crystal Cox. This first article was the the first time that Defendant Kashmir Hill posted false and defamatory statements to a third party concerning Plaintiff Cox. Defendant Kashmir Hill had obviously interviewed Defendant Kevin Padrick in the days prior and received false and defamatory information regarding the email and regarding an investigation by the Oregon Attorney General which never happened.

Yet Defendant Kashmir Hill never contacted Plaintiff Cox for details on the email or as to if it was even a real email. Defendant Kashmir Hill never contacted yahoo or anyone else to see if the email was real. Defendant Kashmir Hill never published surrounding emails or the fact that the email was a REPLY email. Defendant Kashmir Hill never published that the email was sent a MONTH after the post Cox was on trial with and had nothing to do with the merits of the case. Defendant Kashmir Hill did not contact the Oregon Attorney General and verify that there had been a complaint of any kind, or an investigation of any kind requested.

Defendant Kashmir Hill simply published false and defamatory statements to a third party concerning Plaintiff Cox in order to quickly and deliberately, with total disregard for the truth,  turn public opinion against Plaintiff Cox in order to immediately HALT the support that Cox was getting from around the world on the violations of her first amendment rights. And thereby ensure the monopoly, the stronghold of big media such as Defendant Forbes and Defendant New York Times and ensure her position in traditional media as having rights superior to bloggers.

News had spread quickly of a federal judge ruling that a blogger reporting on a a high profile bankruptcy trustee was not a journalist and therefore was not protected under shield laws,

retraction laws, and other reporters privilege laws because she was a blogger and not associated with any known media. Defendant Kashmir Hill in conspiracy with Defendant Kevin Padrick and Defendant David Aman, as well as other big media and John and Jane Doe Defendants turned the Crystal Cox story of a civil trial for defamation into a Forbes Media flat out conviction and accusation of the Crime of Extortion.

Not only had this federal judge ruled that laws applying to traditional media do not apply to new media and bloggers, but also this judge ruled that the First Amendment did not apply to this blogger, because she was not a journalist. Completely disregarding the fact that she is a citizen of the United States and is equally protected under the constitution as any other person, whether a journalists, reporter or any other citizen. This too caused massive alarm and controversy.

There were scholars, lawyers, independent media worldwide, and all manner of uproar in defense of Plaintiff Cox's rights. Defendants such as Forbes and the New York, as well as other John and Jane Doe Defendants desperately needed to change the public perception, public image of this situation and to halt the global uproar defending Cox in this manner, on these issues and thereby defending the constitutional and lawful rights of all whistle blowers, bloggers, and citizen journalists being equal to the constitutional and lawful rights of traditional media, journalists, and reporters.

Defendants such as Forbes and the New York, as well as other John and Jane Doe Defendants began to paint Plaintiff Cox out to be a Criminal and to defame, humiliate, harass and discredit Plaintiff Cox in order to quiet her supporters and to squash the idea that she should have equal protection as traditional media. Or that she, herself was even deserving of such protection under the law and the constitution of the United States.

Defendant Kashmir Hill, Forbes, took an email from Defendant Kevin Padrick completely out of context, without research of facts and used this as her ammunition to discredit Plaintiff Cox worldwide.

Defendant Kashmir Hill, Forbes used this partial email out of context and painted a picture of Crystal Cox as a criminal guilty of extortion. Defendant Kashmir Hill, Forbes also accused Cox of extorting Defendant Marc Randazza who was Cox's attorney briefly and of attacking a toddler via blog. None of which is true, and is defamation as a matter of law.

After Getting massive pressure on the Ruling, the Judge in the case joined the Defendants in discrediting Plaintiff Cox and suddenly in a denial for a new trial, Judge Marco Hernandez claimed that bloggers can be journalists just not this blogger. This judge suddenly turned a civil case into a criminal case and insinuated that Cox was not a journalist because of her standards, ethics and even seemed to used the words of an email from Crystal Cox sent in her pro se capacity, long after the blog post she was on trial for, as some NEW reason that Plaintiff Cox was not a journalist and therefore not protected under the laws that apply to journalists nor was Plaintiff Cox protected under the constitution of the United States.

Judge Marco Hernandez singled out blogger Crystal Cox in selective prosecution as if to be the only blogger in the world that did not have free speech rights, first amendment rights or equal rights as traditional journalists. This was months after Defendant Kashmir Hill's first publication of false and defamatory statements concerning Cox to a third party.

Upon my knowledge and belief, Judge Marco Hernandez did this to appease Defendants such as Forbes and the New York, as well as other John and Jane Doe Defendants who had pressured him, as it is not based in law, facts nor even the established merits of the Crystal Cox Case.

KBOO Radio station in Portland Oregon, a small supposedly independent Radio station reported to Plaintiff Cox that they had received a memo telling them to stay clear of the Crystal Cox story. It is reported that this memo went to all "traditional" media and demanded, suggested and even threatened to stop funding if they reported on the Crystal Cox case.

It seemed that even Democracy Now had been involved in quieting the Crystal Cox story as quickly as possible and the easiest way to do this was to discredit Plaintiff Cox, make her look as if she is a criminal and somehow paint her out to be some kind of monster attacking a "toddler".

There is no clear definition or clear case precedence that establishes who is a Journalist. The Crystal Cox case is establishing this clarity. Traditional media such as Defendants Forbes and Defendants New York Times has massive motive to silence, discredit, defame and paint blogger Plaintiff Crystal Cox in false light in order to keep their stronghold, their monopoly over free speech rights, their cartel.

The Crystal Cox case fights for bloggers to be qualified for protection under shield laws, free speech laws, retraction laws and the First Amendment of the Constitution. And this directly affects, threatens the power and influence, the cartel, the monopoly that traditional media such as Forbes and the New York Times have.

Plaintiff Crystal Cox is a blogger, her product "the News", " Content" and Plaintiff Cox is in direct competition with her free speech rights, equal rights as a blogger with traditional journalists, reporters.

 Defendant have interfered with Plaintiff's ability to generate ad dollars, ability to enjoin in private contracts and to perform media services. Therefore as a blogger in competition with traditional journalists, anti-trust laws apply to the severe damage that Plaintiff Cox alleges defendants have done to her.

**All parties to the conspiracy are directly liable for the damage cause to the reputation, business, and life of Plaintiff Crystal Cox.**

Defendants WIPO, Forbes, and the New York Times not only want bloggers to NOT have equal rights under the law, they desperately need to have this competitive edge over bloggers or they have no business model, no ad dollars and they go out of business. Therefore defendants need to defame, discredit Plaintiff Crystal Cox in order to to create and keep a monopoly of media, and thereby be the only source of news that is credible, and even protected by law.

This deemed credibility gives traditional media a massive competitive edge over bloggers, over new media, and over their competition in the search engines where consumers are looking for this product, which is the news.

This power and influence over the courts in traditional journalists, traditional media having protection by law and by way of the constitution in a way that new media, bloggers, citizen journalists and whistleblowers are not legally protected, is a violation of anti-trust laws, competition laws and seeks to create or KEEP a cartel, a monopoly, in being the only news that is allowed to report freely without concern of litigation and thereby sell ads on their reporting, and have a massive, lucrative monopolistic business model around this content (news and information).

This deemed credibility by law gives traditional media a massive competitive edge, especially if they are the only ones protected by law, by courts, and by the constitution to report the news, information.

 The Crystal Cox case fights for the equality of small media, truly independent media, bloggers, whistleblowers, and citizen journalists; equality in the right to seek ad dollars, equality in soliciting tips and information, equality in protection under shield laws and retraction laws, equality under the First Amendment and free speech laws, equality under the Bill of Rights, equality in credibility, equality in media contracts, equality in press passes to major events, equality in earning potential, equality in media contracts and equal protection under the the courts and constitution of the United States.

The product is news and information, just as in the anti-trust cases of technology or the anti-trust case against the Association of Realtors, in this case the product is the news itself. As Defendants Forbes, and the New York Times, as well as other John and Jane Doe Defendants get the news from the Associated Press and from tips and various other sources, they use this news as content for their newspapers, blogs, websites and various other media. They sell ad space, create revenue from this product and the news is therefore the product in which they need to create a monopoly of.

It is unlawful and a violation of Anti-Trust Laws ,Competition Laws, the Sherman Act, the Clayton Act and the constitutional rights of Plaintiff Cox for Defendants Forbes, and the New York Times, as well as other John and Jane Doe Defendants to paint Plaintiff Cox out to be a criminal in order to keep their stronghold as

privileged media under the law and thereby wipe out the competition of Plaintiff Crystal Cox, who in and among herself may not ever threaten these industry giants, however her case precedence in Obsidian v. Cox and the media stir created from it does create a threat to the monopoly, the cartel that Defendants Forbes, and the New York Times, as well as other John and Jane Doe Defendants have been able to enjoy for decades if not centuries.

Defendants need traditional journalist working for mainstream media to remain in power, to keep their monopoly of media, and to have media privilege, reporters privilege and constitutional rights not afforded to citizen journalists, whistleblower, online free press publication, and bloggers.

Therefore Defendants have conspired to defame, discredit and even retaliate remorsefully against Plaintiff Cox in order to affect public views of her case, and to try and stop her appeal as well as to affect the judges involved in these cases, as noted in Randazza v. Cox, whereby Cox's ex attorney Defendant Marc Randazza used the false and defamatory statements made to a third party concerning Plaintiff Cox published by Defendants as legal commentary and evidence in a federal court case in order to shut down massive blogs, online media and seize massive amounts of domain names, ALL without First Amendment adjudication and Defendant Randazza was able to simply wipe out this content and commit these acts because the judge in the case used the false and defamatory statements of Defendants Forbes, and the New York Times, as well as other John and Jane Doe Defendants as factual evidence against Plaintiff Cox.

It is unlawful and unconstitutional for big media corporations such as Defendants Forbes, and the New York Times, as well as other John and Jane Doe Defendants to create a monopoly of Free Speech rights over Plaintiff Crystal Cox, or over any citizen journalists, whistleblower, free press publication, or any one who is performing newsgathering activities.

This court should use Defendant Forbes Inc. and Defendant New York Times, as well as other John and Jane Doe Defendants as an example and send a STRONG message to big media corporations,that suppressing the free speech rights of bloggers, independent media, free press, whistle blowers and citizen journalists will not be tolerated as a matter of law and as a matter of constitutional rights.

Violating the rights of independent blogs in favor of conglomerates, major media corporations and wealthy advertisers is unlawful, unconstitutional and violates ALL ideals and anti-trust laws, as well as competition laws, the Sherman Act and

aspects of the Clayton Act.

I, Plaintiff Crystal Cox have owned my own real estate company for 13 years. As my background, career wise is Real Estate, I, plaintiff Crystal Cox liken the anti-trust actions of Defendants to the Department of Justice suing the National Association of Realtors in anti-trust violations In U.S. v. National Association of Realtors.  Below are some details of that case, to illustrate the commonalities and as case law providing information regarding the anti-trust elements to the actions of Defendants in this case causing direct harm to Plaintiff Cox and to bloggers, new media, independent news, free press and citizen journalists in general, as a matter of law and precedence.

"U.S. v. National Association of Realtors Civil Action No. 05 C 5140, COMPETITIVE IMPACT STATEMENT";

"Plaintiff United States of America ("United States"), pursuant to Section 2(b) of the Antitrust Procedures and Penalties Act ("APPA" or "Tunney Act"), 15 U.S.C. § 16(b)-(h), files this Competitive Impact Statement relating to the proposed Final Judgment submitted for entry in this civil antitrust proceeding.

### NATURE AND PURPOSE OF THE PROCEEDINGS

Overview. The United States brought this lawsuit against Defendant National Association of Realtors® ("NAR") on September 8, 2005, to stop NAR from violating Section 1 of the Sherman Act, 15 U.S.C. § 1, by its **suppression of competition** from real estate brokers who use the Internet to deliver real estate brokerage services. NAR's policies singled out these innovative brokers and denied them equal access to the for-sale listings that are the lifeblood of competition in real estate markets. The settlement will eliminate NAR's discriminatory policies and restore even-handed treatment for all brokers, including those who use the Internet in innovative ways."

Defendant Forbes Inc. and Defendant New York Times, as well as other John and Jane Doe Defendants have violated Section 1 of the Sherman Act, 15 U.S.C. § 1, by defendants suppression of competition in the business of "media", of news dissemination, reporting the news and use the Internet to deliver these services,

such as Plaintiff Cox and other independent news sources using the internet to deliver the service of bring the news to the public.

The Crystal Cox seeks to eliminate discriminatory actions, laws, and rights afforded to traditional media such as Defendants Forbes and Defendant New York Times. Therefore defendants have conspired to discredit, defame, harass, and intimidate Plaintiff Cox and paint her out to be a criminal who is not worthy of protection under the laws that traditional media is protected under.

### The  "U.S. v. National Association of Realtors Civil Action No. 05 C 5140, COMPETITIVE IMPACT STATEMENT" goes on to say:

"NAR's Challenged Policies. On May 17, 2003, NAR adopted its "VOW Policy," which contained rules that obstructed brokers' abilities to use VOWs to serve their customers, as described below in Section II. After an investigation, the United States prepared to file a complaint challenging this Policy.

On September 8, 2005, NAR repealed its VOW Policy and replaced it with its Internet Listings Display Policy ("ILD Policy"). NAR hoped that this change would forestall the United States' challenge to its policies. NAR's ILD Policy, however, continued to discriminate against VOW brokers. As part of its adoption of the ILD Policy, NAR also revised and reinterpreted its MLS membership rule, which would have excluded some brokers who used VOWs, as detailed below in Section II. (NAR's VOW and ILD Policies, including its membership rule revision and reinterpretation, are referred to collectively in this Competitive Impact Statement as NAR's "Challenged Policies.")

As an association of competitors with market power, NAR's adoption of policies that suppress new and efficient competition to the detriment of consumers violates Section 1 of the Sherman Act, 15 U.S.C. § 1."

Defendant Forbes Inc. and Defendant New York Times, as well as other John and Jane Doe Defendants have used their market power to ruin and discredit Plaintiff Cox and to create a monopoly of free speech rights.  Defendants have used their market power and influence in order to influence public perception and opinion of Plaintiff Crystal Cox and thereby the Obsidian v. Cox case and use this perception in order to create a worldview of just who has the rightful title of media, journalist and reporter and the lawful rights, privileges and constitutional rights that come with it.

Defendant Forbes Inc. and Defendant New York Times, as well as other John and Jane Doe Defendants use their power and clout to suppress new and efficient competition in the area of news media, and this is a detriment to the news consuming public who has a right to "consumer" independent media, independent news sources in a free and competitive marketplace.

### Defendants have violated  Section 1 of the Sherman Act, 15 U.S.C. § 1.

Defendant Forbes Inc. and Defendant New York Times, as well as other John and Jane Doe Defendants have discriminated against Plaintiff Cox in painting her in false light in order to affect public opinion of her free speech case that fights to give bloggers, citizen journalists, whistle blowers and online free press equal rights under the law as those in traditional media.

Upon my knowledge and belief, the purpose of this action is to create and to keep the monopoly that Defendant Forbes Inc. and Defendant New York Times, as well as other John and Jane Doe Defendants have on free speech and protection under the laws and constitutional rights that do not seem to apply to bloggers, citizen journalists, whistle blowers and online free press.

### The  "U.S. v. National Association of Realtors Civil Action No. 05 C 5140, COMPETITIVE IMPACT STATEMENT" goes on to say:

"The Amended Complaint alleges that NAR's adoption of the Challenged Policies constitutes a contract, combination, and conspiracy by and between NAR and its members which **unreasonably restrains competition** in brokerage service markets throughout the United States, in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1."

"In the Amended Complaint, the United States asks the Court to order NAR to stop violating the law. The United States did not seek monetary damages or fines; the law does not provide for these remedies in a case of this nature."

Defendants in this case seek to unreasonable restraints on competition by way of suppressing the truth about the Crystal Cox case and painting Plaintiff Cox in false and defamatory light in order to affect public opinion of Crystal Cox herself and distract from the merits of the case which affect the very life force, foundation and business model of Defendants Forbes, Defendants New York Times and John and Jane Doe Defendants.

Defendants seek to keep the stronghold, the "norm" of big media conglomerates having special rights and privileges under the law and the constitution. Defendants have traditionally relied upon rules, laws that keep their cartel, their monopoly of free speech. Defendants cannot be allowed to continue to unreasonably impede competition among media sources, mediums of communication and harm consumers of news and information. See United States v. Realty Multi-List, 629 F.2d 1351, 1371 (5th Cir. 1980).

Defendant Forbes Inc. and Defendant New York Times, as well as other John and Jane Doe Defendants punish, defame and obstruct the innovations of Plaintiff's efficient, Internet-based tools and online media techniques used to bring independent news and information to the public, those who are news consumers, and those who are the target audience for the ad revenue placed on this news (content). Defendants seek to monopolize the industry of "bringing the news" to consumers.

Defendant Forbes Inc. and Defendant New York Times, as well as other John and Jane Doe Defendants have attempted to suppress the benefits of innovation and competition from reaching consumers, and thus violate Section 1 of the Sherman Act, 15 U.S.C. § 1.

## REMEDIES AVAILABLE TO POTENTIAL PRIVATE LITIGANTS

Section 4 of the Clayton Act, 15 U.S.C. § 15, provides that any person who has been injured as a result of conduct prohibited by the antitrust laws may bring suit in federal court to recover three times the damages the person has suffered, as well

as costs and reasonable attorneys' fees.

Plaintiff Cox wishes the Department of Justice to bring action against Defendants as well, in order to STOP the monopoly of free speech in which Defendants Forbes, Defendants New York Times and other John and Jane Doe Defendants currently seem to have and are ruining lives and businesses such as that of Plaintiff Cox, in order to keep their cartel, their monopoly in newsgathering and publication of that news and information to the publice.

News should be of the people by the people and all who gather and bring the news to the public should have equal protection under the law and the constitution. Defendants New York Times and other John and Jane Doe Defendants should not have special media privilege, journalistic privilege, reporters privilege to be deemed a more reliable, credible source of news and information simply because they are working for or own a large news corporation, a conglomerate, a cartel.

Independent media is often the most accurate source of news and information that the news consuming public has access to. Especially if this news and information is in regard to allegations of corrupt lawyers, law firms, judges, politicians, trustees, authority figures and court proceedings.

 If Defendants are allowed to keep their monopoly, their cartel, then the truly independent news will be SILENCED forever.  If the Crystal Cox case ceases, and cannot move forward or Plaintiff Crystal Cox herself is painted out to be someone not worthy of equal protection under journalist privilege laws, then Defendants keep their stronghold, their monopoly on free speech, and keep their power and rights over free press, bloggers, citizen journalists and whistleblowers. This would be a serious violation of the constitutional rights of every news consuming citizen, EVERYWHERE.

Defendants Forbes, Defendants New York Times and other John and Jane Doe

Defendants should not have more rights under the law or the constitution or more power and influence in bringing the news to the public at large simply because they are the "oldest and largest" predominant Media organisations and influential newspapers, news sources traditionally.

Upon knowledge and belief, Plaintiff L. Crystal Cox alleges that Defendants Forbes, Defendants New York Times and other John and Jane Doe Defendants should not have superior rights just because they are bigger, richer, more established and have more clout and political backing. This behavior, these actions are a violation of Plaintiff's rights to fair competition and a violation of anti-trust laws and the constitutional rights of Plaintiff Cox and subsequently of the rights of ALL investigative bloggers, citizen journalists, whistle blowers, and free press in new media.

It is a violation of anti-trust laws for Reporter's privilege to only apply to the oldest and largest, wealthiest, influential newspapers and predominant Media organisations.

Defendants have interfered with fair competition regarding Plaintiff Crystal Cox.

Defendants have violated The Sherman Antitrust Act (Sherman Act,[1] July 2, 1890, ch. 647, 26 Stat. 209, 15 U.S.C. §§ 1–7) and directly damaged Plaintiff Crystal Cox.  Defendants have created an anticompetitive environment to prevent Plaintiff Cox and subsequently all bloggers and other new media from competing fairly.

Wealthy conglomerates such as Defendant Forbes and Defendant New York Times do not have the lawful or constitutional right to suppress the rights of independent media, blogs, free press and modern internet publications of independent news.

U.S. anti-trust laws, competition law focus on the protection of competition rather

than competitors such as Defendants Forbes, Defendants New York Times and other John and Jane Doe Defendants. This court should grant Plaintiff Cox all relief allowed under the law, in order to firmly establish that competition in the "news industry" should be a healthy, vibrant, competitive market place just as technology and real estate, as this is of the best interest of every news and information consuming citizen.

 Media conglomerates such as  Defendant Forbes and Defendant New York Times should not have more power and influence over what is news and who is a journalist by law and by constitutional rights, then do independent online news sources, such as blogs.

Anti-Trust laws are designed to promote conduct which encourages competition, even severely so, but against conduct which unfairly tends to destroy competition itself. The focus of U.S. competition law, is on protection of competition rather than competitors.

Sherman Act, 21 Cong.Rec. 2456. It was in this sense of preventing restraints on commercial competition that Congress exercised "all the power it possessed." Atlantic Cleaners & Dyers v. United States, supra, 286 U. S. 435.

At Addyston Pipe and Steel Company v. United States, 85 F.2d 1, affirmed, 175 U. S. 175 U.S. 211;

At Standard Oil Co. of New Jersey v. United States 221 U. S. 1, 221 U. S. 54-58.

Defendants Forbes, Defendants New York Times and other John and Jane Doe Defendants have engaged in anticompetitive conduct and have thereby violated The Sherman Act.

Defendants Forbes, Defendants New York Times and other John and Jane Doe Defendants actions are anticompetitive in nature. Thus attempt to prevent violate the Sherman Act.

The Sherman Act Section 1 States:

"Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal."[14]

The Sherman Act Section 2 States:

"Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a felony [. . . ]"[15]

Defendants have engaged in intentional misconduct and conspiratorial conduct of the kind forbidden by Section 1 of the Sherman Act, or Section 3 of the Clayton Act.

## Cause of Action 12.) U.S. Constitution

Plaintiff Crystal L. Cox re-alleges, restates and fully incorporates all of the previous paragraphs in their entirety.

Upon knowledge and belief, Plaintiff L. Crystal Cox alleges that Defendants WIPO, Defendant Edward Kwakwa WIPO, Defendant Francis Gurry WIPO, Defendant Eric Wilburs, Defendant WIPO World Intellectual Property Organization, Defendant Peter L. Michaelson, Defendant Marc J. Randazza, and John and Jane Doe Defendants have acted in conspiracy to violate the constitutional rights, civil rights, property rights, first amendment rights of Plaintiff Crystal Cox and therefore Plaintiff Cox is allowed all relief allowed by law.

US due process is a constitutional right under US law and as such, trumps the requirements of the Convention and foreign law.

### Cause of Action 13.) International Laws, UDRP, ICANN Laws

Plaintiff Crystal L. Cox re-alleges, restates and fully incorporates all of the previous paragraphs in their entirety.

Upon knowledge and belief, Plaintiff L. Crystal Cox alleges that defendants have violated International Laws, UDRP, ICANN Laws that have caused irreparable harm and suffering to Plaintiff Cox, and therefore Plaintiff Cox is allowed all relief allowed by law.

### Cause of Action  14.) All intellectual property laws applicable

Plaintiff Crystal L. Cox re-alleges, restates and fully incorporates all of the previous paragraphs in their entirety.

Upon knowledge and belief, Plaintiff L. Crystal Cox alleges that defendants have violated intellectual property laws and have thereby caused irreparable harm and suffering to Plaintiff Cox, and therefore Plaintiff Cox is allowed all relief allowed by law.

# Claim of Relief

Plaintiff Crystal L. Cox re-alleges and incorporates all of the previous paragraphs in their entirety.

False and Defamatory Statements were, without a doubt, made by Defendants to a Third Party Concerning Plaintiff Crystal Cox and have caused Plaintiff Crystal Cox harm. Therefore Plaintiff Cox is entitled to recovery.

**Plaintiff Crystal L. Cox Requests a judgment against Each Defendant for actual and punitive damages, and all other relief allowable under the law and federal court rules.**

Plaintiff Crystal L. Cox seeks relief of **100 Million Dollars** in Damages EACH from Defendants Forbes Inc., New York Public Radio, New York Times, Sequence Inc., Defendant Multnomah County Sheriff Office, and 1-50 John and Jane Doe Defendant(s).

Plaintiff Crystal L. Cox seeks relief of **10 Million Dollars** in Damages EACH from Defendant Kevin D. Padrick, Defendant David S. Aman, Defendant Kashmir Hill, Defendant David Coursey, Defendant Steven Wilker, Defendant Tonkon Torp Law Firm, Defendant Randazza Legal Group, Defendant Marc J. Randazza, Defendant Bob Garfield, Defendant David Carr, Defendant Peter L. Michaelson, Defendant Francis Gurry, Defendant Eric Wilbers, Defendant Tracy L. Coenen, Defendant Jordan Rushie, Defendant Mulvihill and Rushie LLC, Defendant Jason M. Jones, Defendant Daniel Staton, Defendant Marshall Ross, Roxanne Grinage, and 1-50 John and Jane Doe Defendant(s).

WHEREFORE, Plaintiff pray for judgment against Defendants as follows:

A. Finding in favor of plaintiff on their claim for relief;

B. Awarding plaintiff damages against defendants in the amount as stated above.

C. Awarding plaintiff their cost and disbursements incurred in this action;

D. Permanently enjoining defendants from publishing false and defamatory statements concerning plaintiff.

E. Granting such other and further relief as the Court finds just or equitable.

**Plaintiff Crystal Cox has been immeasurably, irreparably damaged by the false and defamatory statements published to a third party concerning Plaintiff Cox, by Defendants.**

Plaintiff Cox has suffered harm to her intellectual property.

Plaintiff Cox has suffered  immeasurably, irreparable damage to her business, trade, profession, and occupation.

Plaintiff Cox has suffered loss of earning capacity.

Plaintiff Cox has suffered harm to her personal reputation, professional reputation and business reputation.

Plaintiff Cox has suffered harm to her personal relationships, state of mind and quality of life.

Plaintiff Cox is entitled to receive reasonable compensation for harm to reputation, humiliation, or mental suffering, even if plaintiff does not present evidence that proves actual damages. This is because the law presumes that the plaintiff suffered these damages.

Therefore Plaintiff Cox is entitled to all recover, compensation, and relief deemed appropriate and allowed by law.

Note To Court: Documents / Motions Attached to This Complaint are as Follows:

Motion to Proceed in Forma Pauperis, in Forma Pauperis Affidavit, Civil Cover Sheet, Cover Letter, Motion to File Electronically, Certification of ECF Knowledge, Exhibit List, Exhibits,

Submitted Respectfully by

Pro Se Plaintiff
Crystal L. Cox
**(406) 624-9510**
PO Box 2027
Port Townsend, WA 98368

## Exhibit Directory

## Exhibits below will be entered into the Case once Plaintiff Cox has Electronic access

Exhibit A -  Defendant Tracy L. Coenen, Defendant Sequence Inc. False and Defamatory
Statements.

Exhibit B - Defendant Jordan Rushie, Defendant Mulvihill and Rushie LLC, False and
Defamatory Statements.

Exhibit C - Defendant Marc Randazza, False and Defamatory Statements.

Exhibit D - Oregon Attorney General Letter

Exhibit E - Defendant WIPO, Defendant Peter L. Michaelson, False and Defamatory
Statements.

Exhibit F - Defendant Bob Garfield, New York Public Radio, False and Defamatory
Statements.

Exhibit G - Article Titled "Ugly New Reputation-Smearing Tactic: Going After A Toddler's
Internet Footprint", Dated, 04/02/12 quotes Defendant Kashmir Hill

Exhibit H, New York Times Article David Carr False and Defamatory Statements.

Exhibit I - Defendant Kashmir Hill False and Defamatory Statements.

Exhibit J -  Defendant David Coursey False and Defamatory Statements.
Dated, January 02, 2012, Titled "You Be The Judge; Are Bloggers Journalists""

Exhibit K - Salty Droid, Jason Jones False and Defamatory Statements.

Exhibit L - Judgement Record, $2.5 Million
Exhibit M, Godaddy eMails    /    Exhibit N, WIPO eMails

Exhibit O, WIPO Decision Publication



## Certificate of Service:

I hereby certify that I served the foregoing on May 6th 2013 To

Sandra Day O'Connor U.S. Courthouse
401 W. Washington Street, Suite 130, SPC 1
Phoenix, AZ 85003-2118

Submitted Respectfully by

Pro Se Plaintiff
Crystal L. Cox
**(406) 624-9510**
PO Box 2027
Port Townsend, WA 98368

Crystal@CrystalCox.com
ReverendCrystalCox@Gmail.com